No. 24-11042

# In the United States Court of Appeals for the Fifth Circuit

GEORGE ANIBOWEI,

*Plaintiff-Appellant.*

*v.*

PAMELA BONDI, U.S. ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; TROY MILLER, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE COMMISSIONER, U.S. CUSTOMS AND BORDER PROTECTION; PATRICK J. LECHLEITNER, DEPUTY DIRECTOR AND SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR FOR ICE,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

## OPENING BRIEF OF APPELLANT

KASSANDRA GONZALEZ
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 EXT. 182
kassandra@texascivilrightsproject.org

ANDREW T. TUTT
ORION DE NEVERS
JILLIAN M. WILLIAMS
SPENCER JOHN FABER
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

*Counsel for Plaintiff-Appellant George Anibowei*
(additional counsel listed on inside cover)

DUSTIN WADE RYNDERS
TRAVIS WALKER FIFE
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 1108
Houston, TX 77251
(832) 971-8984 EXT. 186
dustin@texascivilrightsproject.org
travis@texascivilrightsproject.org

*Counsel for Plaintiff-Appellant George Anibowei*

# CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiff-Appellant:**

   The Appellant is George Anibowei. He is a natural person and the named plaintiff in *Anibowei v. Lynch*, No. 3:16-cv-03495-D (N.D. Tex.).

2) **Defendants-Appellees:**

   The Appellees are Pamela Bondi, U.S. Attorney General, in her official capacity; the United States Department of Homeland Security ("DHS"); United States Customs and Border Protection ("CBP"); United States Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, DHS, in her official capacity; Troy Miller, Senior Official Performing the Duties of the Commissioner, ICE, in his official capacity; Patrick J. Lechleitner, Deputy Director and Senior Official Performing the Duties of the Director for ICE, in his official capacity.  All of the Defendants are U.S. government

agencies or the heads of those agencies sued in their official capacities.

3) **Counsel for Plaintiff-Appellant:**

Andrew T. Tutt; Orion De Nevers; Jillian M. Williams; Spencer John Faber; Dustin Wade Rynders; Travis Walker Fife; Kassandra Gonzalez.

4) **Former Counsel for Plaintiff-Appellant:**

R. Stanton Jones; Stephen K. Wirth; Samuel F. Callahan; Graham W. White; Jayce Lane Born; Sean A. Mirski; Dana Kagan McGinley (née Or); Nicole L. Masiello; Daniel Hatoum; Mimi Marziani; Peter Steffensen; Hani Mirza; Emily Rebecca Chertoff; Natalia Cornelio.

5) **Counsel for Defendants-Appellees:**

Sarah Elizabeth Delaney; Brian Walters Stoltz.

Dated: February 10, 2025

/s/ *Andrew Tutt*
ANDREW T. TUTT
Attorney of record for Plaintiff-
Appellant George Anibowei

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant George Anibowei respectfully requests oral argument because this case raises an important issue of constitutional law on which federal courts of appeals are divided.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ............................................. i

STATEMENT REGARDING ORAL ARGUMENT ...................................... iii

TABLE OF CONTENTS ................................................................................. iv

TABLE OF AUTHORITIES ......................................................................... vi

INTRODUCTION .......................................................................................... 1

JURISDICTIONAL STATEMENT .............................................................. 4

STATEMENT OF THE ISSUES .................................................................. 4

STATEMENT OF THE CASE ...................................................................... 5

I.      Legal Background on Cell Phone and Border Searches ......................... 5

        A.      Supreme Court Precedent and Its Applications ............................. 5

        B.      The Circuit Split Over the Application of the Border-Search
                Exception to Cell Phones ............................................................... 10

                1.      The Fourth and Ninth Circuits Generally Require
                        Warrants ............................................................................. 10

                2.      The First, Eighth, Tenth, and Eleventh Circuits—and
                        This Circuit—Never Require Warrants .............................. 13

II.     ICE's and CBP's Directives Authorizing Border Agents to Perform
        Cell-Phone Searches Without Warrants ................................................ 20

III.    Factual Background .............................................................................. 22

IV.     Procedural Background ......................................................................... 24

SUMMARY OF ARGUMENT .................................................................... 26

ARGUMENT ............................................................................................... 29

I.      Standard of Review .............................................................................. 29

II.     The CBP and ICE Directives Are Ultra Vires Because They
        Authorize Unconstitutional Warrantless Cell Phone Searches at the
        Border .................................................................................................. 30

A.    The Border Search Exception Does Not Extend to Cell Phones ....................................................................................31

    1.    Supreme Court Precedent Instructs that Existing Warrant Exceptions Must Be Reexamined in the Context of Cell Phones.............................................32

    2.    Extending the Border Search Exception to Cell Phone Searches  Would Materially Reduce the Degree of Privacy Against Government that Existed When the Fourth Amendment Was Adopted ........................................39

        a.    Warrantless Cell Phone Searches Implicate Privacy Interests Orders of Magnitude More Significant Than Other Searches.................................39

        b.    The Indispensability of Cell Phones Makes Them Fundamentally Different From Other Effects That Cross the Border ...................................................43

        c.    None of the Traditional Justifications for the Border Search Exception are Materially Advanced By Searching Cell Phones ...........................................45

        d.    Additional Practical Considerations Counsel Against Extending the Border Search Exception to Cell Phones ..............................................49

        e.    The Court Should Join the Fourth and Ninth Circuits In Generally Requiring Warrants for Searches of Cell Phones at the Border ......................52

B.    The Court Should Take this Case En Banc and Overrule Its Contrary Precedent ........................................................55

III.   Mr. Anibowei Has No Adequate Alternative Remedy ...........................55

CONCLUSION.....................................................................................61

CERTIFICATE OF SERVICE .........................................................62

CERTIFICATE OF COMPLIANCE ...............................................63

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner,*
    387 U.S. 136 (1967)..................................................................59

*Alasaad v. Mayorkas,*
    988 F.3d 8 (1st Cir. 2021) .................................................14, 15, 16

*Anibowei v. Mayorkas,*
    144 S. Ct. 551 (Jan. 8, 2024) ...............................................25

*In re Application of U.S. for an Order Directing a Provider of*
    *Elec. Commc'n Serv. to Disclose Records to Gov't,*
    620 F.3d 304 (3d Cir. 2010) ..................................................38

*In re Application of U.S. for Historical Cell Site Data,*
    724 F.3d 600 (5th Cir. 2013)..................................................38

*Arizona v. Gant,*
    556 U.S. 332 (2009)..................................................................5

*Armstrong v. Exceptional Child Care, Inc.,*
    575 U.S. 320 (2015)..........................................................57, 58

*Bangura v. Hansen,*
    434 F.3d 487 (6th Cir. 2006)..................................................58

*Block v. Cmty. Nutrition Inst.,*
    467 U.S. 340 (1984)..................................................................59

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988)..........................................................56, 57

*Boyd v. United States,*
    116 U.S. 616 (1886)..................................................................6

*Carpenter v. United States,*
    585 U.S. 296 (2018)..............................8, 32, 34, 35, 36, 41, 44, 50

*Castillo v. United States,*
144 S. Ct. 410 (2023) ............................................................... 2

*City of Ontario, Cal. v. Quon,*
560 U.S. 746 (2010) ................................................................ 44

*In Re Clarke,*
94 F.4th 502 (5th Cir. 2024) .................................................. 60

*Colo. River Water Conservation Dist. v. United States,*
424 U.S. 800 (1976) ................................................................ 29

*Consol. Edison Co. of N.Y. v. U.S., Dep't of Energy,*
247 F.3d 1378 (Fed. Cir. 2001) .............................................. 58

*Crane v. City of Arlington,*
50 F.4th 453 (5th Cir. 2022) .................................................. 29

*Crispin v. Christian Audigier, Inc.,*
717 F. Supp. 2d 965 (C.D. Cal. 2010) .................................. 42

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................................ 27

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't
of Health & Hum. Servs.,*
396 F.3d 1265 (D.C. Cir. 2005) .............................................. 59

*Fort Bend Cnty. v. U.S. Army Corps of Eng'rs,*
59 F.4th 180 (5th Cir. 2023) .................................................. 58

*Guerra v. Castillo,*
82 F.4th 278 (5th Cir. 2023) .................................................. 29

*Haines v. Fed. Motor Carrier Safety Admin.,*
814 F.3d 417 (6th Cir. 2016) .................................................. 58

*Hinojosa v. Horn,*
896 F.3d 305 (5th Cir. 2018) .................................................. 58

*Katz v. United States,*
389 U.S. 347 (1967) ........................................................... 8, 32

*Kyllo v. United States,*
  533 U.S. 27 (2001)..............................................................8, 32, 39

*Larson v. Domestic & Foreign Corp.,*
  337 U.S. 682 (1948)...................................................................59

*Malik v. U.S. Dep't of Homeland Sec.,*
  78 F.4th 191 (5th Cir. 2023) ................................................2, 19, 20

*Mance v. Sessions,*
  896 F.3d 390 (5th Cir. 2018)......................................................55

*Martinez v. Pompeo,*
  977 F.3d 457 (5th Cir. 2020)......................................................60

*Missouri v. McNeely,*
  569 U.S. 141 (2013)...................................................................51

*Monsanto Co. v. Geertson Seed Farms,*
  561 U.S. 139 (2010)...................................................................57

*Nat'l Treasury Emps. Union v. Von Raab,*
  489 U.S. 656 (1989)...................................................................51

*New York v. P.J. Video, Inc.,*
  475 U.S. 868 (1986)...................................................................43

*Payne v. Progressive Fin. Servs., Inc.,*
  748 F.3d 605 (5th Cir. 2014)......................................................29

*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative
  Health Servs., Inc. v. Kauffman,*
  981 F.3d 347 (5th Cir. 2020)......................................................55

*Reno v. ACLU,*
  521 U.S. 844 (1997)...................................................................49

*Riley v. California,*
  573 U.S. 373 (2014)..................................5, 8-9, 33-37, 39-40, 44, 48, 50, 52, 54

*Rollerson v. Brazos River Harbor Navigation Dist.,*
  6 F.4th 633 (5th Cir. 2021) ........................................................58

*Royal Canin U. S. A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025) ................................................................................27, 60

*R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*,
   894 F. Supp. 2d 1128 (D. Minn. 2012) ...........................................41

*Sackett v. E.P.A.*,
   566 U.S. 120 (2012) ......................................................................................59

*Stanford v. Texas*,
   379 U.S. 476 (1965) ......................................................................................43

*Steagald v. United States*,
   451 U.S. 204 (1981) ......................................................................................51

*Torres v. Madrid*,
   592 U.S. 306 (2021) ......................................................................................32

*United States v. Aigbekaen*,
   943 F.3d 713 (4th Cir. 2019) ............................................12, 13, 50, 52, 53

*United States v. Cano*,
   934 F.3d 1002 (9th Cir. 2019) ........................................10, 11, 46, 52, 53

*United States v. Carpenter*,
   819 F.3d 880 (6th Cir. 2016) ................................................................38

*United States v. Castillo*,
   70 F.4th 894 (5th Cir. 2023) ...............................................................2, 19

*United States v. Cotterman*,
   709 F.3d 952 (9th Cir. 2013) ..........................................................44, 47

*United States v. Davis*,
   785 F.3d 498 (11th Cir. 2015) ..............................................................38

*United States v. Flores-Montano*,
   541 U.S. 149 (2004) .................................................................................5, 7

*United States v. Graham*,
   824 F.3d 421 (4th Cir. 2016) .................................................................38

*United States v. Kolsuz,*
  890 F.3d 133 (4th Cir. 2018)..................................................50, 52

*United States v. Lefkowitz,*
  285 U.S. 452 (1932)........................................................................51

*United States v. Molina-Isidoro,*
  884 F.3d 287 (5th Cir. 2018)........................................................5

*United States v. Montoya de Hernandez,*
  473 U.S. 531 (1985)..............................................................6, 7, 37

*United States v. Ramsey,*
  431 U.S. 606 (1977)..........................................................5, 6, 7, 37

*United States v. Robinson,*
  414 U.S. 218 (1973)......................................................................33

*United States v. Smith,*
  110 F.4th 817 (5th Cir. 2024) ........................................36, 41, 42, 44

*United States v. Touset,*
  890 F.3d 1227 (11th Cir. 2018)............................................17, 18, 19

*United States v. Vergara,*
  884 F.3d 1309 (11th Cir. 2018)................................................17, 18

*United States v. Warshak,*
  631 F.3d 266 (6th Cir. 2010)......................................................41

*United States v. Williams,*
  942 F.3d 1187 (10th Cir. 2019).................................................15

*United States v. Wurie,*
  728 F.3d 1 (1st Cir. 2013) ..........................................................38

*United States v. Xiang,*
  67 F.4th 895 (8th Cir. 2023) .................................................16, 17

*Walz v. Tax Comm'n,*
  397 U.S. 664 (1970)......................................................................56

x

*Weems v. United States*,
    217 U.S. 349 (1910)................................................................32

*Zurcher v. Stanford Daily*,
    436 U.S. 547 (1978)................................................................43

**Constutitional Provisions and Statutes**

U.S. Const. amend. IV...............................................................5

5 U.S.C.
    § 702.........................................................................................59
    § 704...............................................2, 3, 25, 28, 29, 55, 56, 57, 59
    § 706...........................................................................................3
    § 706(2)(B)...........................................................................30, 59

8 U.S.C. § 1503 .......................................................................60

Collections Act, ch. 5, 1 Stat. 29 (1789).................................6

**Rules**

Fed. R. App. P. 40(b)(2)...........................................................55

Fed. R. Crim. P. 4.1 ................................................................51

**Other Authorities**

Daniel J. Solove, *The First Amendment as Criminal Procedure*,
    82 N.Y.U. L. Rev. 112 (2007) ...........................................42

Haley Amster & Brett Diehl, Note, *Against Geofences*,
    74 Stan. L. Rev. 385 (2022) ..............................................41

Jacob W. Landynski,
    *Search and Seizure and the Supreme Court* (1966).....................6

Lauren K. Donohue, *Customs, Immigration, and Rights:*
    *Constitutional Limits on Electronic Border Searches*,
    128 Yale L.J. F. 961 (2019).........................................40, 48

Matthew B. Kugler, Comment, *The Perceived Intrusiveness of Searching Electronic Devices at the Border: An Empirical Study*, 81 U. Chi. L. Rev. 1165 (2014) ..............................................43

Note, *The Border Search Muddle*, 132 Harv. L. Rev. 2279 (2019) ...................6

Orin Kerr, *The Digital Fourth Amendment: Privacy and Policing in Our Online World* (2025) ................................................44, 46, 47

Orin S. Kerr, *The Fourth Amendment and the Global Internet*, 67 Stan. L. Rev. 285 (2015) ........................................................43, 49

Wayne R. LaFave, *Being Frank About the Fourth: On Allen's "Process of 'Factualization' in the Search and Seizure Cases,"* 85 Mich. L. Rev. 427 (1986)..............................................................53

## INTRODUCTION

United States Immigration and Customs Enforcement and United States Customs and Border Protection have border search Directives that authorize border agents to search cell phones at the United States border without warrants. This Administrative Procedure Act case seeks vacatur of those Directives because warrantless cell phone searches generally violate the Fourth Amendment absent case-specific special circumstances, such as exigency. The question of whether warrants are ordinarily required to search cell phones at the border has resulted in a sharp, recognized, and enduring circuit conflict. This question is one of substantial importance, evident from the United States' petition to the Supreme Court for review in *United States v. Cano*, S. Ct. No. 20-1043 (filed Jan. 29, *cert. denied*, June 28, 2021).

Appellant George Anibowei, a Texas immigration attorney, has faced repeated searches of his cell phone without a warrant when crossing the U.S. border. Border agents searched his phone every time he traveled internationally for several years, and no fewer than four times while this lawsuit was pending. The first search was a "forensic" search in which government agents downloaded and kept the data on his phone, including communications protected by the attorney-client privilege. Later searches

were "manual" searches in which government agents scrolled through text messages, emails, and other private information on the phone by hand. This pattern of searches has compelled Mr. Anibowei to refrain from carrying his work phone during international travel for years now.

As stated above, Mr. Anibowei's suit involves one claim: a claim for vacatur of ICE's and CBP's border search Directives that authorize border agents to conduct warrantless searches of cell phones at the border. The district court dismissed this case on two grounds on which this Court should reverse.[1] First, applying this Court's controlling precedents in *United States v. Castillo*, 70 F.4th 894, 898 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 410 (2023), and *Malik v. U.S. Department of Homeland Security*, 78 F.4th 191, 200 (5th Cir. 2023), the district court held that ICE's and CBP's Directives are lawful because warrants are never required to search cell phones at the United States border. ROA.1142-44 & n.5. Second, the district court held that Mr. Anibowei cannot pursue vacatur of the Directives under the APA because 5 U.S.C. § 704 confers jurisdiction only over "final agency action for which there

---

[1] The government raised a host of other grounds for dismissal. The district court correctly rejected all of them. To the extent the government seeks to re-raise them as alternative grounds for affirmance, the reply brief will explain that they are meritless.

is no other adequate remedy in a court," and in its view, Mr. Anibowei had another adequate remedy because he could have sought "an injunction against enforcement of those Directives pursuant to a constitutional challenge" against CBP and ICE. ROA.1139-41.

This Court should take this case *en banc* and hold that warrants are required to search cell phones at the border. The Fourth and Ninth Circuits already require warrants for many (if not virtually all) cell phone searches at the border. This Court should join those circuits. This Court should also hold that 5 U.S.C. § 704 permits Mr. Anibowei's suit, as the APA expressly authorizes relief for violations of a "constitutional right." 5 U.S.C. § 706. It is contrary to the text of the statute to hold § 704 categorically takes away what Congress expressly included in § 706. Instead, § 704 only precludes judicial review in narrow circumstances where Congress has created a special statutory mechanism for challenging the lawfulness of agency action. That is not the case here. And the APA has never been interpreted to treat the possibility of an implied equitable remedy as an adequate substitute for vacatur. The district court's holding would nullify the APA's judicial review provisions, for defendants could virtually always claim that a federal court's inherent equitable power to enjoin federal agencies' unconstitutional actions

is an alternative, adequate remedy. No appellate court has ever held that the APA is displaced in these circumstances. This Court should not be the first.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the complaint challenges the final action of a federal agency under the laws and Constitution of the United States. The district court entered a final judgment dismissing this case on November 22, 2024. ROA.1146. Appellant timely noticed this appeal on November 26, 2024. This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal of a final judgment dismissing all claims and parties.

## STATEMENT OF THE ISSUES

1. Whether, absent exigent circumstances or another case-specific exception, searching a cell phone without a warrant violates the Fourth Amendment, even if the search is conducted at the U.S. border.

2. Whether there is an adequate alternative remedy to APA review to challenge the ICE and CBP Policies at issue in this case.

## STATEMENT OF THE CASE

### I. Legal Background on Cell Phone and Border Searches

#### A. Supreme Court Precedent and Its Applications

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Ordinarily, government searches by law enforcement officers require a warrant supported by probable cause. *Riley v. California*, 573 U.S. 373, 382 (2014); *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

**1.** There are exceptions to the warrant requirement, however. One is the "border search" exception. *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004); *United States v. Molina-Isidoro*, 884 F.3d 287, 290 (5th Cir. 2018).

The Supreme Court has "stated that 'searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border.'" *Flores-Montano*, 541 U.S. at 152-53 (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)). The Court has also observed that the "longstanding recognition that searches at our borders without probable cause and without a warrant are

nonetheless 'reasonable' has a history as old as the Fourth Amendment itself."

*Ramsey*, 431 U.S. at 619.[2]

But the border search exception has its limits. The Supreme Court has held that a person's "Fourth Amendment rights" must still be balanced "against the sovereign's interests at the border." *United States v. Montoya de Hernandez*, 473 U.S. 531, 539 (1985). For example, the Court has recognized that intrusive, non-routine border searches must be "justified" by "reasonabl[e] susp[icion]." *Id.* at 541.

---

[2] *See* Collections Act, ch. 5, §§ 23-24, 1 Stat. 29, 43 (1789); *Boyd v. United States*, 116 U.S. 616, 623 (1886). Subject to certain procedural safeguards, the Collections Act generally permitted customs officers who had "reason to suspect" that a specific vessel was fraudulently concealing dutiable goods to warrantlessly search the vessel and containers located therein for such concealed customable wares at the time and place of the vessel's entry into the U.S. from a foreign country. *See* Collections Act §§ 23-24. The Act did not embrace a person's "papers." *See Boyd*, 116 U.S. at 622-23; Note, *The Border Search Muddle*, 132 Harv. L. Rev. 2279-80, 2294 (2019) ("There is no historical pedigree associated with searches of papers, as opposed to containers capable of concealing physical contraband, at the border."). And it was not understood to apply to searches for inculpatory evidence to be used in a criminal proceeding against an individual, including crimes related to customs. *See Boyd*, 116 U.S. at 623; Jacob W. Landynski, *Search and Seizure and the Supreme Court* 90 (1966) ("[T]he long-standing congressional approval of search of vessels without warrant sanctioned only a hunt for goods entering the United States on which duty had not been paid, not for evidence to be seized domestically for use in a criminal prosecution.").

The Supreme Court has never addressed the border search exception's application to searches of data or information contained on a traveler's cell phone. The three important border search cases the Court has decided in the last half-century all involved searches or seizures intended to prevent contraband *physical* items (specifically, illegal drugs) from being smuggled into the country. In *Ramsey*, the Court held that a customs agent who had "reasonable cause to suspect" that sealed international mail contained drugs based on its "bulk[]" could warrantlessly open the mail in order to confirm or dispel his suspicions. 431 U.S. at 614, 622-24. But the Court explicitly left unresolved the question whether border agents can warrantlessly open an international envelope simply to read a letter inside. *See id.* at 622-24 & n.18. Then, in *Montoya de Hernandez*, the Court held that border agents may, without a warrant, temporarily seize a traveler at the border based on reasonable suspicion "that the traveler is smuggling contraband in her alimentary canal." 473 U.S. at 541. Finally, in *Flores-Montano*, the Court held that border agents may remove a vehicle's gas tank and search it for drugs without reasonable suspicion. 541 U.S. at 154-55.

**2.** The Supreme Court has further advised that when a modern, technological innovation gives law enforcement the ability to obtain personal

information formerly beyond its reach, that practical reality requires courts to assess the legality of the search. *See, e.g.*, *Kyllo v. United States*, 533 U.S. 27, 33-34 (2001). The legality of the search must be assessed not only in light of prior caselaw but, more generally, in terms of the timeless concerns underlying the Fourth Amendment. *See Carpenter v. United States*, 585 U.S. 296, 305-06 (2018) (cell-site location data); *Kyllo*, 533 U.S. at 33-34 (thermal imaging); *Katz v. United States*, 389 U.S. 347, 352-53 (1967) (listening in on telephone booth calls). "It would be foolish," the Court has said, to contend that the Fourth Amendment cannot take account of "the advance of technology." *Kyllo*, 533 U.S. at 33-34.

The Court has thus held that when it comes to cell phones, courts must determine anew whether traditional exceptions to the warrant requirement should be applied to them. Indeed, in *Riley*, in considering the longstanding warrant exception permitting warrantless searches pursuant to a lawful arrest, the Court did not automatically extend the exception to searches of cell phones' digital data. It instead analyzed whether the logic behind the warrant exception applied to cell phone searches. 573 U.S. at 386. In doing so, the Court made clear that cell phones are materially different from the other types of objects a person might carry because they contain huge quantities of highly

personal data not previously containable in a pocketable object, and because carrying a cell phone is indispensable to participation in modern society. *Id.* at 393, 395-96.

Ultimately, the *Riley* Court declined to extend the search-incident-to-arrest exception to cell phones, *id.* at 386, holding that a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: "A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is," *id.* at 396-97. The Court determined that the extraordinary privacy intrusion effected by a cell phone search could not justify application of the search-incident-to-arrest exception to cell phones, especially given that a warrantless search of intangible digital data scarcely advances the government's interests in protecting officers from concealed weapons and preventing the arrestee's destruction of evidence. *See id.* at 386-91. These interests, the Court recognized, could be advanced equally by simply seizing the phone and securing a warrant to search it. *See id.* at 391, 393 (rejecting the government's argument that a cell phone was "materially indistinguishable" from any other

container a person might carry because this was "like saying a ride on horseback is materially indistinguishable from a flight to the moon.").

## B. The Circuit Split Over the Application of the Border-Search Exception to Cell Phones

Modern cell phones emerged in the summer of 2007 with Apple's release of the first iPhone. Since then, a circuit conflict has emerged over the extent to which the border-search exception operates to pare back or eliminate the warrant requirement when searches of cell phones happen at the United States border. Understanding the full extent of the conflict first requires knowing a distinction that has emerged in the decisional law between so-called "manual" and "forensic" cell phone searches. "Manual" searches are searches where a government agent scrolls through messages, photos, and other data on the phone by hand. "Forensic" searches, in contrast, are searches where a government agent downloads and retains all the data on the phone for further inspection and analysis using digital tools. Circuits are divided not merely over how the border search doctrine applies to cell phones, but also how it applies to each of these distinct types of searches.

### 1. The Fourth and Ninth Circuits Generally Require Warrants

**a.** The leading Ninth Circuit case is *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019). There, the Ninth Circuit held that warrants are required to

search cell phones at the border—forensically or manually—unless the search is directed at the interdiction of digital contraband. *Id.* at 1007.

The Ninth Circuit specifically held that the permissible scope of warrantless border searches is limited to contraband; border agents cannot otherwise conduct warrantless searches of cell phones at the border, even for evidence of past or future border-related crimes. *Cano*, 934 F.3d at 1018, 1020. The court explained that the border-search doctrine does not encompass "searches for evidence that would aid in prosecuting past and preventing future border-related crimes." *Id.* at 1016-17. Instead, "the border search exception authorizes warrantless searches of a cellphone only to determine whether the phone contains contraband." *Id.* at 1018. The court further reasoned that "'detection of … contraband is the strongest historic rationale for the border-search exception'"; thus, searches of electronic devices at the border "cannot be 'justified'" unless "limited in scope to a search for digital contraband" on the device itself. *Id.* at 1007, 1018-19 (citations omitted). The court acknowledged that "the detection-of-contraband justification would rarely seem to apply to an electronic search of a cell phone outside the context of child pornography." *Id.* at 1021 n.13.

**b.** The leading Fourth Circuit case is *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019). In *Aigbekaen*, the Fourth Circuit held that warrants are required to search cell phones at the border unless the search relates to an "offense that bears some nexus to the border search exception's purposes of protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to export or import contraband." *Id.* at 721.

In this case, DHS asked CBP officers to seize Aigbekaen's electronic devices upon his arrival from an international flight, based on information indicating that he was engaged in sex trafficking. *Id.* at 718. Acting without a warrant, officials seized and performed a forensic search of Aigbekaen's cell phone, laptop, and iPod, which revealed evidence of sex trafficking. *Id.* The district court denied Aigbekaen's motion to suppress any evidence recovered from the warrantless forensic searches as unconstitutional under the Fourth Amendment, concluding that the searches were constitutional. *Id.* at 719.

Building on prior Fourth Circuit precedent, the court held that a warrantless forensic search under the border-search exception requires "individualized suspicion of an offense that bears some nexus" to the exception's purposes. *Id.* at 721. The court "conclude[d] that the warrantless

forensic searches of [the defendant's] devices … lacked the requisite nexus to the recognized historic rationales justifying the border search exception." *Id.* It also acknowledged that while the border officers had probable cause to suspect that Aigbekaen "had previously committed grave *domestic* crimes" when he landed at the airport, they had "no reasonable basis to suspect that [those] crimes had any … transnational component." *Id.*

The Fourth Circuit further rejected the notion that non-routine, intrusive, forensic searches "are reasonable simply by virtue of the fact that they occur at the border." *Id.* at 722 (quotation marks omitted). The court noted that, in the context of such searches, the Supreme Court "has explicitly struck a balance between the interests of the Government and the privacy of the individual." *Id.* (quotation marks omitted). Accordingly, "a nonroutine search's *location* is not dispositive of whether the border search exception applies; rather, it is the search's relation to the Government's *sovereign interests* that is paramount." *Id.*

### 2. The First, Eighth, Tenth, and Eleventh Circuits—and This Circuit—Never Require Warrants

In direct conflict with the Fourth and Ninth Circuits, the First, Eighth, Tenth, and Eleventh Circuits, as well as this Circuit, have held that warrants are generally not required to conduct cell phone searches at the border.

**a.** In the First Circuit, warrants are never required to conduct a cell phone search at the border. In *Alasaad v. Mayorkas*, 988 F.3d 8 (1st Cir. 2021), the court held that warrantless cell phone searches—both forensic and manual—are always permitted at the border. *Id.* at 18. In doing so, the First Circuit specifically rejected the argument that warrants should be required where the search lacks a nexus to the border search exception's reason for existence. *Id.* at 19-20.

In *Alasaad*, U.S. citizens and one lawful permanent resident whose electronic devices had been subjected to warrantless searches at the U.S. border pursuant to the same ICE and CBP Directives that are at issue in this case brought a civil suit alleging that they were unlawfully searched in violation of the Fourth Amendment. *Id.* at 12-14.

The First Circuit affirmed in part and vacated in part, holding that the Directives comply with the Fourth Amendment. *Id.* at 12, 23. The court first held that neither manual nor forensic searches of electronic devices at the border require a warrant. *Id.* at 16-17. The court further rejected the plaintiffs' claim that manual searches of cell phones require reasonable suspicion. *See id.* at 12, 18. The First Circuit also dismissed the Ninth Circuit's "narrow" view that the border-search exception is limited to searches for contraband, finding

that it "fail[ed] to appreciate the full range of justifications for the … exception beyond the prevention of contraband itself entering the country." *Id.* at 21. Accordingly, the court held that forensic border searches of electronic devices "may be used to search for contraband, evidence of contraband, or for evidence of activity in violation of the laws enforced or administered by [border officials]." *Id.*

**b.** The Tenth Circuit has similarly concluded that warrants are never required to conduct a cell phone search at the border. In *United States v. Williams*, 942 F.3d 1187 (10th Cir. 2019), the court upheld a forensic search of a cell phone, which yielded evidence of child pornography, and that was based on reasonable suspicion but specifically "decline[d]" to hold that reasonable suspicion is required for "searches of personal electronic devices at the border." *Id.* at 1190.

Finding that the government officials had reasonable suspicion of "some criminal activity" before searching Williams's electronic devices, the Tenth Circuit noted that Williams's "own arguments preclude[d] him from prevailing." *Id.* at 1190-91. In so doing, the Tenth Circuit rejected the argument that the officer's suspicion must be "particularized" to enforcing the laws that are within border officers' purview. *Id.* at 1191.

**c.** The Eighth Circuit has also held that warrants are never required to conduct a cell phone search at the border. In *United States v. Xiang*, 67 F.4th 895 (8th Cir. 2023), a case involving suspected economic espionage on behalf of a Chinese competitor, the Eighth Circuit "agree[d]" that the government need not "obtain a warrant to conduct a routine border search of electronic devices." *Id.* at 900. Regarding non-routine border searches, the court held that the "appropriate standard" is "some level of reasonable, individualized suspicion" of some crime, "but not probable cause or a warrant." *Id.* at 901.

The Eighth Circuit rejected Xiang's "primary argument on appeal" "that the government needed a warrant to search his electronic devices 'because the forensic search did not fall within the Fourth Amendment border-search exception.'" *Id.* 899-00. The court reasoned that "[n]o Circuit has held that the government must obtain a warrant to conduct a routine border search of electronic devices," and the First Circuit had already "carefully explained why [defendant's] broad argument 'rests on a misapprehension of the applicability' of *Riley*." *Id.* at 900 (quoting *Alasaad*, 988 F.3d at 16-19). The Eighth Circuit then stated simply: "We agree." *Id.*

The Eighth Circuit also rejected Xiang's argument, based on *Cano* and *Aigbekaen*, that the search violated the Fourth Amendment because it was

16

"not tethered to any border search justifications" and thus fell outside the border-search exception. *Id.* The court instead adopted the First Circuit's holding in *Alasaad*, concluding that "searches for mere evidence of criminal activity" fall squarely within the border-search exception to the warrant requirement. *Id.* Finally, the Eighth Circuit held that border agents need only have reasonable suspicion of criminal activity to justify a warrantless forensic search. *Id.* at 900-03.

**d.** The Eleventh Circuit has adopted the position furthest from the Fourth and Ninth Circuits, holding that neither a warrant nor reasonable suspicion is required to conduct a cell phone search at the border, no matter how intrusive. The Eleventh Circuit first rejected a warrant requirement in *United States v. Vergara*, 884 F.3d 1309, 1311 (11th Cir. 2018), over a vigorous dissent by Judge Jill Pryor. It then rejected even a reasonable suspicion standard in *United States v. Touset*, 890 F.3d 1227, 1232-33 (11th Cir. 2018).

In *Vergara*, a case involving evidence of child pornography found at the border, a divided panel of the Eleventh Circuit held that "border searches never require a warrant or probable cause." 884 F.3d at 1311.

Judge Pryor dissented. *See id.* at 1313-19 (Pryor, J., dissenting). Judge Pryor would have held that, following *Riley*, border agents must secure a

17

warrant supported by probable cause to engage in a forensic search of a cell phone at the border. *See id.* at 1318-19.

Shortly after *Vergara*, a divided panel of the Eleventh Circuit concluded that "the Fourth Amendment does not require any suspicion for forensic searches of electronic devices at the border." *Touset*, 890 F.3d at 1231.

In *Touset*, border agents seized Touset's electronic devices upon his arrival at the airport from an international flight after receiving information that suggested he was involved with child pornography. *Id.* at 1230. A border agent performed a manual search of Touset's cell phones and camera but, finding nothing, returned the devices to him. *Id.* Forensic searches of Touset's two laptops and two external hard drives, however, revealed child pornography. *Id.* Touset moved to suppress evidence obtained from the forensic searches of his electronic devices. *Id.* at 1231. The district court denied the motion, finding that reasonable suspicion justified the searches. *Id.*

The Eleventh Circuit affirmed. *Id.* at 1229. The court "s[aw] no reason why the Fourth Amendment would require suspicion for a forensic search of an electronic device when it imposes no such requirement for a search of other personal property." *Id.* at 1233. In so holding, the Eleventh Circuit expressly rejected the argument that "electronic devices should receive special

treatment because so many people now own them or because they can store vast quantities of records or effects." *Id.*

The court acknowledged that its holding conflicted with the Fourth and Ninth Circuits' holdings "that the Fourth Amendment requires at least reasonable suspicion for forensic searches of electronic devices at the border," but it explained that it was "unpersuaded" by that view. *Id.* at 1234.

**e.** This Circuit staked out its position on the conflict in a pair of cases: *United States v. Castillo*, 70 F.4th 894, 898 (5th Cir. 2023), and *Malik v. U.S. Department of Homeland Security*, 78 F.4th 191, 201 (5th Cir 2023). In those cases, the Court held that neither a warrant nor reasonable suspicion is required to manually search a cell phone at the border, regardless of the subject matter of the search or the justification for it.

In *Castillo*, the Court held that "no individualized suspicion is required for the government to undertake a manual border search of a cell phone." 70 F.4th at 895. The Court recognized that "[t]he circuits are divided" over the application of the border-search exception to forensic searches of cell phones. *Id.* But, after concluding that most circuits do not require warrants or reasonable suspicion for manual cell phone searches at the border, the Court "adopt[ed] that consensus." *Id.*

More recently, the Court declined to extend *Riley*'s warrant requirement to forensic cell phone searches. In *Malik*, the Court explained that its "precedent does not currently require a warrant for cell-phone searches at the border," 78 F.4th at 201; individualized suspicion need not be present for manual searches, *id.* at 201; and reasonable suspicion, not probable cause, is the proper standard for forensic searches, *id.* at 201-02. The Court noted that, for forensic searches, most circuits "differed *only* as to whether reasonable suspicion is required." *Id.* at 201.

## II. ICE's and CBP's Directives Authorizing Border Agents to Perform Cell-Phone Searches Without Warrants

In 2009, CBP and ICE promulgated Directives authorizing warrantless searches of all electronic devices, including cell phones, possessed by any person entering or exiting the United States. Until 2018, both Directives empowered officers to "examine electronic devices" and "review and analyze the information encountered at the border" "with or without individualized suspicion." ROA.1050-83 (¶ 5.1.2). They permitted CBP and ICE to retain devices and data indefinitely. ROA.1056 (¶ 5.4.1.1); ROA.1057 (¶ 5.4.2.3); ROA.1068-69 (¶¶ 5.5.1.1, 5.5.1.2); ROA.1070 (¶ 5.5.2.3); ROA.1073 (¶ 6.1); ROA.1078-79 (§ 8.5).

On January 4, 2018, CBP issued a new, superseding Directive regarding border searches. *See* ROA.1060-71. ICE has not updated its policy. CBP's new Directive preserves its authority to perform what it calls "basic" searches of electronic devices without any suspicion. ROA.1063 (¶ 5.1.3). The basic search authorization permits customs officers to request that travelers unlock their mobile phones and present them for inspection, whereupon the officer is free to access all content and communications contained on the device. *See* ROA.1065 (¶ 5.3.1).

The Directive also permits "advanced" searches based on "reasonable suspicion" or "a national security concern." ROA.1064 (¶ 5.1.4). An "advanced" (or "forensic") search goes further than a basic search: The "Officer connects external equipment … to an electronic device not merely to gain access to the device, but to review, copy, and/or analyze its contents." ROA.1064 (¶ 5.1.4). Information gathered during these searches is subject to an elaborate data-retention policy that uses the passage of time and the data's contents to determine whether the government may retain the data, for how long, and whether it may be shared. ROA.1068-70 (§ 5.5).

## III.    Factual Background

Mr. Anibowei is a naturalized U.S. citizen and an attorney in Texas. ROA.563-64 (¶¶ 82-83). A substantial number of his clients are immigrants in removal proceedings adverse to DHS, and Mr. Anibowei regularly uses his smartphone to engage in confidential communications with his clients. ROA.569 (¶¶ 103–04).

Mr. Anibowei travels often. ROA.564 (¶ 85). He typically goes to Nigeria several times each year to visit his siblings, extended family, and friends. ROA.564 (¶ 85). Mr. Anibowei is a frequent tourist in Europe and the Caribbean. ROA.564 (¶ 85). As an immigration attorney, he also travels regularly for work-related reasons. ROA.549 (¶ 15).

On October 10, 2016, border agents at Dallas-Fort Worth International Airport (DFW) seized Mr. Anibowei's cell phone as he returned home from a weekend visit to Toronto. ROA.568 (¶¶ 98-100). Acting without a warrant, the agents copied the data on his phone. ROA.550 (¶ 16); ROA.568 (¶ 100). To this day, the government has retained the data. ROA.569 (¶ 105).

Since that initial forensic search, border agents have warrantlessly searched Mr. Anibowei's phone four additional times. ROA.569 (¶ 107). A cell phone search in February 2017 is typical of the searches Mr. Anibowei

22

underwent: Mr. Anibowei was returning from visiting relatives in Nigeria when DFW border agents placed him in secondary inspection. ROA.570 (¶ 108). There, the agents thoroughly examined all of Mr. Anibowei's luggage and demanded to see his cell phone. ROA.570 (¶ 108). An agent then extensively searched Mr. Anibowei's phone in front of him, likely viewing Mr. Anibowei's text messages, WhatsApp communications, and e-mails. ROA.570 (¶ 108).

All told, federal officers have seized and searched Mr. Anibowei's cell phone at least five times. ROA.550 (¶ 17). These searches took between two and five hours. ROA.566 (¶¶ 92-93). One search delayed Mr. Anibowei's flight by two hours; another caused him to miss his flight altogether. ROA.566 (¶¶ 92-93). During several of these inspections, Mr. Anibowei observed the agents view his text messages and other communications. ROA.550 (¶ 17).

Mr. Anibowei's work as an immigration attorney demands his continued international travel, ROA.549 (¶ 15), but this consistent governmental harassment has forced him to stop carrying his work phone abroad.; ROA.569 (¶¶ 105-06); *see also* ROA.569-70 (¶¶ 103, 112) (noting confidential communications on Mr. Anibowei's phone and his intention to continue traveling).

## IV.    Procedural Background

Mr. Anibowei has unsuccessfully fought the federal government to prevent future warrantless searches, and for the return of his personal data and his clients' privileged information, for nearly a decade. ROA.969. Mr. Anibowei initially brought this suit *pro se* in December 2016. ROA.30-46; ROA.969; *see also* ROA.303. The parties devoted the next two years briefing threshold preliminary issues. ROA.9-13; ROA.969-70. In February 2019, the district court dismissed Mr. Anibowei's complaint without prejudice on the basis of an apparent technical defect in the pleadings. ROA.473-91. Noting the underlying importance of the issues, however, the district court invited Mr. Anibowei to replead. ROA.489-91.

Mr. Anibowei retained counsel and submitted an amended complaint to address the technical defect. ROA.545-82. The amended complaint included several counts and sought various forms of relief, including declaratory and injunctive relief. ROA.573-79. The complaint also sought vacatur of the CBP and ICE Directives to the extent they authorize warrantless searches of cell phones. ROA.578-79.

One month later, Mr. Anibowei moved for partial summary judgment or, in the alternative, a preliminary injunction. ROA.641-43; ROA.649-82. The

district court denied both motions. ROA.880-88. Mr. Anibowei appealed, ROA.889-90, and the district court stayed the case over Mr. Anibowei's objection during the pendency of the appeal, ROA.965. Without reaching the merits, this court affirmed the denial of the injunction, finding Mr. Anibowei had failed to carry his burden to establish irreparable harm, ROA.967-79, and the Supreme Court denied certiorari. *Anibowei v. Mayorkas*, 144 S. Ct. 551 (Jan. 8, 2024). The case returned to the district court. ROA.1011.

On remand, Mr. Anibowei voluntarily dismissed all of his remaining claims except his APA claims seeking vacatur of the ICE and CBP Directives. ROA.999-1000; ROA.1128 n.2. The government then moved to dismiss the remaining claim. ROA.1014-46.

The district court granted the motion. ROA.1141. First, the court held that it lacked jurisdiction over Mr. Anibowei's APA claim based on 5 U.S.C. § 704's limitation of judicial review to those final agency actions where "there is no other adequate remedy in a court." ROA.1139-41. The court concluded that Mr. Anibowei had an alternative "adequate remedy" because, in lieu of an APA action, Mr. Anibowei could have brought a constitutional claim and sought an injunction against enforcement of the offending policies. ROA.1140. Second, the court held that this Court's decisions in *Malik* and *Castillo*

foreclosed Mr. Anibowei's challenge on the merits. ROA.1142. The court concluded that those cases held that warrants are never required to search cell phones at the border. ROA.1142.

## SUMMARY OF ARGUMENT

The Court should reverse.

**I.** The Fourth Amendment generally requires warrants to search cell phones, and the border-search exception does not displace that requirement. Cell phones (and especially smartphones) are new, ever-evolving technology. Under controlling Supreme Court precedent, existing warrant exceptions must be reassessed where new technologies fundamentally change the privacy implications of applying a warrant exception. The Supreme Court has not merely commanded that new technologies require reassessment of existing warrant exceptions. Rather, it clearly held in *Riley* that searches of cell phones—in particular—require reassessment of existing warrant exceptions.

Here, that reassessment establishes that the border search exception does not apply to cell phone searches. The privacy intrusion involved in searching cell phones without warrants far exceeds the privacy intrusions associated with any other border searches that have ever historically occurred. Moreover, applying the border search exception to cell phones does not

materially advance the government interest that justifies the exception's existence: interdicting contraband. Indeed, other modern warrant exceptions, like the exigent circumstances exception, address national security concerns at the border. Additionally, given advancements in technology, requiring warrants would pose minimal burden on border agents. Warrants could quickly be secured digitally where there is probable cause to justify a cell phone search.

This Court's contrary precedents in *Malik* and *Castillo*, which hold that warrants are never required to search cell phones at the border, should be overruled. The reasoning and the holdings in those cases are contrary to the Supreme Court's decisions in *Kyllo*, *Carpenter*, and *Riley*. *Malik* and *Castillo* relied primarily on the existence of a circuit consensus on the question presented. But as the Supreme Court showed in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and just reaffirmed in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), a longstanding, universal circuit consensus is not a sufficient basis to decide a constitutional or statutory question. The Court should reconsider *Malik* and *Castillo* and should hold that the border search exception does not apply to the search of cell phones at the border.

Rather, warrants are required for virtually all searches of cell phones at the border.

**II.** The APA permits Mr. Anibowei's challenge to ICE's and CBP's Directives. Title 5 U.S.C. § 704 allows judicial review unless there is no "other adequate remedy" for the "final agency action" at issue. Supreme Court and Fifth Circuit precedent also make clear that there must be legislative intent to create an alternative remedy. Agency action is thus challengeable unless Congress has created another statutory method of seeking relief from the agency action that a regulated party seeks to challenge. Here, Congress has created no other special statutory mechanism for challenging ICE's and CBP's Directives. Consequently, the Directives are subject to ordinary judicial review under the APA.

The district court erred in holding that an implied injunctive remedy can serve as an "adequate remedy" for "final agency action" under 5 U.S.C. § 704. No federal court has ever held this. The logic of the district court's holding would vastly narrow the APA's scope, making judicial review thereunder unavailable any time an action for an injunction could theoretically redress a regulated party's injuries. That would radically rewrite the APA and would be

inconsistent with its text and history. For these reasons, this Court should reverse.

## ARGUMENT

### I.    Standard of Review

This Court reviews "a district court's grant of a 12(b)(6) motion to dismiss de novo." *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023). Thus, this Court will reverse a grant of a motion to dismiss if the complaint pleaded "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022)). In reviewing the complaint, the court "must accept all facts as pleaded and construe them in the light most favorable to the plaintiff." *Id.* (quoting *Crane*, 50 F.4th at 461).

The district court held that § 704's application deprived it of "jurisdiction." A "grant of a motion to dismiss for lack of subject-matter jurisdiction" is likewise reviewed de novo, "applying the same standard as the district court." *Payne v. Progressive Fin. Servs., Inc.*, 748 F.3d 605, 607 (5th Cir. 2014). The court has a "virtually unflagging obligation" to "exercise the jurisdiction given" it. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

## II.     The CBP and ICE Directives Are Ultra Vires Because They Authorize Unconstitutional Warrantless Cell Phone Searches at the Border

The CBP and ICE Directives are unlawful because they permit border officials to conduct invasive searches of cell phones and electronic data without a warrant, contrary to the Fourth Amendment. Described as "provid[ing] guidance and standard operating procedures for searching, reviewing, retaining, and sharing information contained in … mobile phones and other communication devices … encountered by [officers] at the border," ROA.1050 (§ 1); ROA.1060 (§ 1); *see* ROA.1072 (¶ 1.1), these Directives, under the agencies' longstanding border search practices, allow officers to seize, retain, copy, and share individuals' digital electronic devices and/or the data contained therein—all without a warrant, *see* ROA.1065-66, 1068-70 (§§ 5.1, 5.4, 5.5) (CBP Directive); ROA.1078 (§ 8.5) (ICE Directive). The Directives, and the searches they permit, contradict both Supreme Court precedent governing the application of warrant exceptions to new technologies and, more specifically, Supreme Court precedent on the application of warrant exceptions to cell phones. This Court should therefore "hold unlawful and set aside" the Directives as "contrary to constitutional right" under the Fourth Amendment. 5 U.S.C. § 706(2)(B).

This Court's decisions in *Castillo* and *Malik* put this Circuit on the wrong side of a deeply entrenched circuit split over what is required to search the contents of a cell phone at the border. This Court should thus reverse the district court's order granting the government's motion to dismiss and hold, consistent with *Kyllo* and *Riley*, that warrants are required for cell phones searched at the border.

## A. The Border Search Exception Does Not Extend to Cell Phones

The border search exception does not extend to the search of cell phones. Thus, the ordinary Fourth Amendment warrant requirement governs cell phone searches at the border. The Fourth Amendment requires weighing the privacy interests at stake against the justifications for the border search exception. This balancing test establishes that the exception should not apply to cell phone searches at the border, as the privacy interests far exceed any justifications. Extending the border search exception to cell phones is especially unwarranted in light of the exigent circumstances exception and the minimal burden the warrant requirement imposes. Because ICE's and CBP's Directives authorize border officials to conduct invasive searches of cell phones without a warrant, they are repugnant to the Fourth Amendment.

1.  **Supreme Court Precedent Instructs that Existing Warrant Exceptions Must Be Reexamined in the Context of Cell Phones**

The Supreme Court has sought to ensure that the Fourth Amendment keeps pace with modern and emerging technologies such as cell phones. *See Carpenter*, 585 U.S. at 305 (cell-site location data); *Kyllo*, 533 U.S. at 33-34 (infrared imaging); *Katz*, 389 U.S. at 352-53 (listening in on telephone calls). The Court has repeatedly advised that "it would be foolish" to contend that the Fourth Amendment cannot take account of "the advance of technology." *Kyllo*, 533 U.S. at 33-34. "Under any other [approach,] a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value, and be converted by precedent into impotent and lifeless formulas." *Weems v. United States*, 217 U.S. 349, 373 (1910). The Fourth Amendment protects "that degree of privacy against government that existed when the Fourth Amendment was adopted." *Carpenter*, 585 U.S. at 305 (quoting *Kyllo*, 533 U.S. at 34); *accord Torres v. Madrid*, 592 U.S. 306, 316-17 (2021). Accordingly, when a modern innovation enables law enforcement to obtain personal information formerly beyond its reach, that "practical" reality requires courts to assess the search's legality not only in light of prior case law, but also, more generally, in terms of the timeless concerns underlying the Fourth Amendment.

The Supreme Court applied this doctrine specifically in the cell phone context in *Riley v. California*, 573 U.S. 373 (2014). Relying on categorical-sounding language in the Supreme Court's decision in *United States v. Robinson*, 414 U.S. 218, 235 (1973), the State of California argued that the Fourth Amendment permits the warrantless search of an arrestee's cell phone incident to arrest because "[i]t is the fact of the lawful arrest which establishes the authority to search." Brief for Respondent State of California at 13-14, *Riley v. California*, 573 U.S. 373 (No. 13-132), 2014 WL 1348466 (2014) (quoting *Robinson*, 414 U.S. at 235). The Supreme Court rejected that argument because "[a] search of the information on a cell phone bears little resemblance to the type of brief physical search considered in *Robinson*." *Riley*, 573 U.S. at 386. The Court reasoned that extending the doctrine to cell phones would be inappropriate because (1) cell phone searches are uniquely intrusive in terms of the quantity and quality of information they disclose; and (2) warrantless searches of cell phone data do not meaningfully advance either of the traditional purposes of the search-incident-to-arrest exception to the warrant requirement—*viz.*, the need to protect officers from concealed, dangerous items on the arrestee's person or within their reach, and the need to prevent the arrestee's destruction of evidence. *See id.* at 385-86. Instead,

the Court held, simply seizing the phone advances both of those interests while permitting officers time and opportunity to obtain a warrant to search it. *See id.* at 388, 403. *Riley* stands for the proposition that "any extension of" traditional exceptions to the warrant requirement (like the border search exception) "to digital data has to rest on its own bottom." *Id.* at 393.

The Supreme Court similarly applied this doctrine in the context of cell phone location data in *Carpenter v. United States*. In that case, the Court explained that none of the traditional justifications for the third-party doctrine "hold[s] up" when applied to cell phone location data. *Carpenter*, 585 U.S. at 315. It accordingly rejected the government's "mechanical[ ]" argument that because location data were technically the "business records" of wireless carriers, they automatically lost Fourth Amendment protection. *Id.* at 313-16 (internal citation marks omitted). The Court reasoned that extending the third-party doctrine to records of cell phone location information would be inappropriate because (1) the information is more detailed and "all-encompassing" than any information that would have been exposed to a third party in the past; and (2) such records are not "voluntarily" exposed to third parties because cell phones are "indispensable to participation in modern society," and also because cell phone location information is generated by "dint

of" the phones' operation rather than any affirmative action on the users' part. *See id.* at 311-15. *Carpenter* stands for the proposition that much of the "intimate," "all-encompassing" data stored on a cell phone (such as location information) cannot be searched without a warrant, no matter where that information is, whether in the hands of a third-party company, or, as relevant here, stored on a cell phone physically located at the border. *Id.* at 311; *see also id.* at 315 (suggesting any search capable of exposing "a detailed chronicle of a person's physical presence compiled every day, every moment" likely requires a warrant).

How *Riley* and *Carpenter* reached their holdings is key. The Court stated in both cases that it was "declin[ing] to extend" existing warrant exceptions to cell phones. *Riley*, 573 U.S. at 386 ("We … *decline to extend Robinson* to searches of data on cell phones." (emphasis added)); *Carpenter*, 585 U.S. at 309 ("We *decline to extend Smith* and *Miller* to cover these novel circumstances." (emphasis added)). Through this deliberate language, *Riley* and *Carpenter* held that cell phones are unique under the Fourth Amendment. *See Riley*, 573 U.S. at 393. Per *Riley*, they were never subject to the search-incident-to-arrest exception. *See id.* at 386. One cannot read *Riley* without concluding that cell phones are fundamentally different than anything that has

come before. *See, e.g.*, *id.* at 385, 396-97. Nor can one read *Carpenter* without concluding that cell phone data implicates privacy interests of paramount importance. *See* 585 U.S. at 310-16.

As this Court, applying *Carpenter*, noted in *United States v. Smith*: "[A] cell phone 'faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales.'" 110 F.4th 817, 832 (5th Cir. 2024) (quoting *Carpenter*, 585 U.S. at 311)). In that case, this Court held that geofence warrants—which enable the government to demand all cell phone location history data for a geographical area across a specified timeframe—are unconstitutional general warrants. *Id.* at 838. In so holding, this Court recognized that the government's use of cell phone location data enabled "permeating police surveillance" because "carrying [a cell phone] is essentially a prerequisite to participation in modern society." *Id.* at 833 (quoting *Carpenter*, 585 U.S. at 305, 315). *Smith*, following *Carpenter*, also declined to extend the third-party doctrine because it "is unreasonable to think of cell phone users as voluntarily assuming the risk of turning over comprehensive dossiers of their physical movements to third parties." *Id.* at 834.

*Riley* reveals that whether a warrant exception has been around for a long time is immaterial. Both the search-incident-to-arrest exception and the third-party doctrine applied to various searches for more than 40 years before *Riley* and *Carpenter* determined they did not extend to cell phones and cell phone location records, respectively. That the "border search exception" has been recognized for longer does not change the fact that its historical purpose was "to exclude aliens," and "prevent smuggling and … prohibited articles from entry," not cell phones. *See Ramsey*, 431 U.S. at 619 (citation omitted).

*Riley* also shows that it is a mistake to analogize cell phone searches to other kinds of border searches of the body, luggage, or vehicles. Warrantless body searches at the border, such as the body cavity search at issue in *Montoya de Hernandez*, 473 U.S. at 533-37, are not like cell phone searches. For one thing, a cell phone can only carry data, not physical objects like drugs, weapons, or other contraband, whereas luggage or the human body can. For another, searching a cellphone is often tantamount to "ransacking [a man's] house for everything which may incriminate him," *Riley*, 573 U.S. at 396, whereas no search of luggage or even of the body, no matter how mortifying, can reveal information so extensive and so intimate.

Finally, *Riley* and *Carpenter* show that it would be an error to extend the border search exception to cell phones on the basis of a supposed "consensus" among lower courts. When the Supreme Court decided *Riley*, only one circuit (the First), in a divided panel decision, had held that searches of cell phone data incident to arrest require a warrant, splitting with every other circuit to have decided the question (namely, the Fourth, Seventh, and Tenth Circuits, and this Court). *See United States v. Wurie*, 728 F.3d 1, 16 (1st Cir. 2013) (Howard, J., dissenting) (explaining that the circuit courts had "unanimously" rejected a warrant requirement and collecting other circuits' cases). When the Supreme Court decided *Carpenter*, only one circuit (the Third) had held that warrants were ever required to obtain historical cell phone location information from third parties (and even then, only in some circumstances), splitting with every other circuit to decide the question (*viz.*, the Fourth, Sixth, and Eleventh Circuits, and this Court). [3] *Riley* and *Carpenter* show that an apparent "consensus" in the lower courts is less

---

[3] *Compare In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 317-19 (3d Cir. 2010), *with United States v. Carpenter*, 819 F.3d 880, 884 (6th Cir. 2016); *United States v. Graham*, 824 F.3d 421, 424-25 (4th Cir. 2016); *United States v. Davis*, 785 F.3d 498, 511-13 (11th Cir. 2015); *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013).

important than careful attention to the justifications underlying a warrant exception and the significant privacy concerns raised by the search of data on cell phones.

Thus, because cell phones are unique, the burden here is on the government to establish that the border search exception should be extended to searches of cell phone data. It has failed to do so.

### 2. Extending the Border Search Exception to Cell Phone Searches Would Materially Reduce the Degree of Privacy Against Government that Existed When the Fourth Amendment Was Adopted

Under *Riley*, the Court must determine whether to extend the border search exception to cell phones. *Riley*, 573 U.S. at 386. And under *Kyllo* and its progeny, the Court must craft Fourth Amendment doctrine in relation to new technologies to "assure[] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted." *Kyllo*, 533 U.S. at 34. Applying those principles here, the government cannot meet its burden to justify extending the border search exception to cell phones.

### a. Warrantless Cell Phone Searches Implicate Privacy Interests Orders of Magnitude More Significant Than Other Searches

Beginning with the privacy and expressive interests involved, a person's interest in the data stored on their cell phone far exceeds their interest in any

other effects routinely carried on one's person. Scholars and courts agree it is difficult to overstate the privacy interests implicated by the search of the data on a cell phone. *See, e.g.,* Lauren K. Donohue, *Customs, Immigration, and Rights: Constitutional Limits on Electronic Border Searches*, 128 Yale L.J. F. 961, 965-66 (2019); *Riley*, 573 U.S. at 393 ("[C]ellphones differ in both a quantitative and a qualitative sense from other objects"). As the Court noted in *Riley*, "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house." *Id.* at 396. Indeed, "[a] phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." *Id.* at 396-97.

Cell phones frequently contain a host of data for which courts have held that warrants are absolutely required. For instance, many cell phones collect and store location tracking data—not just of the user, but often of the user's closest contacts. CBP and ICE officers can access this data from the phone in a variety of ways, from viewing a user's "location history" or "timeline" in Google Maps to examining the "geotags" that are automatically generated when one snaps a photo. *See* Donohue, *supra*, at 1005 & n.230. Thus, officers can access information revealing "a visit to 'the psychiatrist, the plastic

surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour-motel, the union meeting, the mosque, synagogue or church, [or] the gay bar[.]'" *Smith*, 110 F.4th at 833 (quoting Haley Amster & Brett Diehl, Note, *Against Geofences*, 74 Stan. L. Rev. 385, 408 (2022)). *Carpenter* held that such data—to the extent it reveals a comprehensive "record of [one's] physical movements"—is off-limits to law enforcement without a warrant. 585 U.S. at 310. *Carpenter* "decline[d] to extend" the third-party doctrine to such information, *id.* at 309, 315, as did this Court in *Smith*, 110 F.4th at 832-35. Here, the third-party element is not even present. The data that CBP and ICE would search is *on the phone itself* and was never voluntarily disclosed to anyone.

Similarly, courts have found that email searches require a warrant, and virtually all cell phones enable email access. The Sixth Circuit's longstanding and widely cited precedent in *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), requires law enforcement officials to secure a warrant before searching an individual's emails in light of the strong privacy interests implicated in an email search. *See id.* at 284-86. Other courts have similarly held that private information and messages on social media have privacy interests warranting Fourth Amendment protection. *See, e.g.*, *R.S. ex rel. S.S. v. Minnewaska Area*

*Sch. Dist. No. 2149*, 894 F. Supp. 2d 1128, 1142 (D. Minn. 2012); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 991 (C.D. Cal. 2010). If warrantlessly searching emails that one voluntarily sent to a third party violates the Fourth Amendment, it follows that warrantlessly searching emails on a person's *own cell phone* also violates the Fourth Amendment.

Moreover, the threat of cell phone searches powerfully chills the exercise of protected speech in violation of the First Amendment. Policies that permit the government to collect information "can threaten the ability to express oneself, communicate with others, explore new ideas, and join political groups." Daniel J. Solove, *The First Amendment as Criminal Procedure*, 82 N.Y.U. L. Rev. 112, 121 (2007). And ICE's and CBP's Directives chilled Mr. Anibowei's expression in fact: because of these Directives, and the warrantless searches he has endured already, he has ceased carrying his work cell phone when travelling internationally. *See Smith*, 110 F.4th at 837 ("Awareness that the government may be watching chills associational and expressive freedoms." (citation omitted)). It is for this exact reason that numerous cases have recognized that, where expressive materials are involved, "the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness"—

42

are necessary to ensure that searches do not violate the First Amendment.
*Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978); *see also New York v. P.J. Video, Inc.*, 475 U.S. 868, 874-75 (1986); *Stanford v. Texas*, 379 U.S. 476, 485 (1965) (warrant requirement must be followed with the "most scrupulous exactitude" when "things" to be searched or seized implicate the freedom of expression).

> **b.     The Indispensability of Cell Phones Makes Them Fundamentally Different From Other Effects That Cross the Border**

That cell phones are indispensable—and are thus virtually always carried by all people at all times—makes them fundamentally different from other effects travelers have historically carried across border.[4] As the Supreme Court has recently reiterated, carrying a cell phone is not "voluntary" because it "is indispensable to participation in modern society."

---

[4] Justification for the border-search rule has been rooted in the idea that individuals who do not want an effect to be searched while crossing the border can simply leave it behind. *See* Orin S. Kerr, *The Fourth Amendment and the Global Internet*, 67 Stan. L. Rev. 285, 321 (2015) (stating that "an important justification for the border search exception" is that "the border is announced and the prospect of a search is understood"). *But see* Matthew B. Kugler, Comment, *The Perceived Intrusiveness of Searching Electronic Devices at the Border: An Empirical Study*, 81 U. Chi. L. Rev. 1165, 1167 (2014) ("[M]ost people believe that their electronic devices are not subject to search without cause at a border crossing.").

*Carpenter*, 585 U.S. at 315. For most individuals, there is no alternative. *See City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010). "Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception." *Riley*, 573 U.S. at 395; *see also Smith*, 110 F.4th at 833 ("[C]arrying [a cell phone] is essentially a prerequisite to participation in modern society."). Lawyers like Mr. Anibowei carry their cell phones so that they can be available to their clients. Individuals from all walks of life keep their cell phones close at hand at all times; and many people are entirely reliant upon them for basic functions like navigation. There are some private or embarrassing articles that international travelers might leave at home rather than risk their exposure to government agents at the border. Not cell phones. It is simply untenable, given cell phones' necessity and ubiquity, to expect travelers to routinely check their cell phones at the border lest they risk having their phones' contents searched.[5]

---

[5] Nor will deleting the data necessarily ensure the traveler's privacy. *See United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013) (en banc) (explaining that forensic searches' ability to reveal "records of deleted files … makes it impractical, if not impossible, for individuals to make meaningful decisions regarding what digital content to expose to the scrutiny that accompanies international travel"); Orin Kerr, *The Digital Fourth Amendment: Privacy and Policing in Our Online World* 26 (2025) ("[W]hen you delete computer files, ordinarily they don't actually disappear. What

There are U.S. citizens who cross the United States border *daily* because they live in Texas and work in Mexico (and vice-versa). These individuals, like everyone else, carry their cell phones with them. It cannot be right that those individuals can only avoid the prospect of a warrantless search—possibly the most intrusive conceivable search that law enforcement can undertake—by simply not carrying a cell phone.

### c.  None of the Traditional Justifications for the Border Search Exception are Materially Advanced By Searching Cell Phones

The government cannot justify warrantless cell phone searches on the ground that they further the government's interest in preventing contraband from crossing the border because (1) cell phones are unlikely to contain any relevant "contraband" subject to the border search exception; (2) actual smugglers can easily evade such searches; (3) the amount of intensely private and expressively important information that cell phone searches expose far outweighs the limited types of contraband such searches might uncover; and (4) the logic that would permit warrantless searches of cell phone data has no limiting principle and would also permit the government to intercept all data

---

operating systems call 'deleting' a file often just marks that space for future use by other files. The casual user might think that the file disappeared, but the data will still be there until some later file overwrites it.").

that crosses the border. *See* Kerr, *The Digital Fourth Amendment*, *supra*, at 120–25.

*First*, a smartphone's digital contents cannot include physical contraband; thus, a search of those contents does not implicate the fundamental purposes underlying the border search exception. *See Cano*, 934 F.3d at 1018-19. Data lacks the one characteristic of physical goods that justifies the border search exception, namely, that because they are tangible, they must physically cross the border *somewhere*. Data, in contrast, constantly flows into and out of the United States without any need to take a physical item across the border.

Thus, to the extent that the government argues that there can be "digital" contraband, the probability that any given traveler in fact has such contraband on their phone is vanishingly small. The government has identified child pornography, classified information, malware, and export-controlled material as the types of "contraband" that cell phones might carry. But there is almost no reason to believe anyone would ever intentionally smuggle that kind of data into or out of the United States by way of carrying a cell phone over the border, as opposed to over the internet. If the government has an interest in interdicting "digital" contraband, searching cell phones is not an

effective means of doing so. The notion that every traveler should be vulnerable to having his "digital life … hijacked simply by crossing a border," *United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013) (en banc), based on the remote possibility that some travelers might be attempting to smuggle digital contraband on a phone, is objectively unreasonable.

*Second*, the fact that any individual who wishes to smuggle digital contraband into the United States without detection can readily evade a warrantless border search further establishes the irrationality of extending the border search exception to cell phones. For instance, an individual who wishes to bring digital contraband into the United States can simply upload the contraband to the cloud, carry a clean cell phone across the border, then download the data onto the phone on the other side of the border, thereby eliminating any possibility the data might be found on the phone. *See* Kerr, *The Digital Fourth Amendment*, *supra*, at 124. And a truly dedicated smuggler of digital contraband, hellbent on carrying the data over the border on the phone itself, could easily use software available on the open market to scramble the data making it appear benign and uninteresting, or to lock it behind impregnable encryption. Perversely, the only people likely to be caught with incriminating information by warrantless cell phone searches at the

border are those who are not trying to smuggle data across the border but merely happen to have incriminating data on their phone. The possibility of capturing the occasional unsuspecting traveler is no justification for exposing the cell phones of millions of innocent people to warrantless searches.

*Third*, stripping away warrant protections from cell phones because border agents might occasionally find digital contraband on a phone is unreasonable. This is especially true in light of the vast amount of intensely private and expressively important material typically found on a cell phone. *See* Donohue, *supra*, at 1009–10. Because cell phone searches unearth "vast quantities of personal information," such searches bear "little resemblance to the type of brief physical search[es]" covered by the border search exception. *Riley*, 573 U.S. at 386.

*Fourth*, the necessary implications of the government's position are shocking in their breadth. If the need to prevent this "digital contraband" from crossing the border justifies the warrantless search of every cell phone, then by the same logic, it also justifies the warrantless interception of every bit of data that crosses the border—whether over the internet or over wireless towers. Put differently, if the government is correct that the need to prevent "digital contraband" from crossing the border is so paramount that it justifies

searching cell phones without warrants, then it also justifies warrantlessly intercepting every email and text message that crosses the border.[6] Generally, the government cannot intercept and read a person's emails just because those emails happen to cross the border. The government cannot suddenly gain that power merely because that person's emails happen to be on a cell phone at the border.

### d.    Additional Practical Considerations Counsel Against Extending the Border Search Exception to Cell Phones

Three additional considerations favor preserving the warrant requirement when cell phones are searched at the border.

*First,* existing case-specific exceptions to the warrant requirement fully address possible scenarios involving threats to the nation's security that might arise from requiring government agents to procure warrants before searching the data on cell phones. In cases involving a case-specific need—for example, "to prevent the imminent destruction of evidence," "to pursue a fleeing

---

[6] *See* Kerr, *The Fourth Amendment and the Global Internet, supra* note 4, at 323 (explaining that purely domestic internet communications "can and do travel around the world" and "[e]ven a regular [domestic] telephone call today can be routed anywhere"); *see also, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 851 (1997) (explaining that "cyberspace" is a "unique medium … located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet").

suspect," or "to assist persons who are seriously injured or are threatened with imminent injury"—border agents would have the authority to warrantlessly search cell phones. *Riley*, 573 U.S. at 402; *see Carpenter*, 585 U.S. at 319-20 (same).

*Second*, requiring border agents to obtain a warrant before searching a cellphone furthers the core purposes of the warrant requirement: to prevent government agents from abusing their authority (by weaponizing the possibility of intrusion onto an individual's privacy) and to draw a bright line demarcating lawful searches from unlawful ones. The first concern is at its zenith in the border context, where border agents already have access to immense amounts of information about travelers and could therefore abuse their power and authority to engage in searches designed to intimidate, hassle, or punish. Moreover, a brightline warrant requirement will prevent law enforcement officers from using the border search exception to circumvent the protections applicable to ordinary criminal investigations.[7] "A warrant serves primarily to advise the citizen that an intrusion is authorized by law and

---

[7] *See Aigbekaen*, 943 F.3d at 717-18 (describing how government agents used advance knowledge of defendant's travel plans to plan a warrantless cell phone search at the border to further a criminal investigation); *United States v. Kolsuz*, 890 F.3d 133, 138-39 (4th Cir. 2018) (same).

limited in its permissible scope and to interpose a neutral magistrate between the citizen and the law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'" *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 667 (1989) (citation omitted); *see also United States v. Lefkowitz*, 285 U.S. 452, 464 (1932) ("Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers …."). The need for a warrant is greatest when an officer has vast discretion; a magistrate judge must limit that discretion by specifying with particularity what the officer may or may not inspect.

*Third*, securing a warrant is far less burdensome now than it was in the 1960s and 1970s, when many of the leading Fourth Amendment cases recognizing warrant exceptions were decided. The Federal Rules of Criminal Procedure now allow law enforcement officers to secure valid warrants using a variety of speedy means, including by telephone and email. *See* Fed. R. Crim. P. 4.1; *see also Missouri v. McNeely*, 569 U.S. 141, 154-55 (2013). In evaluating the balance of interests in its Fourth Amendment cases, the Supreme Court has for many years considered the burden requiring a warrant would impose on law enforcement officers. *See, e.g.*, *Steagald v. United States*, 451 U.S. 204, 222 (1981). And the ease of securing a warrant only increases as technology

51

develops. As the Supreme Court noted in *Riley*, in one jurisdiction, "police officers can e-mail warrant requests to judges' iPads [and] judges have signed such warrants and emailed them back to officers in less than 15 minutes." 573 U.S. at 401 (alteration in original) (quotation marks and citation omitted). Today, securing a warrant poses little obstacle to the law enforcement interests implicated in a cell phone search at the border.

> **e.   The Court Should Join the Fourth and Ninth Circuits In Generally Requiring Warrants for Searches of Cell Phones at the Border**

This Court should follow the reasoning of *Cano* and *Aigbekaen*. The Ninth Circuit in *Cano* and the Fourth Circuit in *Aigbekaen* correctly concluded that the border search exception is "narrow," *Cano*, 934 F.3d at 1013 (quotation marks and citation omitted), and bounded by "the ultimate touchstone of the Fourth Amendment," "reasonableness," *Aigbekaen*, 943 F.3d at 722 (quoting *Riley*, 573 U.S. at 381). Both correctly identified that warrantless cell phone searches may become "too 'attenuated' from [the] historic rationales" for the border search doctrine to "'fall under' the exception." *Aigbekaen*, 943 F.3d at 721 (quoting *Kolsuz*, 890 F.3d at 143); *Cano*, 934 F.3d at 1014-15 (recognizing the risks inherent in warrantless

searches of devices "capable of storing warehouses full of information" (quotation marks and citation omitted)).

However, both courts erroneously created an artificial distinction between cell phone searches at the border directed at border-related concerns (which the courts held may be warrantless) and cell phone searches at the border undertaken for other purposes (which the courts held require a warrant). *Cano*, 934 F.3d at 1020; *Aigbekaen*, 943 F.3d at 722-23. This distinction is unworkable. There is no effective method for courts to police whether border agents undertook a warrantless cell phone search for permissible border-related purposes or for wholly impermissible purposes. And the risk of post hoc justification for unlawful searches is incredibly high.[8] The inevitable result of the Fourth and Ninth Circuit rules will be the systematic violation of the Fourth Amendment rights of thousands of innocent

---

[8] *See* Wayne R. LaFave, *Being Frank About the Fourth: On Allen's "Process of 'Factualization' in the Search and Seizure Cases,"* 85 Mich. L. Rev. 427, 459 (1986) (explaining that, absent "pre-search or preseizure memorialization of the facts being relied upon to justify the fourth amendment activity, there is the risk that the police will engage in post hoc manipulation of the facts in an effort to justify their action" and that, "even if the police are paragons of virtue, there is nonetheless a significant chance that the probable cause facts will not be accurately reported if the occasion for communicating them to a judge comes only months later").

people who have no means of knowing whether their rights were violated and no method to effectively challenge the search.

The Supreme Court rejected *precisely* these kinds of "fallback options for permitting warrantless cell phone searches under certain circumstances" in *Riley*, explaining that, "if police are to have workable rules, the balancing of the competing interests must in large part be done on a categorical basis—not in an ad hoc, case-by-case fashion by individual police officers." 573 U.S. at 398 (cleaned up); *see also id.* at 398-401 (rejecting four different proposed case-by-case tests for permitting warrantless cell phone searches incident to arrest). The cost of opening a nominally narrow exception for "contraband" cell phone searches at the border is simply too great. This case shows why. To this day—now *years* after the first time border agents searched his cell phone—Mr. Anibowei has no idea why they performed the search. Mr. Anibowei would have no meaningful way to test the reasons a border agent provides as supporting the search. And the border agent who conducted the search may no longer even recall the real reason.

The Ninth and Fourth Circuit's rules are also unsound in theory. *Riley* teaches that the appropriate approach is simply to hold that exceptions to the warrant requirement do not extend to cell phone searches where such

extension will not advance the exception's purposes, not to construct a new, modified version of the exception and extend it to cell phones.

## B. The Court Should Take this Case En Banc and Overrule Its Contrary Precedent

Assuming the panel concludes this case is controlled by *Castillo* and *Malik*, the case should be taken up by the full court so those precedents can be reconsidered. *Castillo* and *Malik* are wrongly decided, conflict with multiple authoritative decisions of other circuit courts of appeals, and involve "questions of exceptional importance." Fed. R. App. P. 40(b)(2); *see Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 383 (5th Cir. 2020) (Elrod, J., concurring). Each of these considerations is alone enough to warrant en banc review—together, they "hit[] the en banc bull's-eye." *Mance v. Sessions*, 896 F.3d 390, 397 (5th Cir. 2018) (Willett, J., dissenting from denial of reh'g en banc). The full court should hear this case to reconsider whether warrants are presumptively required to search cell phones at the border.

## III.   Mr. Anibowei Has No Adequate Alternative Remedy

The district court erroneously concluded that 5 U.S.C. § 704 bars this action because Mr. Anibowei has an "other adequate remedy." ROA.1163. Rather than a suit under the APA, the court held, he could instead seek "an

55

injunction against enforcement" of the ICE and CBP Directives "pursuant to a constitutional challenge." ROA.1163. An injunction against enforcement, like vacatur, "would similarly prevent his being subjected to such searches in the future." ROA.1163.

**A.** The district court's unprecedented holding contravenes Supreme Court precedent, this Court's precedent, precedent from other courts, and the APA's text, structure, and purpose. Moreover, as a practical matter, the district court's decision would narrow the APA to the vanishing point.

At the outset, the district court's holding is unprecedented. No court in the 80-year history of the APA has held that an implied action for injunctive relief displaces the APA. Equitable causes of action against federal officers long predate the APA. If the mere possibility of such an action displaced the APA under § 704, presumably there would be many cases dismissing suits on this ground. There are none. "[A]n unbroken practice … openly [conducted] … is not something to be lightly cast aside." *Walz v. Tax Comm'n*, 397 U.S. 664, 678 (1970).

The district court's holding is contrary to the Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879, 901-04 (1988) which explained the scope and purposes of 5 U.S.C. § 704. In *Bowen*, the Court held that only a

"special and adequate review procedure" created by Congress to review the actions of a specific agency "will oust a district court of its normal jurisdiction under the APA." *Id.* at 904. The Court explained that Congress wrote § 704 to ensure the APA would not "duplicate" "special statutory procedures relating to specific agencies." *Id.* at 902-04. Actions for injunctive relief are not special statutory review procedures. "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity" and is "a judge-made remedy." *Armstrong v. Exceptional Child Care, Inc.*, 575 U.S. 320, 327 (2015). It therefore falls outside the scope of § 704.

The district court's holding flips Supreme Court precedent on its head. The Supreme Court has held that "[i]f a less drastic remedy (such as partial or complete vacatur … ) [is] sufficient to redress [an] … injury, no recourse to the additional and extraordinary relief of an injunction [is] … warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). Here, the district court held the opposite: if a party can get an injunction it cannot get vacatur via APA review.

The district court's holding is contrary to this Court's precedent. Consistent with *Bowen*, this Court has held that the adequate alternative remedy "exception will apply only if there is clear and convincing evidence of

legislative intent to create a special, alternative remedy and thereby bar APA review." *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 192-93 (5th Cir. 2023) (quotation marks and citation omitted); *see also Hinojosa v. Horn*, 896 F.3d 305, 310-11 (5th Cir. 2018) (similar); *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 641-42 (5th Cir. 2021) (similar). Here, because it is a "judge-made remedy," *Armstrong*, 575 U.S. at 327, a standalone constitutional claim neither provides specific procedures for review nor demonstrates a clear legislative intent to create an APA substitute.

The district court's holding is also contrary to other courts' precedents. Consistent with *Bowen*, these courts hold that "[t]he essential inquiry is whether another statutory scheme of judicial review exists so as to preclude review under the more general provisions of the APA." *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 427–28 (6th Cir. 2016) (quoting *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006)); *see also Consol. Edison Co. of N.Y. v. U.S., Dep't of Energy*, 247 F.3d 1378, 1383 (Fed. Cir. 2001) (similar). A constitutional claim for an injunction—a "creation of courts of equity"—is not a "statutory scheme" capable of displacing the APA.

The district court's holding is contrary to APA's text and structure. The APA's plain text expressly authorizes claims where agency action violates the

Constitution. 5 U.S.C. §§ 702, 704, 706(2)(B). The APA provides a cause of action for "[a] person suffering legal wrong because of agency action[.]" 5 U.S.C. § 702. Section 706 then requires courts to "hold unlawful and set aside agency action" that is "contrary to *constitutional right*, power, privilege, or immunity." *Id.* at § 706(2)(B) (emphasis added). Thus, the APA expressly provides for claims that allege constitutional violations.

The district court's holding is contrary to APA's purpose. The APA "creates a 'presumption favoring judicial review of administrative action.'" *Sackett v. E.P.A.*, 566 U.S. 120, 128 (2012) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)). "The Supreme Court has long instructed that the 'generous review provisions' of the APA must be given 'a hospitable interpretation[.]'" *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 141 (1967)).

The district court's broad conclusion would narrow the APA to the vanishing point. Its holding would prohibit all APA claims by directly regulated parties. After all, a plaintiff could always seek an injunction based on a statutory or constitutional violation as an alternative to vacatur under the APA. *See Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 689-90 (1948)

(plaintiff may seek injunctive relief against a federal officer where the officer's actions are statutorily *ultra vires* or where "the statute or order conferring power upon the officer … is claimed to be unconstitutional").

**B.**  The district court faulted Mr. Anibowei for his choice to dismiss his standalone constitutional claims. ROA.1140. But Mr. Anibowei is "master of the complaint." *See In Re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024). And the remedy he seeks is vacatur of the CBP and ICE Directives that violate the Constitution, not an injunction against their enforcement. *See Royal Canin*, 604 U.S. at 35 ("The plaintiff … gets to determine which substantive claims to bring against which defendants." (citation omitted)).

Moreover, *Martinez v. Pompeo*, 977 F.3d 457 (5th Cir. 2020), is inapposite. *Martinez* involved a special statutory review provision: 8 U.S.C. § 1503. The plaintiff was ineligible to use that provision because the statute of limitations had run. 977 F.3d at 460. The Court held that "[t]he fact that Plaintiffs allowed the limitations period to run does not make § 1503 inadequate." *Id.* Here, a potential claim for injunctive relief is *not* an adequate substitute for APA review and therefore it is irrelevant that Mr. Anibowei has elected not to pursue it.

The decision below failed to apply the Supreme Court's precedent, this Court's precedent, and the text and purpose of the APA. There is no alternative statute through which Mr. Anibowei could seek review of the challenged agency Directives. Thus, there is no adequate remedy within the meaning of the APA. The district court's holding is incorrect, and this Court should reverse.

## CONCLUSION

The Court should reverse the district court's order granting the motion to dismiss.

Dated: February 10, 2025

Respectfully submitted,

/s/ Andrew Tutt
ANDREW T. TUTT
ORION DE NEVERS
JILLIAN M. WILLIAMS
SPENCER JOHN FABER
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

KASSANDRA GONZALEZ
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 EXT. 182
(512) 474-0726 (FAX)
kassandra@texascivilrightsproject.org

DUSTIN WADE RYNDERS
TRAVIS WALKER FIFE
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 1108
Houston, TX 77251
(817) 991-4607
dustin@texascivilrightsproject.org
travis@texascivilrightsproject.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, the foregoing document was electronically filed with the Court via the appellate CM/ECF system, and that copies were served on counsel of record by operation of the CM/ECF system on the same date.

/s/ *Andrew T. Tutt*
Andrew T. Tutt

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,887 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Expanded BT 14 point font.

/s/ Andrew T. Tutt
Andrew T. Tutt