No. 24-11042

# In the United States Court of Appeals for the Fifth Circuit

GEORGE ANIBOWEI,

*Plaintiff-Appellant.*

*v.*

PAMELA BONDI, U.S. ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; TROY MILLER, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE COMMISSIONER, U.S. CUSTOMS AND BORDER PROTECTION; PATRICK J. LECHLEITNER, DEPUTY DIRECTOR AND SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR FOR ICE,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

## RECORD EXCERPTS

KASSANDRA GONZALEZ
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 EXT. 182
kassandra@texascivilrightsproject.org

ANDREW T. TUTT
ORION DE NEVERS
JILLIAN M. WILLIAMS
SPENCER JOHN FABER
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

*Counsel for Plaintiff-Appellant George Anibowei*
(additional counsel listed on inside cover)

DUSTIN WADE RYNDERS
TRAVIS WALKER FIFE
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 1108
Houston, TX 77251
(832) 971-8984 EXT. 186
dustin@texascivilrightsproject.org
travis@texascivilrightsproject.org

*Counsel for Plaintiff-Appellant George Anibowei*

# TABLE OF CONTENTS

**Tab**                                                                    **Page**

1      Docket Sheet…………..…………………………...…………..….…ROA.1

2      Notice of Appeal..……..……………………………………ROA.1147

3      Judgment...………………………………………….…ROA.1146

4      Memorandum Opinion and Order…………………...……..ROA.1128

5      Verified Second Amended Complaint.………………….....…ROA.545

# TAB 1

APPEAL,CLOSED,RAMIREZ

# U.S. District Court
# Northern District of Texas (Dallas)
# CIVIL DOCKET FOR CASE #: 3:16-cv-03495-D

| | |
|---|---|
| Anibowei v. Lynch et al | Date Filed: 12/23/2016 |
| Assigned to: Judge Sidney A Fitzwater | Date Terminated: 11/22/2024 |
| Case in other court:  USCA5, 20-10059 | Jury Demand: None |
| USCA5, 24-11042 | Nature of Suit: 440 Civil Rights: Other Civil Rights |
| Cause: 28:2201 Declaratory Judgment | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**George Anibowei**          represented by          **George Anibowei**
Law Office of George Anibowei PC
6060 North Central Expwy, Suite 560
Dallas, TX 75206
214-800-3463
Fax: 214-800-3464
Email: ganibowe@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Andrew Tutt**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202-942-5242
Email: Andrew.Tutt@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Dustin Rynders**
Texas Civil Rights Project
2100 Travis St
Suite 360
Houston, TX 77002
832-971-8984
Email: dustin@texascivilrightsproject.org
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Emily Rebecca Chertoff**
Arnold & Porter
601 Massachusetts Ave NW
Washington, DC 20001
202-962-5000
Fax: 202-962-5999

Email: Emily.Chertoff@arnoldporter.com
*TERMINATED: 04/08/2019*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Graham White**
Arnold & Porter
601 Massachusetts Ave NW
Washington DC, DC 20001
202-962-5000
Fax: 202-962-5999
Email: Graham.White@arnoldporter.com
*TERMINATED: 05/13/2024*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Hani Mirza**
Texas Civil Rights Project
1412 Main Street, Suite 608
Dallas, TX 75202
972-333-9200 ext. 171
Fax: 972-957-7867
Email: hani@texascivilrightsproject.org
*TERMINATED: 05/24/2024*
*Bar Status: Admitted/In Good Standing*

**Jayce Lane Born**
811 E Street SE
#2
Washington, DC 20003
740-243-3050
Email: jayce.born@usdoj.gov
*TERMINATED: 05/13/2024*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Jillian M. Williams**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave NW
Washington, DC 20001
202-942-5250
Email: jillian.williams@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Kassandra Gonzalez**
Texas Civil Rights Project
PO Box 17757
Austin, TX 78760
956-525-1216
Email: kassandra@texascivilrightsproject.org
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Mimi M D Marziani**
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741-3438
512-474-5073
Fax: 512-474-0726
Email: mimi@texascivilrightsproject.org
*TERMINATED: 05/24/2024*
*Bar Status: Admitted/In Good Standing*

**Peter Blackmer Steffensen**
SMU Dedman School of Law
PO Box 750116
Dallas, TX 75275-0116
214-768-4077
Fax: 214-768-1611
Email: psteffensen@mail.smu.edu
*Bar Status: Admitted/In Good Standing*

**Robert Stanton Jones**
Arnold & Porter
601 Massachusetts Ave NW
Washington, DC 20001
202-962-5000
Fax: 202-962-5999
Email: Stanton.Jones@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Sam Callahan**
Arnold & Porter
601 Massachusetts Ave NW
Washington, DC 20001
202-962-5000
Fax: 202-962-5999
Email: Sam.Callahan@arnoldporter.com
*TERMINATED: 05/13/2024*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Stephen K Wirth**
Arnold & Porter
601 Massachusetts Ave NW
Washington, DC 20001
202-962-5000
Fax: 202-962-5999
Email: Stephen.Wirth@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

*Bar Status: Not Admitted*

**Travis Walker Fife**
Texas Civil Rights Project
Po box 1108
Houston, TX 77251
817-991-4607
Email: travis@texascivilrightsproject.org
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Loretta E Lynch**                               represented by    **Sarah Elizabeth Delaney-DOJ**
*Attorney General of the United States*                            US Attorney's Office
*TERMINATED: 04/11/2017*                                           1100 Commerce Street
                                                                   Suite 300
                                                                   Dallas, TX 75242-1699
                                                                   214-659-8730
                                                                   Fax: 214-659-8807
                                                                   Email: sarah.delaney@usdoj.gov
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*
                                                                   *Bar Status: Admitted/In Good Standing*

                                                                   **Brian Walters Stoltz-DOJ**
                                                                   DOJ-USAO
                                                                   1100 Commerce St
                                                                   Third Floor
                                                                   Dallas, TX 75242-1699
                                                                   214-659-8626
                                                                   Email: brian.stoltz@usdoj.gov
                                                                   *TERMINATED: 08/29/2018*
                                                                   *Bar Status: Admitted/In Good Standing*

**Defendant**

**James B Comey**                                 represented by    **Sarah Elizabeth Delaney-DOJ**
*Director of the Federal Bureau of*                                (See above for address)
*Investigation*                                                    *LEAD ATTORNEY*
*TERMINATED: 03/15/2019*                                           *ATTORNEY TO BE NOTICED*
                                                                   *Bar Status: Admitted/In Good Standing*

                                                                   **Brian Walters Stoltz-DOJ**
                                                                   (See above for address)
                                                                   *TERMINATED: 08/29/2018*
                                                                   *Bar Status: Admitted/In Good Standing*

**Defendant**

**Christopher M Piehota**                         represented by    **Sarah Elizabeth Delaney-DOJ**
*Director of the Terrorist Screening Center*                       (See above for address)

*TERMINATED: 03/15/2019*                         *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Bar Status: Admitted/In Good Standing*

                                                 **Brian Walters Stoltz-DOJ**
                                                 (See above for address)
                                                 *TERMINATED: 08/29/2018*
                                                 *Bar Status: Admitted/In Good Standing*

**Defendant**

**Nicholas Rasmussen**                 represented by  **Sarah Elizabeth Delaney-DOJ**
*Director of the National Counterterrorism*          (See above for address)
*Center*                                             *LEAD ATTORNEY*
*TERMINATED: 03/15/2019*                             *ATTORNEY TO BE NOTICED*
                                                     *Bar Status: Admitted/In Good Standing*

                                                     **Brian Walters Stoltz-DOJ**
                                                     (See above for address)
                                                     *TERMINATED: 08/29/2018*
                                                     *Bar Status: Admitted/In Good Standing*

**Defendant**

**Jeh C Johnson**                      represented by  **Sarah Elizabeth Delaney-DOJ**
*Director of the Department of Homeland*             (See above for address)
*Security*                                           *LEAD ATTORNEY*
*TERMINATED: 04/11/2017*                             *ATTORNEY TO BE NOTICED*
                                                     *Bar Status: Admitted/In Good Standing*

                                                     **Brian Walters Stoltz-DOJ**
                                                     (See above for address)
                                                     *TERMINATED: 08/29/2018*
                                                     *Bar Status: Admitted/In Good Standing*

**Defendant**

**R. Gil Kerlikowske**                 represented by  **Sarah Elizabeth Delaney-DOJ**
*Commissioner of the United States Customs*          (See above for address)
*and Border Protection*                              *LEAD ATTORNEY*
*TERMINATED: 04/11/2017*                             *ATTORNEY TO BE NOTICED*
                                                     *Bar Status: Admitted/In Good Standing*

                                                     **Brian Walters Stoltz-DOJ**
                                                     (See above for address)
                                                     *TERMINATED: 08/29/2018*
                                                     *Bar Status: Admitted/In Good Standing*

**Defendant**

**Peter Neffenger**                    represented by  **Sarah Elizabeth Delaney-DOJ**
*Administrator of the United States*                 (See above for address)
*Transporation Security Administration*              *LEAD ATTORNEY*
*TERMINATED: 04/11/2017*                             *ATTORNEY TO BE NOTICED*
                                                     *Bar Status: Admitted/In Good Standing*

**Brian Walters Stoltz-DOJ**
(See above for address)
*TERMINATED: 08/29/2018*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Sarah R Saldana**
*Director of United States Immigration and*
*Customs Enforcement*
*TERMINATED: 04/11/2017*

represented by   **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian Walters Stoltz-DOJ**
(See above for address)
*TERMINATED: 08/29/2018*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Jefferson B. Sessions**
*Attorney General of the United States*
*TERMINATED: 02/14/2019*

represented by   **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian Walters Stoltz-DOJ**
(See above for address)
*TERMINATED: 08/29/2018*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**John F Kelly**
*Secretary of Homeland Security*
*TERMINATED: 03/15/2019*

represented by   **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian Walters Stoltz-DOJ**
(See above for address)
*TERMINATED: 08/29/2018*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Kevin K McAleenan**
*Commissioner of US Customs and Border*
*Protection, in his official capacity*

represented by   **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian Walters Stoltz-DOJ**
(See above for address)

*TERMINATED: 08/29/2018*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Huban Gowadia**
*Acting Administrator of the United States*
*Transporation Security Administration*
*TERMINATED: 03/15/2019*

represented by **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian Walters Stoltz-DOJ**
(See above for address)
*TERMINATED: 08/29/2018*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Thomas D Homan**
*Acting Director of United States*
*Immigration and Customs Enforcement*
*TERMINATED: 03/15/2019*

represented by **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Brian Walters Stoltz-DOJ**
(See above for address)
*TERMINATED: 08/29/2018*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**William P Barr**
*Attorney General of the United States, in*
*his official capacity*

represented by **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Kirstjen M Nielsen**
*US Secretary of Homeland Security, in her*
*official capacity*

represented by **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Ronald D Vitiello**
*Acting Director of US Immigration and*
*Customs Enforcement, in his official*
*capacity*

represented by **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

represented by

**David P Pekoske**
*Administrator of the Transportation*
*Security Administration, in his official*
*capacity*
*TERMINATED: 06/18/2024*

**Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**US Department of Homeland Security**          represented by    **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**US Customs and Border Protection**          represented by    **Sarah Elizabeth Delaney-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**US Immigration and Customs**          represented by    **Sarah Elizabeth Delaney-DOJ**
**Enforcement**          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Transportation Security Administration**          represented by    **Sarah Elizabeth Delaney-DOJ**
*TERMINATED: 06/18/2024*          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Amicus**

**The R Street Institute**          represented by    **Daniel Rolf Adler**
Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue
Los Angeles, CA 90071-3197
213-229-7634
Fax: 213-229-6634
Email: dadler@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**William Francis Cole**
Gibson, Dunn & Crutcher LLP
333 S. Grand Avenue

Los Angeles, CA 90071-3197
213-229-7554
Fax: 213-229-6554
Email: BCole@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2016 | 1 (p.30) | COMPLAINT against James Comey, Jeh Johnson, R. Gil Kerlikowske, Loretta Lynch, Peter Neffenger, Christopher Piehota, Nicholas Rasmussen, Sarah R Saldana filed by GEORGE ANIBOWEI. (Filing fee $400; Receipt number 0539-8093202) Clerk to issue summons(es) for federal defendant(s). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.30) Cover Sheet, # 2 (p.56) Exhibit(s) 1, # 3 (p.58) Exhibit(s) 2, # 4 (p.60) Exhibit(s) 3, # 5 (p.108) Exhibit(s) 4, # 6 (p.133) Exhibit(s) 5) (Anibowei, George) (Entered: 12/23/2016) |
| 12/23/2016 | 2 (p.56) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by GEORGE ANIBOWEI. (Anibowei, George) (Entered: 12/23/2016) |
| 12/23/2016 | 3 (p.58) | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Ramirez). Clerk to provide copy to plaintiff if not received electronically. (twd) (Entered: 12/23/2016) |
| 12/23/2016 | 4 (p.60) | Summons issued as to All Defendants, U.S. Attorney, and U.S. Attorney General. (twd) (Entered: 12/23/2016) |
| 03/06/2017 | 5 (p.108) | MOTION to Dismiss *(under Rule 12(b)(1) and Rule 12(b)(6))* filed by James B Comey, Jeh Johnson, R. Gil Kerlikowske, Loretta Lynch, Peter Neffenger, Christopher M Piehota, Nicholas Rasmussen, Sarah R Saldana with Brief/Memorandum in Support. (Stoltz-DOJ, Brian) (Entered: 03/06/2017) |
| 03/06/2017 | 6 (p.133) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by James B |

| | | |
|---|---|---|
| | | Comey, Jeh Johnson, R. Gil Kerlikowske, Loretta Lynch, Peter Neffenger, Christopher M Piehota, Nicholas Rasmussen, Sarah R Saldana. (Stoltz-DOJ, Brian) (Entered: 03/06/2017) |
| 03/13/2017 | 7 (p.135) | Order for Scheduling Order Proposal: Proposed Scheduling Order due by 4/10/2017. (Ordered by Judge Sidney A Fitzwater on 3/13/2017) (axm) (Entered: 03/13/2017) |
| 03/25/2017 | 8 (p.139) | AMENDED COMPLAINT against All Defendants filed by George Anibowei. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.30) Exhibit(s) 1, # 2 (p.56) Exhibit(s) 2, # 3 (p.58) Exhibit(s) 3, # 4 (p.60) Exhibit(s) 4, # 5 (p.108) Exhibit(s) 5, # 6 (p.133) Exhibit(s) 6) (Anibowei, George) (Entered: 03/25/2017) |
| 03/27/2017 | 9 (p.168) | REPLY filed by George Anibowei re: 5 (p.108) MOTION to Dismiss *(under Rule 12(b)(1) and Rule 12(b)(6))* (Anibowei, George) (Entered: 03/27/2017) |
| 03/31/2017 | 10 (p.201) | NOTICE of *Mootness of Motion to Dismiss Original Complaint, Due to Filing of a First Amended Complaint* re: 5 (p.108) MOTION to Dismiss *(under Rule 12(b)(1) and Rule 12(b)(6))* filed by James B Comey, Jeh Johnson, R. Gil Kerlikowske, Loretta Lynch, Peter Neffenger, Christopher M Piehota, Nicholas Rasmussen, Sarah R Saldana (Stoltz-DOJ, Brian) (Entered: 03/31/2017) |
| 03/31/2017 | 11 | ELECTRONIC ORDER terminating as moot 5 (p.108) MOTION to Dismiss (under Rule 12(b)(1) and Rule 12(b)(6)) filed by James B Comey, Jeh Johnson, R. Gil Kerlikowske, Loretta Lynch, Peter Neffenger, Christopher M Piehota, Nicholas Rasmussen, Sarah R Saldana. (Ordered by Judge Sidney A Fitzwater on 3/31/2017) (Judge Sidney A Fitzwater) (Entered: 03/31/2017) |
| 04/10/2017 | 12 (p.203) | Joint STATUS REPORT *(Scheduling Proposal)* filed by James B Comey, Jeh Johnson, R. Gil Kerlikowske, Loretta Lynch, Peter Neffenger, Christopher M Piehota, Nicholas Rasmussen, Sarah R Saldana. (Stoltz-DOJ, Brian) (Entered: 04/10/2017) |
| 04/10/2017 | 13 (p.207) | MOTION to Dismiss *Plaintiff's First Amended Complaint* filed by James B Comey, Jeh Johnson, R. Gil Kerlikowske, Loretta Lynch, Peter Neffenger, Christopher M Piehota, Nicholas Rasmussen, Sarah R Saldana with Brief/Memorandum in Support. (Stoltz-DOJ, Brian) (Entered: 04/10/2017) |

| 04/11/2017 | 14 (p.234) | ORDER OF REFERENCE: Defendants' 4/10/2017 13 (p.207) motion to dismiss plaintiff's first amended complaint is REFERRED to United States Magistrate Judge Irma Carrillo Ramirez for recommendation. She may conduct a hearing if she determines that a hearing is necessary. (Ordered by Judge Sidney A Fitzwater on 4/11/2017) (sss) (Entered: 04/11/2017) |
|---|---|---|
| 04/11/2017 | 15 (p.235) | ORDER re: 13 (p.207) Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Respondent may file a response by 5/1/2017. Movant may file a reply by 5/15/2017. (Ordered by Magistrate Judge Irma Carrillo Ramirez on 4/11/2017) (mcrd) (Entered: 04/11/2017) |
| 04/24/2017 | 16 (p.236) | SCHEDULING ORDER: Amended Pleadings due by 7/17/2017. Discovery due by 3/23/2018. Joinder of Parties due by 7/17/2017. Motions due by 3/23/2018. Status Report due by 3/23/2018. (Ordered by Judge Sidney A Fitzwater on 4/24/2017) (rekc) (Entered: 04/24/2017) |
| 05/01/2017 | 17 (p.240) | RESPONSE filed by George Anibowei re: 13 (p.207) MOTION to Dismiss *Plaintiff's First Amended Complaint* (Anibowei, George) (Entered: 05/01/2017) |
| 05/15/2017 | 18 (p.280) | REPLY filed by James B Comey, Huban Gowadia, Thomas D Homan, John F Kelly, Kevin K McAleenan, Christopher M Piehota, Nicholas Rasmussen, Jefferson B. Sessions re: 13 (p.207) MOTION to Dismiss *Plaintiff's First Amended Complaint* (Stoltz-DOJ, Brian) (Entered: 05/15/2017) |
| 12/15/2017 | 19 (p.291) | Findings, Conclusions, and Recommendation re: 13 (p.207) Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Defendants' Rule 12(b)(1) motion to dismiss should be DENIED, and their Rule 12(b)(6) motion to dismiss should be GRANTED in part. Plaintiff's Bivens claims should be DISMISSED with prejudice for failure to state a claim, and his APA claims should sua sponte be DISMISSED without prejudice for lack of subject-matter jurisdiction. (Ordered by Magistrate Judge Irma Carrillo Ramirez on 12/15/2017) (mcrd) (Entered: 12/15/2017) |
| 12/29/2017 | 20 (p.306) | OBJECTION to 19 (p.291) Findings and Recommendations *on Defendants' Motion to Dismiss*. (Stoltz-DOJ, Brian) (Entered: 12/29/2017) |
| 01/10/2018 | 21 (p.338) | OBJECTION to 19 (p.291) Findings and Recommendations *Response*. (Anibowei, George) (Entered: 01/10/2018) |
| 01/24/2018 | 22 (p.362) | REPLY filed by James B Comey, Huban Gowadia, Thomas D Homan, John F Kelly, Kevin K McAleenan, Christopher M Piehota, Nicholas Rasmussen, Jefferson B. Sessions re: 20 (p.306) Objection to Findings and |

| | | |
|---|---|---|
| | | Recommendations (Stoltz-DOJ, Brian) (Entered: 01/24/2018) |
| 03/22/2018 | 23 (p.368) | Joint MOTION to Stay *Deadlines* filed by James B Comey, Huban Gowadia, Thomas D Homan, John F Kelly, Kevin K McAleenan, Christopher M Piehota, Nicholas Rasmussen, Jefferson B. Sessions with Brief/Memorandum in Support. Attorney Brian Walters Stoltz-DOJ added to party Huban Gowadia(pty:dft), Attorney Brian Walters Stoltz-DOJ added to party Thomas D Homan(pty:dft), Attorney Brian Walters Stoltz-DOJ added to party John F Kelly(pty:dft), Attorney Brian Walters Stoltz-DOJ added to party Kevin K McAleenan(pty:dft), Attorney Brian Walters Stoltz-DOJ added to party Jefferson B. Sessions(pty:dft) (Stoltz-DOJ, Brian) (Entered: 03/22/2018) |
| 03/22/2018 | 24 (p.371) | Joint STATUS REPORT filed by James B Comey, Huban Gowadia, Thomas D Homan, John F Kelly, Kevin K McAleenan, Christopher M Piehota, Nicholas Rasmussen, Jefferson B. Sessions. (Stoltz-DOJ, Brian) (Entered: 03/22/2018) |
| 03/22/2018 | 25 (p.373) | ORDER granting 23 (p.368) Joint Motion to Stay Deadlines. (Ordered by Judge Sidney A Fitzwater on 3/22/2018) (ran) (Entered: 03/22/2018) |
| 03/27/2018 | 26 (p.374) | MEMORANDUM OPINION AND ORDER adopting in part and re-referring in part 19 (p.291) Findings and Recommendations on Motion re: 13 (p.207) Motion to Dismiss filed by Peter Neffenger, Loretta E Lynch, Jeh C Johnson, Nicholas Rasmussen, R. Gil Kerlikowske, Sarah R Saldana, Christopher M Piehota, James B Comey. The 13 (p.207) MOTION to Dismiss filed by Peter Neffenger, Loretta E Lynch, Jeh C Johnson, Nicholas Rasmussen, R. Gil Kerlikowske, Sarah R Saldana, Christopher M Piehota, James B Comey is granted in part and re-referred in part to the United States Magistrate Judge. (Ordered by Judge Sidney A Fitzwater on 3/27/2018) (Judge Sidney A Fitzwater) (Entered: 03/27/2018) |
| 08/16/2018 | 27 (p.379) | TRIAL SETTING ORDER: Trial set for Court's two-week docket beginning 7/8/2019 before Judge Sidney A Fitzwater. (Ordered by Judge Sidney A Fitzwater on 8/16/2018) (aaa) (Entered: 08/16/2018) |
| 08/29/2018 | 28 (p.384) | Notice of Substitution of Counsel by AUSA. Sarah Elizabeth Delaney-DOJ added as AUSA. (Delaney-DOJ, Sarah) (Entered: 08/29/2018) |
| 10/18/2018 | 29 (p.386) | SUPPLEMENTAL FINDINGS, CONCLUSIONS, AND RECOMMENDATION on Case re: 1 (p.30) Complaint. Plaintiff's claims for injunctive relief against Defendants in their official capacities should be DISMISSED with prejudice (Ordered by Magistrate Judge Irma Carrillo |

| | | |
|---|---|---|
| | | Ramirez on 10/18/2018) (epm) (Entered: 10/19/2018) |
| 11/02/2018 | 30 (p.396) | Unopposed MOTION to Extend Time TO FILE PLAINTIFF'S OBJECTION filed by George Anibowei with Brief/Memorandum in Support. (Attachments: # 1 (p.30) Proposed Order) (Anibowei, George) (Entered: 11/02/2018) |
| 11/02/2018 | 31 (p.401) | ORDER granting 30 (p.396) Motion to Extend Time to file Objections. Objections to F&R due by 11/7/2018 (Ordered by Senior Judge Sidney A Fitzwater on 11/2/2018) (ndt) (Entered: 11/02/2018) |
| 11/05/2018 | 32 (p.402) | OBJECTION filed by George Anibowei re: 29 (p.386) Findings and Recommendations on Case re: 1 (p.30) Complaint, filed by George Anibowei. (Anibowei, George) (Entered: 11/05/2018) |
| 11/19/2018 | 33 (p.421) | RESPONSE filed by James B Comey, Huban Gowadia, Thomas D Homan, John F Kelly, Kevin K McAleenan, Christopher M Piehota, Nicholas Rasmussen, Jefferson B. Sessions re: 32 (p.402) Response/Objection (Delaney-DOJ, Sarah) (Entered: 11/19/2018) |
| 12/28/2018 | 34 (p.454) | Order Granting Government's Omnibus Motion for Stay of Cases in Light of Lapse of Appropriations (Ordered by Chief Judge Barbara M.G. Lynn on 12/28/2018) (Attachments: # 1 (p.30) Government's Omnibus Motion for Stay) (lrl) (Entered: 12/28/2018) |
| 01/28/2019 | 35 (p.464) | ORDER GRANTING GOVERNMENT'S OMNIBUS MOTION FOR LIFT OF STAY: Unless otherwise directed by the United States District Judge presiding in a particular case, all deadlines that had not expired on or before December 21, 2018 in a case covered by the stay order are extended for 34 days (i.e., the duration of the lapse in appropriations for the Department of Justice). (Ordered by Chief Judge Barbara M.G. Lynn on 1/26/2019) (Attachments: # 1 (p.30) Additional Page(s) Omnibus Motion to Lift Stay) (ctf) (Entered: 01/28/2019) |
| 02/14/2019 | 36 (p.473) | MEMORANDUM OPINION AND ORDER adopting in part 29 (p.386) SUPPLEMENTAL FINDINGS, CONCLUSIONS, AND RECOMMENDATION on Case re: 1 (p.30) Complaint. The court dismisses plaintiff's claims with leave to file a second amended complaint. (Ordered by Senior Judge Sidney A Fitzwater on 2/14/2019) (Senior Judge Sidney A Fitzwater) (Entered: 02/14/2019) |
| 03/11/2019 | 37 (p.492) | NOTICE of Attorney Appearance by Hani Mirza on behalf of George Anibowei. (Filer confirms contact info in ECF is current.) (Mirza, Hani) (Entered: 03/11/2019) |
| 03/12/2019 | 38 (p.495) | APPLICATION FOR ADMISSION PRO HAC VICE (NOTICE of Attorney Appearance) by Jayce Lane Born |

| | | |
|---|---|---|
| | | on behalf of George Anibowei. (Filer confirms contact info in ECF is current.) (Attachments: # 1 (p.30) Certicate of Good Standing, # 2 (p.56) Proposed Order) (Born, Jayce) Modified event and text to match document on 3/13/2019 (dsr). (Entered: 03/12/2019) |
| 03/12/2019 | 39 (p.500) | NOTICE of Attorney Appearance by Jayce Lane Born on behalf of George Anibowei. (Born, Jayce) (Entered: 03/12/2019) |
| 03/13/2019 | 40 (p.501) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9844229) filed by George Anibowei (Attachments: # 1 (p.30) Certificate of Good Standing, # 2 (p.56) Proposed Order, # 3 (p.58) Appearance of Counsel)Attorney Emily Rebecca Chertoff added to party George Anibowei(pty:pla) (Chertoff, Emily) (Entered: 03/13/2019) |
| 03/13/2019 | | NOTICE of Attorney Appearance by Emily Rebecca Chertoff on behalf of George Anibowei. (See Doc [40-3] for image.) (dsr) (Entered: 03/13/2019) |
| 03/13/2019 | 41 (p.507) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9844356) filed by George Anibowei (Attachments: # 1 (p.30) Certificate of Good Standing, # 2 (p.56) Proposed Order, # 3 (p.58) Appearance of Counsel)Attorney Stephen K Wirth added to party George Anibowei(pty:pla) (Wirth, Stephen) (Entered: 03/13/2019) |
| 03/13/2019 | | NOTICE of Attorney Appearance by Stephen K Wirth on behalf of George Anibowei. (See Doc [41-3] for image.) (dsr) (Entered: 03/13/2019) |
| 03/13/2019 | 42 (p.513) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9844401) filed by George Anibowei (Attachments: # 1 (p.30) Certificate of Good Standing, # 2 (p.56) Proposed Order, # 3 (p.58) Appearance of Counsel)Attorney Sam Callahan added to party George Anibowei(pty:pla) (Callahan, Sam) (Entered: 03/13/2019) |
| 03/13/2019 | 43 (p.519) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9844470) filed by George Anibowei (Attachments: # 1 (p.30) Certificate of Good Standing, # 2 (p.56) Proposed Order, # 3 (p.58) Appearance of Counsel)Attorney Andrew Tutt added to party George Anibowei(pty:pla) (Tutt, Andrew) (Entered: 03/13/2019) |
| 03/13/2019 | 44 (p.525) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9844512) filed by George Anibowei (Attachments: |

| | | |
|---|---:|---|
| | | # 1 (p.30) Certificate of Good Standing, # 2 (p.56) Proposed Order, # 3 (p.58) Appearance of Counsel)Attorney Robert Stanton Jones added to party George Anibowei(pty:pla) (Jones, Robert) (Entered: 03/13/2019) |
| 03/13/2019 | 45 | ELECTRONIC ORDER granting 38 (p.495) Application for Admission Pro Hac Vice of Jayce Lane Born. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/13/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/13/2019) |
| 03/13/2019 | 46 | ADVISORY TO COUNSEL: The certificate of good standing attached to 40 (p.501) the pro hac vice application of Emily Rebecca Chertoff is the certificate of good standing for Jayce Lane Born [40-1]. Please submit the correct certificate of good standing. (Senior Judge Sidney A. Fitzwater). (Entered: 03/13/2019) |
| 03/13/2019 | 47 | ELECTRONIC ORDER granting 41 (p.507) Application for Admission Pro Hac Vice of Stephen K. Wirth. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/13/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/13/2019) |
| 03/13/2019 | 48 | ELECTRONIC ORDER granting 42 (p.513) Application for Admission Pro Hac Vice of Sam Callahan. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/13/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/13/2019) |
| 03/13/2019 | 49 | ELECTRONIC ORDER granting 43 (p.519) Application for Admission Pro Hac Vice of Andrew Tutt. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/13/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/13/2019) |
| 03/13/2019 | 50 | ELECTRONIC ORDER granting 44 (p.525) Application for Admission Pro Hac Vice of Robert Stanton Jones. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/13/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/13/2019) |
| 03/13/2019 | 51 (p.531) | SUPPLEMENTAL DOCUMENT by George Anibowei. Supplement to 40 (p.501) Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9844229). (correct Certificate of Good Standing). (Chertoff, Emily) Modified on 3/13/2019 (dsr). (Entered: 03/13/2019) |

| | | |
|---|---|---|
| 03/13/2019 | 52 | ELECTRONIC ORDER granting 40 (p.501) Application for Admission Pro Hac Vice of Emily Rebecca Chertoff. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/13/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/13/2019) |
| 03/13/2019 | 53 (p.532) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9845039) filed by George Anibowei (Attachments: # 1 (p.30) Exhibit(s), # 2 (p.56) Proposed Order, # 3 (p.58) Exhibit(s))Attorney Peter Steffensen added to party George Anibowei(pty:pla) (Steffensen, Peter) (Entered: 03/13/2019) |
| 03/13/2019 | 54 | ELECTRONIC ORDER granting 53 (p.532) Application for Admission Pro Hac Vice of Peter Steffensen. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/13/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/13/2019) |
| 03/14/2019 | 55 (p.538) | AMENDED DOCUMENT by George Anibowei. Amendment to 44 (p.525) Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9844512). *(Corrected Proposed Order)*. (Jones, Robert) (Entered: 03/14/2019) |
| 03/14/2019 | 56 (p.539) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9847971) filed by George Anibowei (Attachments: # 1 (p.30) Certificate of Good Standing, # 2 (p.56) Proposed Order)Attorney Graham White added to party George Anibowei(pty:pla) (White, Graham) (Entered: 03/14/2019) |
| 03/14/2019 | 57 (p.544) | NOTICE of Attorney Appearance by Graham White on behalf of George Anibowei. (Filer confirms contact info in ECF is current.) (White, Graham) (Entered: 03/14/2019) |
| 03/14/2019 | 58 | ELECTRONIC ORDER granting 56 (p.539) Application for Admission Pro Hac Vice of Graham White. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 3/14/2019) (Senior Judge Sidney A Fitzwater) (Entered: 03/14/2019) |
| 03/14/2019 | 59 (p.545) | *Verified Second* AMENDED COMPLAINT against William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, Ronald D Vitiello, David P Pekoske, US Department of Homeland Security, US Customs and Border Protection, US Immigration and Customs Enforcement, Transportation Security Administration filed by George Anibowei. (One or more defendant(s) is no longer |

| | | |
|---|---|---|
| | | named.) Clerk to issue summons(es) for new federal defendant(s). Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Callahan, Sam) (Entered: 03/14/2019) |
| 03/15/2019 | 60 (p.583) | Summons issued as to Kirstjen M Nielsen, David P Pekoske, Transportation Security Administration, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello, US Attorney, and US Attorney General. (mla) (Entered: 03/15/2019) |
| 03/26/2019 | 61 (p.625) | MOTION to Set Briefing Schedule for Defendants' Response to Plaintiff's Second Amended Complaint filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, David P Pekoske, Transportation Security Administration, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello with Brief/Memorandum in Support. Attorney Sarah Elizabeth Delaney-DOJ added to party Kirstjen M Nielsen(pty:dft), Attorney Sarah Elizabeth Delaney-DOJ added to party David P Pekoske(pty:dft), Attorney Sarah Elizabeth Delaney-DOJ added to party Transportation Security Administration(pty:dft), Attorney Sarah Elizabeth Delaney-DOJ added to party US Customs and Border Protection(pty:dft), Attorney Sarah Elizabeth Delaney-DOJ added to party US Department of Homeland Security(pty:dft), Attorney Sarah Elizabeth Delaney-DOJ added to party US Immigration and Customs Enforcement(pty:dft), Attorney Sarah Elizabeth Delaney-DOJ added to party Ronald D Vitiello(pty:dft) (Delaney-DOJ, Sarah) (Entered: 03/26/2019) |
| 03/26/2019 | 62 (p.628) | ORDER: 61 (p.625) Motion to set briefing schedule for defendants' response to plaintiffs second amended complaint is granted. Answer due 5/14/2019 (Ordered by Senior Judge Sidney A Fitzwater on 3/26/2019) (svc) (Entered: 03/26/2019) |
| 03/26/2019 | | Answer due from William P Barr on 5/14/2019; Kevin K McAleenan on 5/14/2019; Kirstjen M Nielsen on 5/14/2019; David P Pekoske on 5/14/2019; Transportation Security Administration on 5/14/2019; US Customs and Border Protection on 5/14/2019; US Department of Homeland Security on 5/14/2019; US Immigration and Customs Enforcement on 5/14/2019; Ronald D Vitiello on 5/14/2019 to 59 (p.545) Amended Complaint filed 03/14/2019. (svc) (Entered: 03/26/2019) |

| | | |
|---|---|---|
| 04/02/2019 | 63 (p.629) | SUMMONS Returned Executed as to Kirstjen M Nielsen; served on 3/18/2019; David P Pekoske; served on 3/18/2019; Transportation Security Administration; served on 3/18/2019; US Customs and Border Protection; served on 3/18/2019; US Department of Homeland Security; served on 3/18/2019; US Immigration and Customs Enforcement; served on 3/18/2019; Ronald D Vitiello; served on 3/18/2019. (Attachments: # 1 (p.30) Declaration(s) Andrew Tutt, # 2 (p.56) Declaration(s) Darrell Reddix) (Tutt, Andrew) (Entered: 04/02/2019) |
| 04/02/2019 | 64 (p.638) | MOTION to Withdraw as Attorney filed by George Anibowei (Chertoff, Emily) (Entered: 04/02/2019) |
| 04/04/2019 | 65 | ADVISORY TO COUNSEL: Please submit your proposed order for the following motion -- in modifiable Word or WordPerfect format -- to Fitzwater_Orders@txnd.uscourts.gov.: 64 (p.638) MOTION to Withdraw as Attorney filed by George Anibowei (Senior Judge Sidney A. Fitzwater). (Entered: 04/04/2019) |
| 04/08/2019 | 66 (p.640) | ORDER granting 64 (p.638) Motion to Withdraw as Attorney. Attorney Emily Rebecca Chertoff terminated. (Ordered by Senior Judge Sidney A Fitzwater on 4/8/2019) (epm) (Entered: 04/08/2019) |
| 04/16/2019 | 67 (p.641) | MOTION for Summary Judgment *(Partial)*, MOTION for Injunction *(Preliminary)* () filed by George Anibowei (Attachments: # 1 (p.30) Proposed Order Granting Plaintiff's Motion for Partial Summary Judgment, # 2 (p.56) Proposed Order Granting Plaintiff's Motion for a Preliminary Injunction) (Callahan, Sam) (Entered: 04/16/2019) |
| 04/16/2019 | 68 (p.649) | Brief/Memorandum in Support filed by George Anibowei re 67 (p.641) MOTION for Summary Judgment *(Partial)* MOTION for Injunction *(Preliminary)* (Callahan, Sam) (Entered: 04/16/2019) |
| 04/29/2019 | 69 (p.683) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9952336) filed by The R Street Institute. Party The R Street Institute added.Attorney William Francis Cole added to party The R Street Institute(pty:am) (Cole, William) (Entered: 04/29/2019) |
| 04/29/2019 | 70 (p.687) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Daniel R. Adler (Filing fee $25; Receipt number 0539-9952342) filed by The R Street Institute (Cole, William) (Entered: 04/29/2019) |
| 04/29/2019 | 71 (p.691) | Unopposed MOTION for Leave to File Brief of the R Street Institute as Amicus Curiae in Support of Plaintiff George Anibowei's motion for Partial Summary |

| | | |
|---|---|---|
| | | Judgment, or, in the Alternative, a Preliminary Injunction filed by The R Street Institute with Brief/Memorandum in Support. (Attachments: # 1 (p.30) Exhibit(s) Brief of the R Street Institute as Amicus Curiae in Support of Plaintiff George Anibowei's motion for Partial Summary Judgment, or, in the Alternative, a Preliminary Injunction) (Cole, William) (Entered: 04/29/2019) |
| 05/01/2019 | 72 | ELECTRONIC ORDER granting 71 (p.691) Unopposed MOTION for Leave to File Brief of the R Street Institute as Amicus Curiae in Support of Plaintiff George Anibowei's motion for Partial Summary Judgment, or, in the Alternative, a Preliminary Injunction filed by The R Street Institute with Brief/Memorandum in Support. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Senior Judge Sidney A Fitzwater on 5/1/2019) (Senior Judge Sidney A Fitzwater) (Entered: 05/01/2019) |
| 05/01/2019 | 73 (p.719) | Brief/Memorandum in Support filed by The R Street Institute re 67 (p.641) *(Partial)* MOTION for Injunction *(Preliminary)*. (epm) (Entered: 05/01/2019) |
| 05/01/2019 | 74 | ELECTRONIC ORDER granting 69 (p.683) Application for Admission Pro Hac Vice of William F. Cole. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 5/1/2019) (Senior Judge Sidney A Fitzwater) (Entered: 05/01/2019) |
| 05/01/2019 | 75 | ELECTRONIC ORDER granting 70 (p.687) Application for Admission Pro Hac Vice of Daniel R. Adler. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 5/1/2019) (Senior Judge Sidney A Fitzwater) (Entered: 05/01/2019) |
| 05/06/2019 | 76 (p.739) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-9966170) filed by George Anibowei (Attachments: # 1 (p.30) WDTX Certificate of Good Standing, # 2 (p.56) Proposed Order)Attorney Mimi Marziani added to party George Anibowei(pty:pla) (Marziani, Mimi) (Entered: 05/06/2019) |
| 05/07/2019 | 77 | ADVISORY TO COUNSEL: Your application for admission pro hac vice 76 (p.739) is deficient. As the court's application for admission form indicates at § IV, you must attach to your application an original certificate of good standing issued within the past 90 days from the attorney licensing authority in a state in which you are admitted to practice (e.g., State Bar of Texas). A certificate of good standing from another federal court, such as a United States district court, is insufficient. Please make a separate electronic filing that contains the |

| | | |
|---|---|---|
| | | required certificate of good standing (you do not have to resubmit the remainder of the application). Once you make this filing, your application for admission pro hac vice will be acted on. (Senior Judge Sidney A. Fitzwater). (Entered: 05/07/2019) |
| 05/07/2019 | 78 (p.744) | RESPONSE filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, David P Pekoske, Transportation Security Administration, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello re: 67 (p.641) MOTION for Summary Judgment *(Partial)* MOTION for Injunction *(Preliminary)* (Delaney-DOJ, Sarah) (Entered: 05/07/2019) |
| 05/07/2019 | 79 (p.747) | Brief/Memorandum in Support filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, David P Pekoske, Transportation Security Administration, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello re 78 (p.744) Response/Objection, *to 67 (p.641) Motion for Summary Judgment (Partial) Motion for Injunction (Preliminary)* (Delaney-DOJ, Sarah) (Entered: 05/07/2019) |
| 05/07/2019 | 80 (p.785) | Unopposed MOTION to Stay *Response Deadline to Plaintiff's Second Amended Complaint* filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, David P Pekoske, Transportation Security Administration, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello with Brief/Memorandum in Support. (Delaney-DOJ, Sarah) (Entered: 05/07/2019) |
| 05/08/2019 | 81 (p.788) | ADDITIONAL ATTACHMENTS to 76 (p.739) Application for Admission Pro Hac Vice, by Plaintiff George Anibowei. (Marziani, Mimi) (Entered: 05/08/2019) |
| 05/09/2019 | 82 | ELECTRONIC ORDER granting 76 (p.739) Application for Admission Pro Hac Vice of Mimi Marziani. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Senior Judge Sidney A Fitzwater on 5/9/2019) (Senior Judge Sidney A Fitzwater) (Entered: 05/09/2019) |
| 05/09/2019 | 83 (p.789) | ORDER granting 80 (p.785) Unopposed MOTION to Stay Response Deadline to Plaintiff's Second Amended Complaint filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, David P Pekoske, Transportation Security Administration, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello. (Ordered by Senior Judge Sidney A Fitzwater on 5/9/2019) (Senior Judge Sidney A Fitzwater) (Entered: |

| | | |
|---|---|---|
| | | 05/09/2019) |
| 05/21/2019 | 84 (p.790) | REPLY filed by George Anibowei re: 67 (p.641) MOTION for Summary Judgment *(Partial)* MOTION for Injunction *(Preliminary)* (Tutt, Andrew) (Entered: 05/21/2019) |
| 07/03/2019 | 85 (p.807) | ORDER: The court on its own initiative resets the trial of this case to the two-week docket of 2/3/2020. (Ordered by Senior Judge Sidney A Fitzwater on 7/3/2019) (zkc) (Entered: 07/03/2019) |
| 10/10/2019 | 86 (p.809) | Joint MOTION to Stay *Deadlines* filed by William P Barr, Kevin K McAleenan, David P Pekoske, Transportation Security Administration, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement with Brief/Memorandum in Support. (Delaney-DOJ, Sarah) (Entered: 10/10/2019) |
| 10/11/2019 | 87 (p.812) | ORDER granting 86 (p.809) Motion to Stay Deadlines. The unexpired deadlines in this case are stayed, and the trial setting of the two-week docket of February 3, 2020 is vacated. (Ordered by Senior Judge Sidney A Fitzwater on 10/11/2019) (ndt) (Entered: 10/11/2019) |
| 11/18/2019 | 88 | ADVISORY TO COUNSEL: The court intends to hear oral argument on 67 (p.641) plaintiff's motion for partial summary judgment, or, in the alternative, a preliminary injunction. The court directs the parties to confer and advise the court by letter (which should be submitted electronically) of their availability for oral argument on the following dates: January 8, 9 (afternoon only), 13, 15, 16 (afternoon only), 22, 23 (afternoon only), 27, and 29, 2020. The court intends to issue an order specifying the argument procedures at least 14 days before the date argument is heard. (Senior Judge Sidney A. Fitzwater) (Entered: 11/18/2019) |
| 11/22/2019 | 89 (p.813) | NOTICE of *Dates of Availability for Oral Argument* re: 88 Remark filed by George Anibowei (Tutt, Andrew) (Entered: 11/22/2019) |
| 11/25/2019 | 90 | ELECTRONIC ORDER: Motion Hearing set for 1/13/2020 10:00 AM in US Courthouse, Courtroom 1351, 1100 Commerce St., Dallas, TX 75242-1310 before Senior Judge Sidney A Fitzwater. re: 67 (p.641) MOTION for Summary Judgment (Partial), MOTION for Injunction (Preliminary) filed by George Anibowei. (Ordered by Senior Judge Sidney A Fitzwater on 11/25/2019) (Senior Judge Sidney A Fitzwater) (Entered: 11/25/2019) |
| 12/30/2019 | 91 (p.815) | ORDER re procedure for ORAL ARGUMENT. (Ordered by Senior Judge Sidney A Fitzwater on 12/30/2019) (Senior Judge Sidney A Fitzwater) (Entered: 12/30/2019) |

| | | |
|---|---|---|
| 01/10/2020 | 92 (p.816) | NOTICE of *ADDITIONAL AUTHORITY* filed by George Anibowei (Attachments: # 1 (p.30) United States v. Cano, # 2 (p.56) United States v. Aigbekaen, # 3 (p.58) Alassad v. Nielsen) (Callahan, Sam) (Entered: 01/10/2020) |
| 01/13/2020 | 93 | ELECTRONIC Minute Entry for proceedings held before Senior Judge Sidney A Fitzwater: Motion Hearing held on 1/13/2020 re 67 (p.641) Motion for Summary Judgment,, Motion for Injunction, filed by George Anibowei. Oral argument heard. Taken under advisement. Written order to follow. Attorney Appearances: Plaintiff - Andrew Tutt with Stephen Wirth, Stanton Jones and Peter Steffensen; Defense - Sarah Delaney. (Court Reporter: Pamela Wilson) (No exhibits) Time in Court - :57. (chmb) (Entered: 01/13/2020) |
| 01/14/2020 | 94 (p.880) | MEMORANDUM OPINION AND ORDER denying 67 (p.641) MOTION for Summary Judgment (Partial), or, in the alternative, for Preliminary Injunction, filed by plaintiff George Anibowei. (Ordered by Senior Judge Sidney A Fitzwater on 1/14/2020) (Senior Judge Sidney A Fitzwater) (Entered: 01/14/2020) |
| 01/15/2020 | 95 (p.889) | NOTICE OF INTERLOCUTORY APPEAL as to 94 (p.880) Memorandum Opinion and Order, to the Fifth Circuit by George Anibowei. Filing fee $505, receipt number 0539-10546366. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Tutt, Andrew) (Entered: 01/15/2020) |
| 01/27/2020 | | USCA Case Number 20-10059 in USCA5 for 95 (p.889) Notice of Appeal filed by George Anibowei. (svc) (Entered: 01/27/2020) |
| 01/28/2020 | 96 (p.891) | Transcript Order Form: re 95 (p.889) Notice of Appeal,,,, transcript requested by George Anibowei for Summary judgment and preliminary injunction hearing held 1/13/20 (Court Reporter: Pamela Wilson.) Payment method: Private Funds - Requester has paid or will pay as directed by the reporter. Reminder to appellant: this document must also be filed with the appeals court.. (Callahan, Sam) (Entered: 01/28/2020) |

| 01/28/2020 | 97 (p.892) | MOTION to Dismiss filed by David P Pekoske, Transportation Security Administration with Brief/Memorandum in Support. (Delaney-DOJ, Sarah) (Entered: 01/28/2020) |
|---|---|---|
| 01/28/2020 | 98 (p.909) | ANSWER to 59 (p.545) Amended Complaint,,, filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Delaney-DOJ, Sarah) (Entered: 01/28/2020) |
| 02/10/2020 | 99 (p.949) | ORDER: Proposed Scheduling Order due by 3/2/2020. (Ordered by Senior Judge Sidney A Fitzwater on 2/10/2020) (Senior Judge Sidney A Fitzwater) (Entered: 02/10/2020) |
| 02/13/2020 | 100 (p.1169) | Notice of Filing of Official Electronic Transcript of Oral Argument Proceedings held on 1/13/2020 before Judge Sidney Fitzwater. Court Reporter/Transcriber Pamela Wilson, Telephone number 214.662.1557. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (63 pages) Redaction Request due 3/5/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/13/2020. (pjw) (Entered: 02/13/2020) |
| 02/14/2020 | 101 (p.950) | MOTION for Extension of Time to File Response/Reply to 97 (p.892) MOTION to Dismiss filed by George Anibowei (Attachments: # 1 (p.30) Proposed Order) (White, Graham) (Entered: 02/14/2020) |
| 02/14/2020 | 102 | ELECTRONIC ORDER granting 101 (p.950) Unopposed MOTION for Extension of Time to File Response to 97 (p.892) MOTION to Dismiss filed by George Anibowei. Response due by 3/18/2020. (Ordered by Senior Judge Sidney A Fitzwater on 2/14/2020) (Senior Judge Sidney A |

| | | |
|---|---|---|
| | | Fitzwater) (Entered: 02/14/2020) |
| 03/02/2020 | 103 (p.956) | RESPONSE filed by George Anibowei re: 99 (p.949) Order Setting Deadline/Hearing (Tutt, Andrew) (Entered: 03/02/2020) |
| 03/05/2020 | 105 (p.965) | ORDER Administratively Closing Case. This case is stayed until the United States Court of Appeals for the Fifth Circuit issues its mandate in Appeal No. 20-10059. The clerk of court is directed to close this case for statistical purposes. Defendants' January 28, 2020 motion to dismiss plaintiff's second amended complaint is statistically closed, subject to being reopened and decided after the stay is lifted. (Ordered by Senior Judge Sidney A Fitzwater on 3/5/2020) (Senior Judge Sidney A Fitzwater) (Entered: 03/05/2020) |
| 03/06/2020 | | Record on Appeal for USCA5 20-10059 (related to 95 (p.889) appeal): Record consisting of: 3 ECF electronic record on appeal (eROA) is certified, 1 Volume(s) electronic transcript,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (svc) (Entered: 03/06/2020) |
| 05/27/2022 | 106 (p.966) | NOTICE of *Peter Steffensen to be removed as counsel* filed by George Anibowei (Marziani, Mimi) (Entered: 05/27/2022) |
| 08/11/2023 | 107 (p.967) | Opinion of USCA in accordance with USCA judgment re 95 (p.889) Notice of Appeal filed by George Anibowei. (svc) (Entered: 08/11/2023) |
| 08/11/2023 | 108 (p.980) | JUDGMENT/MANDATE of USCA as to 95 (p.889) Notice of Appeal filed by George Anibowei. IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED. Issued as Mandate: 8/11/2023. (svc) (Entered: 08/11/2023) |
| 02/02/2024 | 109 (p.982) | NOTICE of Attorney Appearance by Travis Walker Fife on behalf of George Anibowei. (Filer confirms contact info in ECF is current.) (Fife, Travis) (Entered: 02/02/2024) |

| | | |
|---|---|---|
| 02/05/2024 | 110 (p.983) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-14367017) filed by George Anibowei Attorney Kassandra Gonzalez added to party George Anibowei(pty:pla) (Gonzalez, Kassandra) (Entered: 02/05/2024) |
| 02/05/2024 | 111 | ELECTRONIC ORDER granting 110 (p.983) Application for Admission Pro Hac Vice of Kassandra Gonzalez. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). The court does not suggest that the designated local counsel qualifies under LR 83.10(a) because, under that Rule, local counsel must reside or maintain the attorney's principal office in this district, and the attorney's residence or principal office must be located within 50 miles of the courthouse in the division in which the case is pending. (Ordered by Senior Judge Sidney A Fitzwater on 2/5/2024) (Senior Judge Sidney A Fitzwater) (Entered: 02/05/2024) |
| 05/13/2024 | 112 (p.987) | MOTION to Withdraw as Attorney *J. Born, S. Callahan, and G. White* filed by George Anibowei (Attachments: # 1 (p.30) Proposed Order) (Born, Jayce) (Entered: 05/13/2024) |
| 05/13/2024 | 113 (p.991) | ORDER granting 112 (p.987) Motion to Withdraw as Attorney. Attorney Graham White; Jayce Lane Born and Sam Callahan terminated. (Ordered by Senior Judge Sidney A Fitzwater on 5/13/2024) (cfk) (Entered: 05/13/2024) |
| 05/24/2024 | 114 (p.992) | NOTICE of Attorney Appearance by Dustin Rynders on behalf of George Anibowei. (Filer confirms contact info in ECF is current.) (Rynders, Dustin) (Entered: 05/24/2024) |
| 05/24/2024 | 115 (p.993) | Unopposed MOTION to Withdraw *Hani Mirza and Mimi Marziani as Counsel of Record* filed by George Anibowei (Attachments: # 1 (p.30) Proposed Order) (Gonzalez, Kassandra) (Entered: 05/24/2024) |
| 05/24/2024 | 116 (p.997) | ORDER granting 115 (p.993) Unopposed MOTION to Withdraw *Hani Mirza and Mimi Marziani as Counsel of Record* (Ordered by Senior Judge Sidney A Fitzwater on 5/24/2024) (chmb) (Entered: 05/24/2024) |
| 05/28/2024 | 117 (p.998) | ORDER: No later than 6/18/2024, the parties must file a joint status report that summarizes the current status of this case and states the parties' positions on whether the case should be reopened statistically and the court should request the parties' proposals for entry of a new scheduling order. The report may include any other matters that the parties wish to bring to the court's |

| | | |
|---|---|---|
| | | attention. (Ordered by Senior Judge Sidney A Fitzwater on 5/28/2024) (ndt) (Entered: 05/28/2024) |
| 06/17/2024 | 118 (p.999) | MOTION (Motion and Stipulation of Voluntary Dismissal of Counts I-V, VII of Plaintiff's Verified Second Amended Complaint) filed by George Anibowei (Attachments: # 1 (p.30) Proposed Order) (Gonzalez, Kassandra) (Entered: 06/17/2024) |
| 06/17/2024 | 119 (p.1003) | MOTION (Joint Status Report and Motion to Lift the Stay) filed by George Anibowei (Attachments: # 1 (p.30) Proposed Order) (Gonzalez, Kassandra) (Entered: 06/17/2024) |
| 06/17/2024 | 120 (p.1007) | Proposed Briefing Schedule filed by George Anibowei (Attachments: # 1 (p.30) Proposed Order) (Gonzalez, Kassandra) Modified text and terminated motion on 6/18/2024 (ali). (Entered: 06/17/2024) |
| 06/18/2024 | 121 (p.1011) | ORDER granting 119 (p.1003) Motion to Lift the Stay. (Ordered by Senior Judge Sidney A Fitzwater on 6/18/2024) (cfk) (Entered: 06/18/2024) |
| 06/18/2024 | 122 (p.1012) | ORDER granting 118 (p.999) Motion and Stipulation of Voluntary Dismissal of Counts I-V, VII of Plaintiff's Verified Second Amended Complaint. (Ordered by Senior Judge Sidney A Fitzwater on 6/18/2024) (cfk) (Entered: 06/18/2024) |
| 06/21/2024 | 123 (p.1013) | BRIEFING ORDER: Defendants must file a motion, including a motion to dismiss or for summary judgment, no later than 8/2/2024. Plaintiff must file a response to a motion no later than 9/3/2024. Defendants must file any reply to a response no later than 9/24/2024. (Ordered by Senior Judge Sidney A Fitzwater on 6/21/2024) (ndt) (Entered: 06/27/2024) |
| 08/02/2024 | 124 (p.1014) | MOTION to Dismiss *Remaining Claim of Second Amended Complaint* filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello with Brief/Memorandum in Support. (Delaney-DOJ, Sarah) (Entered: 08/02/2024) |
| 08/02/2024 | 125 (p.1047) | Appendix in Support re 124 (p.1014) MOTION to Dismiss *Remaining Claim of Second Amended Complaint* filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello (Delaney-DOJ, Sarah) (Entered: 08/02/2024) |
| 08/30/2024 | 126 | ADVISORY TO COUNSEL: Counsel are requested to confer and advise the court by letter of their availability to present oral argument on the 124 (p.1014) MOTION to |

| | | |
|---|---|---|
| | | Dismiss Remaining Claim of Second Amended Complaint filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello during the afternoon of any of the following dates: October 8, 10, 15, 17, 22, 24, 29, and 31, 2024. The letter can be submitted electronically to Fitzwater_Orders@txnd.uscourts.gov. The court will later enter an order regarding the specific date and time, procedures, and time limits for argument. (Senior Judge Sidney A. Fitzwater) (Entered: 08/30/2024) |
| 09/03/2024 | 127 (p.1084) | RESPONSE filed by George Anibowei re: 124 (p.1014) MOTION to Dismiss *Remaining Claim of Second Amended Complaint* (Attachments: # 1 (p.30) Proposed Order) (Gonzalez, Kassandra) (Entered: 09/03/2024) |
| 09/05/2024 | 128 (p.1110) | ORDER: Motion Hearing set for 10/22/2024 04:00 PM in US Courthouse, Courtroom 1351, 1100 Commerce St., Dallas, TX 75242-1310 before Senior Judge Sidney A Fitzwater re: 124 (p.1014) MOTION to Dismiss Remaining Claim of Second Amended Complaint filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello. (Ordered by Senior Judge Sidney A Fitzwater on 9/5/2024) (Senior Judge Sidney A Fitzwater) (Entered: 09/05/2024) |
| 09/24/2024 | 129 (p.1111) | REPLY filed by William P Barr, Kevin K McAleenan, Kirstjen M Nielsen, US Customs and Border Protection, US Department of Homeland Security, US Immigration and Customs Enforcement, Ronald D Vitiello re: 124 (p.1014) MOTION to Dismiss *Remaining Claim of Second Amended Complaint* (Delaney-DOJ, Sarah) (Entered: 09/24/2024) |
| 09/26/2024 | 130 (p.1123) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-14949286) filed by George Anibowei (Attachments: # 1 (p.30) Certificate of Good Standing, # 2 (p.56) Proposed Order)Attorney Jillian M. Williams added to party George Anibowei(pty:pla) (Williams, Jillian) (Entered: 09/26/2024) |
| 09/26/2024 | 131 | ELECTRONIC ORDER granting 130 (p.1123) Application for Admission Pro Hac Vice of Jillian M. Williams. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Senior Judge Sidney A Fitzwater on 9/26/2024) (Senior Judge Sidney A Fitzwater) (Entered: 09/26/2024) |
| 10/22/2024 | 132 | |

| | | |
|---|---|---|
| | | ELECTRONIC Minute Entry for proceedings held before Senior Judge Sidney A Fitzwater: Motion Hearing held on 10/22/2024 re: 124 (p.1014) MOTION to Dismiss Remaining Claim of Second Amended Complaint filed by US Immigration and Customs Enforcement, Kirstjen M Nielsen, US Department of Homeland Security, Ronald D Vitiello, US Customs and Border Protection, William P Barr, Kevin K McAleenan. Oral Argument heard. Taken under advisement. Written order to follow. Attorney Appearances: Plaintiff - Kassandra Gonzalez with Jillian Williams; Defense - Sarah Delaney. (Court Reporter: Pamela Wilson) (No exhibits) Time in Court - :30. (chmb) Modified on 10/24/2024 (chmb). (Entered: 10/22/2024) |
| 10/30/2024 | 133 (p.1233) | Notice of Filing of Official Electronic Transcript of Motion Hearing Proceedings held on 10/22/2024 before Judge Sidney Fitzwater. Court Reporter/Transcriber Pamela Wilson, Telephone number 214.662.1557. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (25 pages) Redaction Request due 11/20/2024. Redacted Transcript Deadline set for 12/2/2024. Release of Transcript Restriction set for 1/28/2025. (pjw) (Entered: 10/30/2024) |
| 11/22/2024 | 134 (p.1128) | MEMORANDUM OPINION AND ORDER granting 124 (p.1014) Motion to Dismiss. (Ordered by Senior Judge Sidney A Fitzwater on 11/22/2024) (cfk) (Entered: 11/25/2024) |
| 11/22/2024 | 135 (p.1146) | JUDGMENT: For the reasons set out in a memorandum opinion and order filed today, it is ordered and adjudged that plaintiff's action against defendants is dismissed without prejudice. Defendants' taxable costs of court, as calculated by the clerk of court, are assessed against plaintiff. (Ordered by Senior Judge Sidney A Fitzwater on 11/22/2024) (cfk) (Entered: 11/25/2024) |
| 11/26/2024 | 136 (p.1147) | NOTICE OF APPEAL as to 135 (p.1146) Judgment, 134 (p.1128) Memorandum Opinion and Order to the Fifth Circuit by George Anibowei. Filing fee $605, receipt number ATXNDC-15091041. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION |

| | | |
|---|---|---|
| | | REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Attachments: # 1 (p.30) Exhibit(s) Judgment, # 2 (p.56) Exhibit(s) Memorandum Opinion and Order) (Tutt, Andrew) (Entered: 11/26/2024) |
| 12/09/2024 | | USCA Case Number 24-11042 in USCA5 for 136 (p.1147) Notice of Appeal filed by George Anibowei. (axm) (Entered: 12/09/2024) |

# TAB 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

GEORGE ANIBOWEI,

       *Plaintiff,*

    v.

ALEJANDRO MAYORKAS, SECRETARY, U.S.
DEPARTMENT OF HOMELAND SECURITY, *et al.*,

       *Defendants.*

Case No.  3:16-cv-03495-D

## NOTICE OF APPEAL

Pursuant to Fed. R. App. P. 3(c)(1) and 4(a), notice is hereby given that Plaintiff George Anibowei in the above-named case appeals to the United States Court of Appeals for the Fifth Circuit. Plaintiff appeals the order (Dkt. 134, entered November 22, 2024) and accompanying final judgment (Dkt. 135, entered November 22, 2024) and all underlying findings, determinations, rulings, opinions, and orders entered in the case that were adverse, either in whole or in part, to Plaintiff.

Dated:  November 26, 2024                    Respectfully submitted,

**ARNOLD & PORTER**
**KAYE SCHOLER LLP**

By:  */s/ Andrew Tutt*
      Andrew Tutt (*pro hac vice*)
      Robert Stanton Jones (*pro hac vice*)
      Stephen K. Wirth (*pro hac vice*)
      ARNOLD & PORTER KAYE SCHOLER LLP
      601 Massachusetts Ave., NW
      Washington, DC 20001
      (202) 942-5000
      (202) 942-5999 (fax)
      andrew.tutt@arnoldporter.com

      Kassandra Gonzalez (*pro hac vice*)
      (State Bar. No. 24116439)
      TEXAS CIVIL RIGHTS PROJECT
      P.O. Box 17757
      Austin, TX 78760
      (512) 474-5073 ext. 182
      (512) 474-0726 (fax)
      kassandra@texascivilrightsproject.org

      Dustin Rynders (State Bar No. 24048005)
      Travis Walker Fife (State Bar No. 24126956)
      TEXAS CIVIL RIGHTS PROJECT
      P.O. Box 1108
      Houston, TX 77251
      (832) 971-8984 ext. 186
      (832) 554-9981 (fax)
      dustin@texascivilrightsproject.org
      travis@texascivilrightsproject.org

      *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

*/s/ Andrew Tutt*
Andrew Tutt (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
andrew.tutt@arnoldporter.com

# TAB 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGE ANIBOWEI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:16-CV-3495-D |
| | § | |
| ALEJANDRO MAYORKAS, et al., | § | |
| | § | |
| Defendants. | § | |

## **JUDGMENT**

For the reasons set out in a memorandum opinion and order filed today, it is ordered and adjudged that plaintiff's action against defendants is dismissed without prejudice.

Defendants' taxable costs of court, as calculated by the clerk of court, are assessed against plaintiff.

Done at Dallas, Texas November 22, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

# TAB 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GEORGE ANIBOWEI,                    §
                                    §
                Plaintiff,          §
                                    §
VS.                                 §        Civil Action No. 3:16-CV-3495-D
                                    §
ALEJANDRO MAYORKAS, et al.,         §
                                    §
                Defendants.         §

MEMORANDUM OPINION
AND ORDER

Defendants—including U.S. Department of Homeland Security ("DHS"), U.S.
Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement
("ICE") (collectively, "defendants")[1]—move to dismiss Count VI of plaintiff George
Anibowei's ("Anibowei's") second amended complaint: the remaining claim that Anibowei
brings under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(B), seeking
vacatur of three directives promulgated by CBP and ICE, and declaratory and injunctive
relief against the departments and agencies and the individual department and agency heads
in their official capacity.[2] Defendants move to dismiss Count VI for lack of subject matter

---

[1]The other defendants are: Secretary of Homeland Security Alejandro Mayorkas, in
his official capacity; Troy A. Miller, Senior Official Performing the Duties of the
Commissioner for CBP, in his official capacity; Patrick J. Lechleitner, Deputy Director and
Senior Official Performing the Duties of the Director for ICE, in his official capacity; and
Attorney General Merrick Garland, in his official capacity

[2]Anibowei initially brought seven claims for relief, including under the First and
Fourth Amendments, but he voluntarily dismissed with prejudice all claims other than count
VI, his APA claim, on June 17, 2024.

jurisdiction and failure to state a claim on which relief can be granted. It appears that Anibowei is essentially conceding that he will lose if this court reaches the merits, but he is attempting to avoid dismissal for lack of jurisdiction so that the merits will be at issue on appeal. For the reasons that follow, the court grants defendants' motion and dismisses Count VI of Anibowei's second amended complaint for lack of subject matter jurisdiction. Alternatively, the court dismisses Count VI for failure to state a claim on which relief can be granted.

I

Anibowei, a lawyer, is a naturalized U.S. citizen who was born in Nigeria. He owns a small law practice where he primarily handles immigration matters. Anibowei travels several times a year, often internationally, for both work and personal reasons. In October 2016 CBP officers at the Dallas-Fort Worth International Airport seized Anibowei's work cell phone, without his consent or a search warrant, and advised Anibowei that they were going to copy the hard drive. When Anibowei protested, the officers gave him a flyer explaining their legal authority to search and seize his phone under CBP Directive No. 3349-049, Border Search of Electronic Devices Containing Information (Aug. 20, 2009) ("2009 CBP Directive"). Anibowei's work cell phone contains sensitive information about his clients and their cases, including call logs, voice mails, text messages, and an archive of Anibowei's work emails with drafts of confidential filings and other information involving

24-11042.1129

removal proceedings adverse to DHS.[3]

At the time of filing his second amended complaint, CBP agents had searched Anibowei's phone at least four additional times. He intends to continue traveling internationally, but he now does so without his work phone because of the risk of further invasions of his and his clients' privacy. He continues to carry his personal phone when he travels, which also has access to his work email.

Anibowei seeks vacatur of three directives: the 2009 CBP Directive, CBP Directive No. 3340-049A, Border Search of Electronic Devices (Jan. 4, 2018) ("2018 CBP Directive"), and ICE Directive 7-6.1, Border Searches of Electronic Devices (Aug. 18, 2009) ("2009 ICE Directive") (collectively, "Directives"). He also seeks a declaration that defendants' policies and practices violate the First and Fourth Amendments by authorizing searches of electronic devices absent a warrant supported by probable cause; a declaration that they violated his First and Fourth Amendment rights by searching his devices absent a warrant supported by probable cause; an injunction ordering defendants to expunge information gathered from or copies made of the contents of his devices; an injunction against enforcement of the agency policies against himself and across the board; and reasonable attorney's fees and costs and other such relief that the court deems proper.

The court has heard oral argument.

_____

[3]CBP is a component of DHS.

-3-

II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  When challenging subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).  If, as here, the party merely files a Rule 12(b)(1) motion, the attack is considered facial, and the court looks only at the sufficiency of the allegations in the complaint and assumes them to be true. *Id.*  If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.*  This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (Rosenthal, J.) (alteration in original) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.)).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' . . . complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and

24-11042.1131

alteration omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive defendants' motion, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## III

The court begins with defendants' assertion under Rule 12(b)(1) that this court does not have subject matter jurisdiction over Anibowei's APA claim.  Defendants contend that the court lacks jurisdiction because: (1) Anibowei's challenges to the Directives are moot; (2) his alleged injuries would not be redressed by his requested relief; (3) the Directives do not constitute final agency actions such that there is jurisdiction under the APA; and (4) Anibowei has an adequate alternative remedy to APA judicial relief, meaning there is no

24-11042.1132

jurisdiction under the APA.

## A

The court turns first to defendants' contention that Anibowei's claim is moot with respect to the 2009 CBP Directive and the 2009 ICE Directive because each has been superseded.[4]

## 1

Article III of the Constitution limits federal judicial power to cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *id.* at 396 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)), or "[i]f a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time," *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988). A claim against an agency regulation or other directive may become moot if the agency repeals the offending pronouncement. *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). If an agency repeals a challenged directive but then replaces it with a substantially similar one, there is no mootness because the injury remains. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022). The issue is whether the court can still order "effectual relief . . . to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (citation and internal quotation marks omitted).

---

[4]Anibowei does not contest defendants' assertion that the claim for vacatur of the 2009 CBP Directive is moot because it has been superseded by the 2018 CBP Directive.

2

The parties do not dispute that the 2018 CBP Directive remains in effect. Additionally, the 2009 ICE Directive remains in effect except to the extent that it has been superseded by supplemental ICE guidance, *see* Ds. App. (ECF No. 125) at 33-34.  The section Anibowei challenges—which allows searches and seizures of electronic devices without a warrant and probable cause—is modified by ICE Supplemental Guidance, Legal Update - Border Search of Electronic Devices (May 11, 2018) ("2018 ICE Guidance").  Ds. App. (ECF No. 125) at 33-34.  The 2018 ICE Guidance replaces the policy in the 2009 ICE Directive allowing searches and seizures of electronic devices with or without individualized suspicion, *see* Ds. App. (ECF No. 125) at 24, with the requirement that agents "should no longer perform advanced border searches of electronic devices without reasonable suspicion," *id*. at 33-34.  Because Anibowei challenges the policy allowing searches and seizures of devices without a warrant or probable cause, and both the original and updated versions of the policy allow for such searches and seizures, the challenge is not moot to the extent that the original policy has been replaced with a substantially similar one.  *See Franciscan All., Inc.*, 47 F.4th at 374. Therefore, Count VI of Anibowei's second amended complaint should not be dismissed based on mootness.

B

The court turns next to defendants' assertion that Anibowei lacks standing because his alleged injuries would not be redressed by vacatur of the Directives.

-7-

1

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. These elements are (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

Defendants maintain that Anibowei's alleged injury is not redressable via the requested remedies because, even if the Directives are vacated, government agents still retain the power to search electronic devices at the border without a warrant because the Directives are not the source of that authority. Rather, defendants contend, it is the "plenary authority of the Federal Government to conduct searches and inspections" at the border that authorizes these searches. Ds. Br. (ECF No. 124) at 13.

To satisfy the redressability prong of standing, the plaintiff must show a "substantial likelihood that the relief requested will redress the injury." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks and citation omitted). A plaintiff must demonstrate redressability for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000). The plaintiff "need not show that a favorable decision will relieve . . . *every* injury." *Larson v.*

-8-

*Valente*, 456 U.S. 228, 243 n.15 (1982). Instead, a "substantial likelihood" that the requested relief will redress the alleged injury is enough. *Duke Power Co. v. Caroline Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978); *see also Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) (holding that a plaintiff "need only show that a favorable ruling could potentially lessen its injury").

This court frequently holds that the redressability prong is met when plaintiffs plead that agency policies are contrary to law and that their harms could be redressed by setting aside harmful guidance documents. *See, e.g.*, *Nat'l Fed'n of Indep. Bus. v. Dougherty*, 2017 WL 1194666, at *6 (N.D. Tex. Feb. 3, 2017) (Fitzwater, J.); *see also Texas v. Cardona*, 2024 WL 3658767, at *18 (N.D. Tex. Aug. 5, 2024) (O'Connor, J.) (holding that, even if defendants could enforce policies without the challenged guidance documents, a declaration that the guidance documents' interpretation was unlawful and an injunction restraining reliance on that interpretation would reduce the alleged harm).

2

Here, Anibowei pleads three redressable injuries: (1) he is forced to take precautionary measures to avoid unconstitutional border searches, such as leaving his work phone at home when he travels; (2) he is under threat that he will be subject to unconstitutional border searches in the future; and (3) he suffers an ongoing injury from the government's continued retention of the data it downloaded from his cell phone in 2016. Anibowei alleges that the requested relief of vacatur of the policies would lessen his injury by allowing him once again to carry his work phone when he travels, enabling him to travel

-9-

without the threat of delay or embarrassment from unconstitutional searches, and by increasing the likelihood that the data collected from his phone would be expunged based on the recognition that the data were unlawfully obtained. Because Anibowei plausibly alleges that his injuries would likely be lessened by his requested remedies, he has adequately pleaded a redressable injury.

C

The court now considers defendants' contention that the Directives are not reviewable under the APA because they are not final agency actions.

1

"The APA allows for judicial review only of a 'final agency action[.]'" *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 441 (5th Cir. 2019) (citing 5 U.S.C. § 704) ("*EEOC*"). Two conditions must be satisfied for an agency action to be final: (1) the action "must mark the 'consummation' of the agency's decisionmaking process," and (2) the action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78 (citations omitted). "Courts consistently hold that an agency's guidance documents binding it and its staff to a legal position produce legal consequences or determine rights and obligations, thus meeting the second prong of *Bennett*." *EEOC*, 933 F.3d at 441. "'The primary distinction between a substantive rule'—which is, by definition, a final agency action—'and a general statement of policy . . . turns on whether an agency intends to bind *itself* to a particular legal position.'" *Id.* (quoting *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997)). An action may

-10-

be binding on an agency itself "if it either appears on its face to be binding[] or is applied by the agency in a way that indicates it is binding[,]" *id.* (alteration in original) (citation omitted), and, in some cases, "the mandatory language of a document alone can be sufficient to render it binding," *id.* at 422 (quoting *Gen. Elec. Co. v. Env't Prot. Agency*, 290 F.3d 377, 383 (D.C. Cir. 2002)). Mandatory language is not strictly required, however—the Supreme Court takes a "pragmatic approach." *Id.* at 441 (citation and internal quotation marks omitted). "[I]f a statement denies the [agency] discretion in the area of its coverage[,] then the statement is binding, and creates rights or obligations." *Id.* at 442 (alterations in original) (quoting *Gen. Elec. Co.*, 290 F.3d at 382).

2

Mandatory language and a pragmatic view of the Directives together indicate that these directives are final agency actions and are binding on their issuing agencies. The 2018 CBP Directive states that it exists "[t]o provide guidance and standard operating procedures for searching, reviewing, retaining, and sharing information contained in computers . . . mobile phones . . . and any other communication, electronic, or digital devices subject to . . . border searches by [CBP]." Ds. App. (ECF No. 125) at 11. This directive contains binding mandatory language, stating that "[a]ll CBP Officers, Border Patrol Agents, . . . and other officials authorized by CBP to perform border searches *shall adhere to the policy described in this Directive* and any implementing policy memoranda[.]" *Id.* (emphasis added). The directive binds itself to its procedures, as is made clear by the statement in the directive that "[t]his directive *governs* border searches of electronic devices[.]" *Id.* at 12

-11-

(emphasis added).

The 2009 ICE Directive similarly states that it "provides legal guidance and establishes policy and procedures within [ICE] with regard to border search authority[,]" Ds. App. (ECF No. 125) at 23, and it states that "Special Agents are responsible for complying with the provisions of this Directive[,]" *id.* at 25. The language in these directives indicates that they are intended to be binding on the agencies themselves and their agents and officers in executing border searches of electronic devices.

Defendants point out that the Directives include disclaimers explicitly stating that they do not create any rights or privileges. *See id.* at 22, 32. But when the Directives are assessed pragmatically, it does not appear that these boilerplate statements outweigh the balance of the Directives' language, which is clearly binding on the agency itself and those acting under its authority. By binding the agencies and their agents and officers to the interpretation of what is required for different types of searches of electronic devices at the border, these directives impact the privacy rights and privileges of individuals at the border who are subject to searches carried out under the authority and instruction of these directives.

D

Finally, the court considers whether the Directives are not reviewable under the APA on the ground that Anibowei has an adequate alternative remedy in a court for his alleged injuries.

1

The APA grants federal courts jurisdiction over "final agency action *for which there*

-12-

is no other adequate remedy in a court[.]"  5 U.S.C. § 704 (emphasis added).  *See also Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 192 (5th Cir. 2023) (characterizing the "adequate remedy" requirement as jurisdictional).  "The adequacy of the relief available need not provide an identical review that the APA would provide, so long as the alternative remedy offers the 'same genre' of relief."  *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (per curiam) (citation omitted).  The requirement that there be no adequate alternative remedy "entails a case-specific evaluation."  *Id.*  "[A] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of the opportunity to pursue that remedy."  *Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (per curiam) (citation omitted).

2

The court holds that Anibowei has an adequate alternative remedy to his APA challenge because he could allege in a court—indeed, in this court and lawsuit—the constitutional claims that he has already brought but has voluntarily dismissed.  Insofar as Anibowei seeks vacatur of the Directives to prevent being subject to warrantless searches of his electronic devices at the border, an injunction against enforcement of those policies pursuant to a constitutional challenge would similarly prevent his being subjected to such searches in the future.  Therefore, bringing a constitutional challenge and seeking injunctive relied would, if successful on the merits, provide "the same genre of relief" as vacatur of the Directives pursuant to the APA.  *See Hinojosa*, 896 F.3d at 310.  The fact that Anibowei has raised and then voluntarily dismissed these claims does not make this remedy inadequate.

-13-

*See Martinez*, 997 F.3d at 460.

## E

Because Anibowei has an adequate alternative remedy, his APA claim is not fit for judicial review. The court lacks subject matter jurisdiction over this claim and therefore grants defendants' motion to dismiss under Rule 12(b)(1).

## IV

Defendants also maintain that Anibowei has failed to state a claim on which relief can be granted. They posit that the Directives do not violate the Fourth or First Amendment under the law of this circuit. The court will consider defendants' Rule 12(b)(6) motion in the alternative.

## A

To state a claim for relief under Rule 12(b)(6), a complaint's allegations must, "when taken as true, state[] 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 570). The Fourth Amendment requires "that searches and seizures be reasonable[,]" and "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537-38 (1985). Historically, "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States vs. Flores-Montano*, 541 U.S. 149,

-14-

152-53 (2004) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

B

In the Fifth Circuit, the government does not need individualized suspicion to conduct a routine manual cell phone search at the border, and nonroutine searches require only reasonable suspicion. *See United States v. Castillo*, 70 F.4th 894, 898 (5th Cir. 2023); *Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 200 (5th Cir 2023). Anibowei "recognizes the binding force of *Castillo* and *Malik*" and that this court is bound by them. P. Resp. (ECF No. 127) at 15.[5] The 2018 CBP Directive requires reasonable suspicion or a national security concern for an advanced search of an electronic device. Ds. App. (ECF No. 125) at 15. Similarly, the 2018 ICE Guidance, which updates the requirements for advanced border searches of electronic devices, instructs agents not to perform advanced border searches of electronic devices without reasonable suspicion. *Id*. at 33-34. Accordingly, to plead a plausible claim for relief, Anibowei cannot rely on an allegation that the Directives' policies—which comply with this circuit's requirements for a border search of an electronic device to be reasonable—violate the Fourth Amendment.

---

[5]Anibowei cites *United States v. Sultanov*, 2024 WL 3520443, at *25 (E.D.N.Y. July 24, 2024), for the proposition that reasonableness under the Fourth Amendment should require probable cause and a warrant because of the First Amendment interests and considerations at stake with a search of electronic devices. Because binding Fifth Circuit precedent does not require a warrant and probable cause, and because *Sultanov* is not binding on this court, the court declines to follow *Sultanov*.

-15-

C

Anibowei also alleges that the Directives violate the First Amendment because individuals "are chilled from exercising their First Amendment rights of free speech and association, in knowing that their personal, confidential, and anonymous communications, and their expressive material, may be viewed and retained by government agents without any wrongdoing on their part." Compl. ¶ 123. Anibowei cites *United States v. Sultanov*, 2024 WL 3520443 (E.D.N.Y. July 24, 2024),[6] for the proposition that First Amendment considerations are relevant to the determination that a warrant and probable cause were required to search a cell phone at the border, and he cites *Zurcher v. Stanford Daily*, 436 U.S. 547 (1970), for the proposition that the warrant requirement should be administered carefully when "presumptively protected materials are sought to be seized[.]" *Zurcher*, 436 U.S. at 564. Neither of these cases, however, suggests that it is a standalone violation of the First Amendment to search a cell phone at the border without probable cause and a warrant. Instead, both cases consider First Amendment interests to determine what is reasonable under the Fourth Amendment in their respective contexts. In *Sultanov*, which is not binding on this court, the court referred to "First Amendment considerations" in determining that the Fourth Amendment required probable cause and a warrant to search a cell phone at the border. *Sultanov*, 2024 WL 3520443, at *24-25. Similarly, the Court in *Zurcher* noted that, outside of the border-search context, "prior cases do no more than insist that the courts apply the

_____

[6]*See supra* note 5.

warrant requirements with particular exactitude when First Amendment interests would be endangered by the search." *Zurcher*, 436 U.S. at 565. It did not, however, suggest that failure to do so would be a standalone violation of the First Amendment.

Absent any binding authority to the contrary, this court holds that a warrantless border search of an electronic device without probable cause does not violate the First Amendment merely because the device may contain expressive or associational content.

D

Because the Directives comply with Fifth Circuit law, Anibowei's allegations, taken as true, do not state a claim for relief that is plausible on its face. Accordingly, the court holds in the alternative that, assuming *arguendo* that it has jurisdiction over Count VI of Anibowei's second amended complaint, Count VI does not state a claim on which relief can be granted.

* * *

Because this court lacks subject matter jurisdiction over Anibowei's APA claim, and, alternatively, because Anibowei has failed to state a claim for which relief can be granted,

-17-

the court grants defendants' motion to dismiss Count VI of Anibowei's second amended

complaint.  The court dismisses this action without prejudice by judgment filed today.[7]

       **SO ORDERED**.

       November 22, 2024.


                                                    SIDNEY A. FITZWATER
                                                    SENIOR JUDGE

---

[7]This action is being dismissed without prejudice because the dismissal is for lack of subject matter jurisdiction.  The dismissal for failure to state a claim is in the alternative and assumes *arguendo* that the court has subject matter jurisdiction.

24-11042.1145

# TAB 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

GEORGE ANIBOWEI,

        *Plaintiff,*

  v.

KIRSTJEN M. NIELSEN, U.S. Secretary of Homeland
Security, in her official capacity; KEVIN K.
MCALEENAN, Commissioner of U.S. Customs and Bor-
der Protection, in his official capacity; RONALD D. VI-
TIELLO, Acting Director of U.S. Immigration and Cus-
toms Enforcement, in his official capacity; DAVID P.
PEKOSKE, Administrator of the Transportation Security
Administration, in his official capacity; WILLIAM P.
BARR, Attorney General of the United States, in his offi-
cial capacity; U.S. DEPARTMENT OF HOMELAND SE-
CURITY; U.S. CUSTOMS AND BORDER PROTEC-
TION; U.S. IMMIGRATION AND CUSTOMS EN-
FORCEMENT; TRANSPORTATION SECURITY AD-
MINISTRATION,

        *Defendants.*

Case No.  3:16-cv-03495-D

**VERIFIED SECOND AMENDED COMPLAINT**
**FOR VACATUR OF UNLAWFUL AGENCY POLICIES**
**AND DECLARATORY AND INJUNCTIVE RELIEF**

    1.    In *Riley v. California*, 573 U.S. 373 (2014), the Supreme Court unanimously held

that law enforcement must not search digital information on a cell phone without first obtaining a

warrant, except in narrow exigent circumstances.  The Justices based this holding on the unique

character of cell phones. *Id*. at 375. Nearly every person carries one, and nearly every cell phone

has a "digital record of nearly every aspect" of a person's life stored on it. The Supreme Court

thus held that warrants are required to search them, even in circumstances when government

agents have long been allowed to search a person's other effects for some other function (such as

a search incident to arrest) without a warrant or even suspicion.

2.     This case is *Riley* at the border. *Riley* says that only a warrant supported by prob-able cause can justify the search of a cell phone except in exigent circumstances. But policies promulgated by U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE), invoking the "border search exception," permit border agents to search cell phones without warrants, probable cause, or reasonable suspicion for no other reason than that an individual is seeking to cross an international border. Those same policies allow border agents to download (*i.e.*, seize) and store the information on a seized cell phone forever without a warrant or probable cause. Again, all for no other reason but that an individual has crossed an interna-tional border.

3.     In other words, according to CBP and ICE regulations, the government may re-quire a person to turn over a "digital record of nearly every aspect" of that person's life to gov-ernment agents, and the government may store it forever, for no other reason than because that person took a flight from Toronto to Dallas. The government could not search a person's house just because that person crossed the border. But "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house." *Riley*, <u>573 U.S. at 376</u>.

4.     CBP and ICE follow their policies. They perform tens of thousands of cell phone searches each year under their policies. CBP agents, relying on CBP and ICE directives and au-thority, have searched plaintiff George Anibowei's cell phone on at least five occasions. On one of those occasions, they downloaded all of the data off the phone and kept it. To the best of Mr. Anibowei's knowledge, they keep it to this day.

5.     The need to apply *Riley*'s warrant requirement at the border only grows. Lawyers use electronic devices to store interview notes and briefs for their clients. Journalists do the same with their records of conversations with whistleblowers and confidential sources. And everyday

24-11042.546

people use these devices to catalog their most sensitive and personal thoughts, conversations, and life events in extensive detail—from data about their health, to condolences on the loss of a loved one, to political rants emailed to friends, to gossip about other parents in the PTA, to intimate messages from a romantic partner.[1]

6.      A person does not give up the right to privacy and invite scrutiny of "nearly every aspect" of their lives simply by crossing the U.S. border. The average person reasonably believes that the communications and photographs sent, received, and stored on a phone are protected from arbitrary and suspicionless searches by the government—not just some of the time, not just in the Nation's interior, but all of the time. But every time a person enters or exits the United States with a phone or laptop, that person's devices come within the scope of CBP and ICE policies that give agents unilateral authority to search every piece of stored information—without a warrant, probable cause, or even a reasonable suspicion of any wrongdoing.

7.      CBP and ICE's arbitrary and suspicionless search policies violate the time-honored presumption of privacy in sensitive communications, intimate relationships, and confidential information. And they violate the First and Fourth Amendments to the Constitution.

---

[1]     A recent survey suggests that half of all adults had not just received a sext or explicit photo, but had actually *stored* sexts and explicit images that they receive. *Sext Much? If So, You're Not Alone*, Sci. Am., https://www.scientificamerican.com/article/sext-much-if-so-youre-not-alone; *see also* Emily C. Stasko & Pamela A. Geller, *Reframing Sexting as a Positive Relationship Behavior*, Am. Psych. Ass'n (Aug. 2015), https://www.apa.org/news/press/releases/2015/08/reframing-sexting.pdf.

## INTRODUCTION

8.      By early 2018, 95% of Americans owned a cell phone, and 77% of Americans owned a smartphone.[2] Approximately two-thirds of all people alive in the world today, counting every age group and country, also own a cell phone.[3]

9.      As the Supreme Court recognized in 2014, cell phones, and in particular today's smartphones, "place vast quantities of personal information literally in the hands of individuals." *Riley v. California*, 573 U.S. 373, 386 (2014). The nature of cell phones makes the search of a cell phone by law enforcement extraordinarily invasive and potentially humiliating. Thus, "[a]llowing the police to scrutinize such records on a routine basis is quite different from allowing them to search a personal item or two in the occasional case." *Id.* at 395.

10.     For this reason, when the Supreme Court has been called to weigh in on law enforcement searches and seizures of cell phones, it has uniformly held that the collection of data from cell phones requires the safeguard of a particularized warrant supported by probable cause. *See Riley*, 573 U.S. 373; *Carpenter v. United States*, 138 S. Ct. 2206, 2209 (2018) .

11.     Nonetheless, some relics of policy persist from the era before the Supreme Court decided its first cell-phone-search cases.

12.     In August 2009, U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE) issued a pair of directives that permitted officials of the two agencies to search "electronic devices"—defined as devices that "contain information, such as computers, disks, drives, tapes, mobile phones and other communication devices"—"[i]n the

---

[2]     *Mobile Fact Sheet*, Pew Research Center: Internet & Technology (Feb. 5, 2018), http://www.pewinternet.org/fact-sheet/mobile/.

[3]     Paul Sawers, *5 Billion People Now Have a Mobile Phone Connection, According to GSMA Data*, Venture Beat (June 13, 2017), https://venturebeat.com/2017/06/13/5-billion-people-now-have-a-mobile-phone-connection-according-to-gsma-data/.

24-11042.548

course of a border search, with or without individualized suspicion."[4] The directives specifically authorize CBP and ICE officials to conduct warrantless and suspicionless searches, including of privileged and sensitive information like "[l]egal materials," "medical records," and "work-related information carried by journalists."[5]

13.     CBP updated its policy in 2018 to add nominal safeguards, none of which cures the structural constitutional defects of the 2009 policy.  CBP's 2018 directive continues to authorize searches of electronic devices with zero individualized suspicion and without any protections for privileged and sensitive information.

14.     CBP and ICE's extraordinarily broad policies expose one million travelers a day to the threat of having their most sensitive information searched and seized without any sort of individualized suspicion.

15.     Among the untold number of people whose sensitive personal information has been swept up in this policy is plaintiff George Anibowei. Mr. Anibowei is a naturalized U.S. citizen born in Nigeria, and is the sole proprietor of his own law firm in Texas. Several times a year, he travels for work and personal reasons, including to see friends and relatives in Nigeria and other countries. Mr. Anibowei passed numerous and extensive security checks in the course of his journey from Nigerian immigrant to naturalized U.S. citizen. He also passed the additional

---

[4]     U.S. Customs and Border Protection, Border Search of Electronic Devices Containing Information, CBP Directive No. 3340-49 (Aug. 20, 2009), https://www.eff.org/document/customs-and-border-protection-directive-no-3340-049-border-search-electronic-devices; see also U.S. Immigration and Customs Enforcement, Border Searches of Electronic Devices, ICE Directive 7-6.1 (Aug. 18, 2009), https://www.dhs.gov/xlibrary/assets/ice_border_search_electronic_devices.pdf (containing nearly identical language).

[5]     CBP Directive No. 3340-049 (Aug. 20, 2009).

24-11042.549

security checks required for participation in CBP's Global Entry Trusted Traveler Program, and was issued membership in the program on November 1, 2012.

16.     Nonetheless, for reasons unknown to Mr. Anibowei and that the government will not share, on October 10, 2016, CBP officers at the Dallas-Fort Worth Airport seized Mr. Anibowei's cell phone, saying that they were going to "copy the hard drive." The officers did not ask Mr. Anibowei for his consent or present him with a search warrant.

17.     Mr. Anibowei has had his cell phone searched a total of at least five times by CBP agents, beginning with this first search and seizure in 2016. In four of these instances, Mr. Anibowei saw the agent search his text messages and other communications. Each of these searches was authorized by the 2009 ICE and CBP policies. Each of these searches would similarly be authorized by the 2018 CBP policy.

18.     As an attorney, Mr. Anibowei regularly uses his smartphone to engage in sensitive and confidential communications with his immigration clients. During these searches, it is virtually certain that CBP viewed and copied privileged communications between Mr. Anibowei and his clients. CBP's searches and seizures of Mr. Anibowei's privileged client communications, as well as other sensitive and private information on his phone, violate both his and his clients' expectations of privacy in their privileged communications.

19.     CBP's repeated searches and seizures of Mr. Anibowei's cell phone also have the potential to harm Mr. Anibowei's business. Given that some of Mr. Anibowei's clients are adverse to the U.S. Department of Homeland Security (DHS) in immigration proceedings, Mr. Anibowei's inability to safeguard their information from an agency of DHS threatens to damage the trust and confidence of his clients.

24-11042.550

20.    These warrantless and suspicionless searches of Mr. Anibowei's cell phone are "unreasonable searches and seizures" prohibited by the Fourth Amendment. The CBP and ICE policies authorizing warrantless and suspicionless searches of electronic devices facially violate the Fourth Amendment.

21.    Moreover, these warrantless and suspicionless searches violate the First Amendment rights of individuals entering and exiting the United States. The CBP and ICE policies expose individuals' sensitive, expressive, and associational information to arbitrary search by government agents. The ever-present possibility of warrantless and suspicionless search chills protected expression. This specter encourages individuals to leave their devices at home so that they cannot communicate at all, or to censor their speech if they do carry them.

22.    Every day that government agents keep Mr. Anibowei's data, the government holds in its possession the fruits of an unconstitutional search and seizure. The injury to Mr. Anibowei's constitutional rights wrought by the continued retention of this data continues to this day.

23.    Mr. Anibowei seeks a declaration that CBP's searches of his cell phone were unlawful, and an injunction requiring that the government destroy his data. He also seeks vacatur of CBP and ICE's unlawful policies.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because he challenges federal law and final agency action under the laws and Constitution of the United States.

25.    This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. § 2201 and § 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and its inherent equitable powers.

24-11042.551

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

27.     Plaintiff George Anibowei is a U.S. citizen licensed to practice law in the State of Texas since 2002. He resides at 934 Colorado Drive in Allen, TX.

28.     Defendant Kirstjen M. Nielsen is the Secretary of the U.S. Department of Homeland Security. She oversees DHS and its sub-agencies. She is sued in her official capacity.

29.     Defendant Kevin K. McAleenan is the Commissioner of U.S. Customs and Border Protection. He oversees CBP. He is sued in his official capacity.

30.     Defendant Ronald D. Vitiello is the Acting Director of U.S. Immigration and Customs Enforcement. He administers ICE. He is sued in his official capacity.

31.     Defendant David P. Pekoske is Administrator of the Transportation Security Administration (TSA). He administers TSA. He is sued in his official capacity.

32.     Defendant William P. Barr is Attorney General of the United States. He oversees the Department of Justice and its sub-agencies. He is sued in his official capacity.

33.     Defendant U.S. Department of Homeland Security (DHS) is a Department of the Executive Branch of the United States and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

34.     Defendant U.S. Customs and Border Protection (CBP) is a sub-agency of DHS. It is responsible for administering security checks at airports and other ports of entry.

35.     Defendant U.S. Immigration and Customs Enforcement (ICE) is a sub-agency of DHS. It plays a supporting role in administering security checks at airports and other ports of entry.

8

36.     Defendant Transportation Security Authority (TSA) is a sub-agency of DHS, housed within CBP. It has particular responsibility for administering security checks at airports.

## BACKGROUND

### A.     Searches and Seizures of Electronic Data

37.     Ninety-five percent of Americans and approximately two-thirds of all people in the world own a cell phone. These numbers are only projected to grow. By 2020, an estimated 80% of all adults in the world will own not just a cell phone but a smartphone, with all the enhanced storage capability this implies.

38.     These devices are capable of containing extraordinary amounts of information, far beyond any other object a traveler could possibly carry. Today's iPhones, for instance, are capable of storing up to 256 gigabytes of data[6]—enough to hold hundreds of thousands of emails, documents, or images. A typical laptop computer can store double that.[7]

39.     These devices not only store massive amounts of information, but also the most sensitive and personal information in a user's life. Electronic devices may store virtually all of an individual's communications—texts, voice mails, emails, and social-media posts—as well as detailed information on his location; his financial, legal, and medical history; his contacts; and his browsing and social-media history. Applications on the market today allow cell phone, tablet, and laptop users to store and analyze detailed information about such deeply personal topics as disease and pregnancy status, weight loss and physical fitness, income and credit history, and

---

[6]     *About Storage on Your Device and in iCloud*, Apple.com, https://support.apple.com/en-us/HT206504 (last visited Mar. 12, 2019).

[7]     *15-inch MacBook Pro*, Apple.com, https://www.apple.com/macbook-pro/specs/ (last visited Mar. 12, 2019).

9

24-11042.553

relationship status. Other applications could be used to build a detailed record of a person's sexual orientation and sexual history, political beliefs, and religious affiliation.

40.    The data on some electronic devices, in the aggregate, can be used to reconstruct virtually every aspect of a person's career, personal life, habits, beliefs, associations, and daily routines. Indeed, the explosive implications of these devices for personal privacy have become so alarming that they have spurred a national debate over technology, privacy, and the power of businesses—like Facebook and Google—that hold or can access personal data generated or stored on electronic devices.[8] The intensity of users' fears clearly demonstrates an emerging societal consensus that an expectation of privacy in these devices is "one that society is prepared to recognize as reasonable"—indeed, as essential. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979).

41.    As the Supreme Court has noted, "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house"—historically the piece of property that the Constitution has protected most. *See Riley*, 573 U.S. at 397. The Supreme Court has duly recognized that electronic devices are in a category apart for Fourth Amendment purposes given their extraordinary privacy implications.

42.    Electronic devices not only hold our deepest secrets; they are practically extensions of our bodies, traveling with us everywhere we go. Many people would not be able to retain a job, receive help in an emergency, or maintain their personal relationships without the help

---

[8]    *See, e.g.*, Steve Shillingford, *Facebook, Twitter, and Google Have Too Much Power—We Can't Just Legislate Ourselves Out of This Mess*, Fox News (Sept. 5, 2018), https://www.foxnews.com/opinion/facebook-twitter-and-google-have-too-much-power-we-cant-just-legislate-ourselves-out-of-this-mess;  John Herrman, *Have the Tech Giants Grown Too Powerful? That's an Easy One*, N.Y. Times (July 11, 2018), https://www.nytimes.com/2018/07/11/magazine/facebook-google-uber-tech-giants-power.html.

24-11042.554

of a cell phone, laptop, tablet, or in many cases all three. Many workers use their electronic de-

vices daily to receive and respond to sensitive and pressing business communications. For most

people, it is not an option to leave their electronic devices at home, including when they travel.

43.    Every day, many of the 95% of Americans who own a cell phone enter and leave

the United States, as do many thousands of foreign nationals. In 2017, CBP processed an average

of over 1.1 million people per day coming into and leaving the United States by land, air, and

sea.[9] Approximately half of these people are U.S. citizens.

44.    Extrapolating from these figures, we can conservatively estimate that in a 24-hour

period, approximately 885,000 cell phones enter or leave the United States at a port of entry.

522,500 of these cell phones belong to U.S. citizens.[10]

45.    These travelers also carry thousands of other electronic devices across the border

daily.

46.    In great part due to the extraordinary capabilities of these devices, the Supreme

Court affords far greater protection to cell phones and other electronic devices than to other ob-

jects subject to search, as explained in detail below. CBP and ICE nevertheless subject these

most sensitive implements to extensive warrantless and suspicionless searches.

**B.    CBP and ICE Policies**

47.    On August 18, 2009, ICE issued an extraordinarily broad policy functionally

permitting its border agents to conduct searches of all "electronic devices" in the possession of

travelers into and out of the United States. *See* ICE Directive 7-6.1 (Aug. 18, 2009).

---

[9]    *On a Typical Day in Fiscal Year 2018, CBP…*, U.S. Customs and Border Protection (March 7, 2019), https://www.cbp.gov/newsroom/stats/typical-day-fy2018.

[10]    This estimate is conservative because people who travel internationally may be more likely than the general population to own a cell phone.

24-11042.555

48.     Two days later, on August 20, 2009, CBP issued a nearly identical directive. *See* CBP Directive No. 3340-049 (Aug. 20, 2009).

49.     The majority of agents at ports of entry work for CBP, while ICE agents provide supplemental help in some cases.

50.     The 2009 policies permitted CBP and ICE agents conducting border searches, "without individualized suspicion," to "examine electronic devices"; to "review and analyze the information" encountered during the course of the search; and to retain devices and data indefinitely. CBP Directive No. 3340-049, §§ 5.1.2, 5.3.1.

51.     Under the agencies' 2009 policies, agents may confiscate devices from travelers for a "thorough" search, either on-site or off-site, without individualized suspicion. *See id.* § 5.3.1; ICE Directive 7-6.1, §§ 6.1, 8.1.4. While CBP confiscations presumptively last no more than five days, CBP supervisors may extend this period based on undefined "extenuating circumstances." CBP Directive No. 3340-049, §§ 5.3.1, 5.3.1.1. Confiscations by ICE can last up to 30 days without supervisor approval, and can be extended under "circumstances … that warrant more time." ICE Directive 7-6.1, § 8.3.1.

52.     The 2009 policies instruct the agencies to delete data only "if, after reviewing information … there is not probable cause to seize it." CBP Directive No. 3340-049, § 5.3.1.2. As a result, agents may permanently detain an electronic device and its data without a warrant. And the probable cause necessary to permanently detain devices or information can be generated through the initial searches and seizures performed without any individualized suspicion.

53.     On January 4, 2018, CBP issued a directive superseding its 2009 directive. *See* CBP Directive No. 3340-049A (Jan. 4, 2018) (the "2018 Policy").

12

54.    While CBP's 2018 Policy supersedes its 2009 Policy, ICE has not issued a comparable new policy. Under ICE's 2009 Directive, ICE agents are currently authorized to search electronic devices and to review, analyze, and copy their contents without any individualized suspicion.

55.    CBP's 2018 Policy covers "[a]ny device that may contain information in an electronic or digital form, such as computers, tablets, disks, drives, tapes, mobile phones and other communication devices, cameras, music and other media players." § 3.2.

56.    The 2018 Policy opens up this entire category to two types of searches—"basic" and "advanced"—neither of which must be supported by a particularized warrant or even by probable cause. §§ 5.1.3, 5.1.4.

57.    A "basic search" is by no means "basic"; it is highly intrusive and allows officers to access all content and communications stored on the device. An agent conducting a basic search "may examine an electronic device and may review and analyze information encountered at the border." § 5.1.3. The 2018 Policy authorizes an agent to perform a "basic search" without any individualized suspicion. *Id.*

58.    An "advanced search" allows for the connection of "external equipment, through a wired or wireless connection, to an electronic device not merely to gain access to the device, but to review, copy, and/or analyze its contents." § 5.1.4.  The 2018 Policy authorizes an agent to perform an "advanced search" if he has either "reasonable suspicion of activity in violation of the laws enforced or administered by CBP" or where "there is a national security concern." § 5.1.4.

59.    The 2018 Policy makes no effort to cabin its vague and capacious terms "reasonable suspicion" or "national security concern."  The Policy explains that "[m]any factors may

13

create reasonable suspicion or constitute a national security concern; examples include the existence of a relevant national-security-related lookout in combination with other articulable factors as appropriate, or the presence of an individual on a government-operated and government-vetted terrorist watch list." § 5.1.4.

60.     Moreover, the 2018 Policy does not require that "reasonable suspicion" be in any way related to the electronic device or its data. Rather, the 2018 Policy authorizes agents to review, copy, and analyze the content of an electronic device based only on suspicion that the owner of the device is violating CBP-administered laws, regardless of whether the agents reasonably suspect that the device or its data contain evidence of such a violation.

61.     The 2018 Policy adds insult to injury by demanding that individuals facilitate these unlawful searches and seizures. Individuals must "present electronic devices and the information contained therein in a condition that allows inspection." This means that officers may require individuals to unlock or decrypt their devices or information and can "request[] and retain" "[p]asscodes or other means of access … as needed to facilitate the examination of an electronic device or [its] information." § 5.3.1.

62.     While the 2018 Policy recommends that agents obtain supervisor approval before conducting a search, officers need only obtain such approval if it is "practicable." § 5.1.5. Similarly, while the 2018 Policy advises that "[s]earches of electronic devices should be conducted in the presence of the individual whose information is being examined," it permits agents to search devices outside their owners' presence if there are "national security, law enforcement, officer safety, or other operational considerations that make [owner presence] inappropriate." § 5.1.6.

63.     Perhaps the most extraordinary part of the 2018 Policy relates to the detention of electronic devices and copying of their information. The policy gives officers power, absent any

14

individualized suspicion, to detain electronic devices and information copied from them "for a brief, reasonable period of time to perform a thorough border search." This period "ordinarily should not exceed five (5) days" but can be extended for undefined "extenuating circumstances." § 5.4.1. Detention can continue even after the individual has departed from the port of entry. § 5.4.1.1.

64.    The 2018 Policy provides that electronic devices will be returned and data will be deleted only "if, after reviewing information, there exists no probable cause to seize the device or information." § 5.4.1.2. As a result, agents may permanently detain an electronic device and its data without a warrant. And the probable cause necessary to permanently detain devices or information can be generated through the initial searches and seizures performed without any individualized suspicion, absent any review from a neutral magistrate.

65.    Agents are authorized to retain "information relating to immigration, customs, and other enforcement matters if such retention is consistent with the applicable system of record notice," even absent any individualized suspicion. § 5.5.1.2.

66.    Without individualized suspicion, the officer is authorized to transfer electronic devices and information thereon to other government agencies for a variety of purposes.

67.    For example, without individualized suspicion, "[o]fficers may convey electronic devices or copies of information contained therein to seek technical assistance" so as to allow access to the device or its information. § 5.4.2.1. Officers may also convey devices or information to "subject matter experts" in other federal agencies "when there is a national security concern or … reasonable suspicion." § 5.4.2.2.

68.    Individuals need not be notified when their devices or information are transmitted to other agencies. § 5.4.2.5.

15

69.     The 2018 Policy also provides inadequate guidance on how officers should handle privileged and sensitive material. It contemplates that officers may "encounter[] information they identify as, or that is asserted to be, protected by attorney-client privilege or attorney work product doctrine." § 5.2.1. But the Policy provides no meaningful direction on how officers should handle that information. Rather, the Policy vaguely instructs officers to "ensure the segregation of any privileged material" so that it is "handled appropriately while also ensuring that CBP accomplishes its critical border security mission." § 5.2.1.2.

70.     The 2018 Policy's guidance on "[o]ther possibly sensitive information" is even vaguer. "[M]edical records and work-related information carried by journalists … shall be handled in accordance with any applicable federal law and CBP policy." § 5.2.2. Business or commercial information shall be "protect[ed] from unauthorized disclosure." § 5.2.3.

71.     The 2018 Policy contemplates that privileged or sensitive information may be shared with other federal agencies so long as those agencies "have mechanisms in place to protect appropriately such information." § 5.2.4.

72.     The 2018 CBP Policy and 2009 ICE Policy essentially make the 885,000 cell phones that transit into and out of the United States every single day fair game for a warrantless and suspicionless search and seizure, alongside untold numbers of other devices containing sensitive information, like laptops.

73.     These agency policies also promise to cause extraordinary inconvenience to travelers by authorizing detention of an electronic device for multiple days. For the many international travelers who do not intend to remain near their port of entry following admission to the United States, the policies constitute an extraordinary burden. And the burden is even greater for travelers whose electronics are detained as they are leaving the United States. These travelers are

16

given a choice of evils: abandoning their devices, with all of their personal information, to ICE and CBP; or losing up to thousands of dollars and many days of their time in order to reschedule their travel until their electronics clear inspection. Even burdening a million travelers a day with the *possibility* that they will be forced to endure these inconveniences to permit a warrantless and suspicionless search is an extraordinary intrusion on the liberty of citizens and visitors alike.

### C.    The Law of Electronic-Device Searches

74.    CBP and ICE's electronic search policies are not only breathtakingly broad. They fly directly in the face of Supreme Court jurisprudence on protection for cell phones and other electronic devices and digital records and communications.

75.    In *Riley v. California*, 573 U.S. 373 (2014), the Supreme Court recognized that the extraordinary powers and capabilities of cell phones place them in a class apart from other objects, requiring particularly robust Fourth Amendment protection. The *Riley* court unanimously held that law enforcement must not search digital information on a cell phone without first obtaining a warrant, except in a very narrow set of exigent circumstances.

76.    Tellingly, all of the Justices based this holding on the unique characteristics of cell phones. Cell phones, the Court noted, are "now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id.* at 385. Applying a traditional balancing assessment for warrant requirements, the Court concluded that the intrusion on privacy interests in a warrantless cell phone search far outweighs the government interest supporting it. *Id.* at 385-86. The Court noted that the only legitimate interest in a warrantless search—avoiding the remote deletion of evidence—was a relatively unlikely and weak one in most cases. *Id.* at 388-90. On the other hand, the Court recognized that allowing warrantless cell phone searches implicated stark and troubling privacy concerns. Noting the "immense storage capacity" of cell phones, the Court enumerated four distinct

ways that cell phones, among all objects law enforcement might search, have unique privacy implications: they collect "many distinct types of information … that reveal much more in combination than any isolated record"; they collect more of each individual type of information than previously possible; they collect this information over massive amounts of time, months or even years; and they are so pervasive in society that they function as a "digital record of nearly every aspect" of most Americans' lives, including their most personal information. *Id.* at 393-95. Taking these unique capacities together, the Supreme Court held that the balance of equities clearly favored requiring a warrant.

77.     Similarly, courts have again and again found that people have a reasonable expectation of privacy in their computers and in folders and documents on their computers. *See United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) (finding reasonable expectation of privacy in the contents of a person's cell phone and noting that "a cell phone is similar to a personal computer that is carried on one's person"); *see also, e.g.*, *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007); *United States v. Buckner*, 473 F.3d 551, 554 n.2 (4th Cir. 2007).

78.     And, expectations of privacy aside, the Supreme Court has zealously guarded against "government trespass upon the areas ('persons, houses, papers, and effects')" that the Fourth Amendment enumerates. *United States v. Jones*, 565 U.S. 400, 406-07 (2012); *see also United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016) (Gorsuch, J.).

79.     Even some of the individual *functions* of cell phones and smartphones receive heightened constitutional protection. The Supreme Court recently held that law enforcement must secure a warrant to view data generated by the location-tracking functions of phones and other electronic devices. *Carpenter*, 138 S. Ct. at 2232-33. Several circuits have held that law enforcement officials may not access an individual's emails without a warrant; email is an essen-

tial function of virtually every smartphone. *See, e.g., United States v. Warshak*, <u>631 F.3d 266,
288-89</u> (6th Cir. 2010). In other words, courts have overwhelmingly found that searches of
phones, laptops, similar devices, and even some of their component functions require a warrant.

80.     Nor are the courts particularly burdening law enforcement by requiring warrants.
If technology has opened up vast troves of sensitive information to inspection by government
agencies, it has also made it exceptionally easy for these agencies to secure a warrant with mini-
mal effort and delay. As the Supreme Court noted in *Riley*, in one jurisdiction, "police officers
can e-mail warrant requests' to judges' iPads [and] judges have signed such warrants and
emailed them back to officers in less than 15 minutes." <u>573 U.S. at 401</u>. Such a practice is not
rare: the Supreme Court has previously noted that the Federal Rules of Criminal Procedure have
permitted telephonic warrants since 1977. *Missouri v. McNeely*, <u>569 U.S. 141, 154</u> (2013). Law
enforcement officials can secure a warrant quickly by a variety of means, including "telephonic
or radio communication, electronic communication such as e-mail, and video conferencing." *Id*.
The hurdle of securing a warrant is not high.

## FACTUAL ALLEGATIONS

A.     **Mr. Anibowei Begins Receiving Intense Scrutiny at the Airport, and Is Re-
moved Without Notice from CBP's Global Entry Trusted Traveler Program**

81.     Plaintiff George Anibowei was born in Port Harcourt, Rivers State, Nigeria and is
originally from Agbere, Bayelsa State, in the Niger Delta region of Nigeria. Mr. Anibowei fled
Nigeria in 1997 after his work as a pro-democracy activist put him in danger of retaliation by
Nigeria's military dictatorship, then led by General Sani Abacha.

82.     Seeking a life with more freedoms and civil liberties, Mr. Anibowei applied for
and received asylum in the United States in 1998. He became a naturalized U.S. citizen in 2007.

83.    A lawyer by profession in Nigeria, Mr. Anibowei completed a master's degree and Juris Doctor degree at Southern Methodist University Law School in Dallas. He is admitted to practice law before all courts in the State of Texas, the U.S. District Court for the Northern District of Texas, the U.S. Court of Appeals for the Fifth Circuit, and the U.S. Supreme Court. Originally drawn to Texas because one of his brothers lived there, he has settled in the Dallas suburbs and operates his own small legal practice, primarily representing immigrants.

84.    To become a naturalized U.S. citizen in the years following the September 11th attacks, Mr. Anibowei had to pass an extensive security check.[11] The requirements for this background check are rigorous. All applicants must undergo fingerprinting, which the FBI then uses to run a full criminal background check. The FBI also conducts a "name check," which includes a search against a database that contains not only criminal files but also personnel, administrative, and applicant files. In addition to these FBI background checks, most applicants also go through additional inter-agency background checks coordinated by U.S. Citizenship and Immigration Services.

85.    Mr. Anibowei is a frequent traveler. He typically travels to Nigeria several times a year to visit his brothers and sisters who still live there, as well as his extended family and friends. He is also a frequent tourist in Europe, the Caribbean, and other African countries.

86.    In order to facilitate his travel, Mr. Anibowei applied for and eventually received membership in CBP's Global Entry Trusted Traveler Program, beginning on November 1, 2012. The Trusted Traveler Program requires applicants to pass another layer of extremely thorough security checks in order to receive membership. Successful applicants must pass a background

---

[11] *See USCIS Policy Manual: Chapter 2—Background and Security Checks*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume12-PartB-Chapter2.html (Feb. 12, 2019).

24-11042.564

check against criminal, law enforcement, customs, immigration, agriculture, and terrorist indices, a process that includes fingerprinting.[12] Successful applicants also pass an in-person interview with a security officer.

87.      In 2014, Mr. Anibowei took a leave of absence from his law practice to return to Nigeria in order to participate in a national constitutional conference called by the country's now democratically elected government. The convention, known as the 2014 Nigerian National Conference, brought together 492 distinguished delegates from Nigeria and the Nigerian Diaspora to debate structural problems with the country's constitution and propose reforms directly to the immediate past President, Goodluck Jonathan. Attendees at the conference included retired governors and ministers in the Nigerian Government and prominent Nigerian politicians and lawyers. Concerns at the conference included power-sharing among different states and the federal government and states' ability to profit off their own natural resources—a particular concern of states in the oil-rich Niger Delta, where Mr. Anibowei is from.

88.      Mr. Anibowei spent much of his five months in Nigeria as one of the National Assembly's 492 delegates, while a colleague shouldered the matters pending at his solo practice. On breaks in the Assembly, he returned to Texas to check on his law office.

89.      To the best of Mr. Anibowei's recollection, it was around the time of the Nigerian National Conference that TSA began to subject Mr. Anibowei to additional screening virtually every time he entered or left the United States, even as a member of the Trusted Traveler Program. Initially, this mainly consisted of putting Mr. Anibowei into secondary screening on his way to and from Nigeria to ask him about the purpose and length of his trip.

---

[12] *Is Criminal History a Disqualifier for Global Entry?* U.S. Customs and Border Protection (Aug. 2, 2017), https://help.cbp.gov/app/answers/detail/a_id/1309/~/is-criminal-history-a-disqualifier-for-global-entry%3F.

90.    Mr. Anibowei believes he was initially flagged for routine additional screening because he was spending a long period of time in Nigeria and frequently traveling back to the United States.

91.    TSA and CBP continued to question and detain Mr. Anibowei virtually every time he traveled internationally, and the screening of Mr. Anibowei gradually grew more intense. In spring of 2014, Mr. Anibowei was traveling with his son, who shares his name, from Houston, Texas to Lagos, Nigeria, when Mr. Anibowei's then-teenage son was taken aside by seven uniformed officers. The officers soon realized they were looking for Mr. Anibowei rather than his son. Subsequently, five officers took Mr. Anibowei into a small room for interrogation, inviting his son in too against the wishes of Mr. Anibowei. As a result, Mr. Anibowei's son witnessed his father's interrogation, a situation his father found humiliating.

92.    The officers detained and questioned Mr. Anibowei for approximately two hours, resulting in his flight being delayed for that period. Mr. Anibowei did not realize that he was the reason for the flight delay until a manager from United Airlines walked into the interrogation room and asked one of the officers whether they could begin boarding the flight. The officer responded that the manager could proceed because they were almost done questioning Mr. Anibowei.

93.    This treatment continued after the Nigerian National Conference had ended. In another incident from that period, Mr. Anibowei was stranded in Toronto for two days after the Canadian Border Services Agency subjected him to a five-hour interrogation at the request of CBP, causing him to miss his flight.

94.    On May 12, 2015, when returning from another international trip, Mr. Anibowei learned that, for reasons unknown to him, his membership in the Global Entry Trusted Traveler

24-11042.566

Program had been revoked on March 7, 2015. Mr. Anibowei received no notice of this develop-
ment until he attempted to reenter the United States using a Global Entry kiosk at the airport only
to be pulled once again into secondary inspection. In secondary inspection, the CBP agent told
Mr. Anibowei that his Global Entry status had been revoked. CBP never sent Mr. Anibowei a
letter notifying him of the change. Mr. Anibowei ultimately was able to download the revocation
letter from his account on the Global Online Enrollment System, a website managed by CBP.

95.     Mr. Anibowei has since made numerous and apparently unavailing efforts to ap-
peal this decision. Mr. Anibowei first requested reconsideration of his application for the Trusted
Traveler Program from CBP. In a response from the CBP Ombudsman dated March 11, 2016,
the Ombudsman acknowledged receipt of Mr. Anibowei's request but reiterated, using the same
language as the revocation letter, that Mr. Anibowei "d[id] not meet the eligibility requirements
for the Trusted Traveler program."

96.     Mr. Anibowei also filed a Redress Request (#2232471) with CBP on DHS's
Traveler Redress Inquiry Program (TRIP) Website. In response to this Redress Request, Mr. An-
ibowei received a letter dated June 30, 2016 from Deborah O. Moore, the Director of TRIP. The
letter stated:

> DHS has researched and completed our review of your case. Security Procedures
> and legal concerns mandate that we can neither confirm nor deny any information
> about you which may be within federal watch lists or reveal any law enforcement
> sensitive information. However, we have made any corrections to records that our
> inquiries determined were necessary, including, as appropriate, notations that may
> assist in avoiding incidents of misidentification.

**B.      Mr. Anibowei's Cell Phone Is Copied by CBP, and Subjected to a Search on
No Fewer Than Five Occasions**

97.     At this point, Mr. Anibowei had simply accepted that he would be stopped and
screened, sometimes for hours, any time he tried to leave or enter the United States. Trying to

24-11042.567

adjust to this new reality, he mentally prepared (and still does) to be pulled into secondary inter-rogation on every trip. On occasions when another person intends to pick Mr. Anibowei up at the Dallas-Fort Worth Airport, he tells them to come two or three hours after his scheduled flight arrival time because he knows he will be put into inspection.

98.     On October 10, 2016, Mr. Anibowei was returning to the Dallas area after a weekend spent visiting his best friend in Toronto. Upon landing in Dallas, the pilot announced that the passengers—who had begun to collect their luggage in preparation to exit the plane—should return to their assigned seats, because security had arrived at the gate to escort a passen-ger off.

99.     Mr. Anibowei, who had slept through the flight, assumed that the announcement had to do with an unruly passenger. He was consequently surprised when a pair of agents board-ed the flight, asked to see his identification, and told him to take his luggage and follow them. The officers subsequently escorted Mr. Anibowei off the plane and through three terminals at the airport, to his great humiliation and distress.

100.     The officers eventually brought Mr. Anibowei to a small interrogation room, where they asked him for his phone. When Mr. Anibowei asked them why they wanted to see it, the agents told him that they planned to "copy the hard drive," taking his phone out of the room.

101.     When Mr. Anibowei vigorously protested this action, the officers handed him a flyer explaining their legal authority, under the 2009 CBP Directive, to undertake the search and seizure.

102.     The officers returned Mr. Anibowei's phone to him about thirty minutes after they seized it.

103.    The phone the officers seized was Mr. Anibowei's work cell phone. As an attorney, Mr. Anibowei takes his work phone with him virtually everywhere, in order to be accessible for time-sensitive matters or in a client emergency, and he estimates that approximately 80 percent of his clients prefer to call him on his cell phone. Mr. Anibowei's phone contains extremely sensitive information about his clients and their cases, including call logs, voice mails, text message threads with clients, and perhaps worst of all an archive of Mr. Anibowei's work emails, which in turn contains drafts of confidential filings among other information.

104.    This seizure was particularly distressing to Mr. Anibowei because a significant number of his clients are immigrants in removal proceedings adverse to DHS. The seizure and copying of Mr. Anibowei's phone by an agency of DHS was a gross violation of these clients' expectation of privacy in their privileged legal communications with their attorney, committed by the adverse party in those clients' cases.

105.    This was the last time Mr. Anibowei carried his work phone with him on an international trip. But the damage was already done. To this day, Mr. Anibowei has no idea why the agency copied data from his cell phone and for what purpose, if any, it has used the data. He believes that, to this day, the agency never destroyed the data and continues to retain them.

106.    Furthermore, Mr. Anibowei's decision to stop carrying his work phone was not a complete solution. Mr. Anibowei's work emails are also accessible on his personal phone. However, to stop carrying his personal phone would render Mr. Anibowei completely inaccessible in either a personal or work emergency.

107.    Since the October 16, 2016 incident, Mr. Anibowei's phone has been searched a minimum of four additional times by officers of DHS.

24-11042.569

108.     An incident on February 12, 2017 was typical. Mr. Anibowei was returning from a visit to his friends and relatives in Nigeria, and was put into secondary inspection on returning to the Dallas-Fort Worth Airport. In secondary inspection, TSA agents performed an extremely thorough search of all of Mr. Anibowei's luggage and asked to see his phone. A TSA agent then performed an extensive search of Mr. Anibowei's phone in front of him. Mr. Anibowei believes that the officer viewed his text messages, as well as encrypted messages he sent and received through WhatsApp (a texting application very popular globally). Because Mr. Anibowei's email is not password protected on his phone, it is possible the officer viewed Mr. Anibowei's email, too.

109.     There is an extraordinary irony to Mr. Anibowei's case. Mr. Anibowei came to the United States seeking freedom. He makes a living helping other people who wish to enjoy this country's freedoms. While Mr. Anibowei is not certain, he believes that the catalyst for CBP's increased interest in him was his frequent travel overseas. And, since 2016, that travel has resulted in scrutiny of every aspect of his personal and professional life, via CBP's free and un-inhibited access to all of the data on his phone.

110.     Mr. Anibowei fears grave injury to his reputation and his business as a result of CBP and ICE's search and copying of his phone. Mr. Anibowei fears that if his clients knew or believed that CBP had copied their data from Mr. Anibowei's phone, it would diminish their trust and confidence in him as an attorney.

111.     CBP and ICE's illegal electronics search and seizure policies have worked a grave injury to Mr. Anibowei's First and Fourth Amendment rights.

112.     Mr. Anibowei intends to continue traveling internationally to visit his family in Nigeria and for pleasure.

24-11042.570

113.    Based on his experiences recounted above, Mr. Anibowei reasonably believes that Defendants will continue to violate his First and Fourth Amendment rights when he travels internationally in the future.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

114.    Defendants adopted the policies and practices discussed above related to searching and seizing electronic devices at the border.

115.    The frequency with which border officials enforce these policies and practices against travelers is rapidly growing.

116.    Mr. Anibowei has traveled across the U.S. border with his cell phone multiple times.

117.    Mr. Anibowei has a credible fear that his cell phone will be searched again.

118.    Mr. Anibowei is suffering the ongoing harm of the confiscation of the information on his cell phone.

119.    Mr. Anibowei's phone is private personal property that agents have taken without his consent.

120.    Mr. Anibowei has a reasonable expectation of privacy in the content on his cell phone, in the content he stores in the cloud that is accessible through his cell phone, in his device passwords, and in the information he holds as an information fiduciary on behalf of other people.

121.    Mr. Anibowei uses his cell phone to communicate, associate, and gather and receive information privately and anonymously.

122.    Mr. Anibowei uses his cell phone to store sensitive attorney work product and confidential information on behalf of his clients, some of whom are immigrants adverse to Defendants.

123.    Mr. Anibowei, and the many other travelers who cross the United States border every year with electronic devices, are chilled from exercising their First Amendment rights of free speech and association, in knowing that their personal, confidential, and anonymous communications, and their expressive material, may be viewed and retained by government agents without any wrongdoing on their part.

124.    Mr. Anibowei feels confused, embarrassed, upset, violated, and anxious about the search and copying of his cell phone. He worries that government agents have viewed personal information taken from his phone, including photos and messages, and shared it with other government agencies. He worries about his own personal information, and also personal information from and about other people, including friends, family, clients, and professional associates.

125.    Defendants have directly performed, or aided, abetted, commanded, encouraged, willfully caused, participated in, enabled, contributed to, or conspired in the device searches, device confiscations, policies, and practices alleged above, by promulgating or causing to be promulgated the ICE and CBP policies permitting the search of Mr. Anibowei's phone, and by directing agents to enforce those policies.

126.    By the acts alleged above, Defendants have proximately caused harm to Mr. Anibowei.

127.    Defendants' conduct was done intentionally, with deliberate indifference, or with reckless disregard of Mr. Anibowei's constitutional rights.

128.    Defendants will continue to violate Mr. Anibowei's constitutional rights unless enjoined from doing so by this Court.

## CLAIMS FOR RELIEF

### COUNT I
### FIRST AMENDMENT

129.    Plaintiff re-alleges each and every allegation in paragraphs 1-128 above as if fully set forth herein.

130.    Defendants violate the First Amendment by searching and seizing individuals' devices and communications containing expressive content, associational information, and privileged information, *absent a warrant supported by probable cause* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

131.    Defendants violate the First Amendment by searching and seizing individuals' devices and communications containing expressive content, associational information, and privileged information, *absent probable cause* to believe that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

132.    Defendants violate the First Amendment by searching and seizing individuals' devices and communications containing expressive content, associational information, and privileged information, *absent reasonable suspicion* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

133.    Defendants have violated and will continue to violate Mr. Anibowei's First Amendment rights by searching and seizing his devices and communications containing expressive content, associational information, and privileged information, absent a warrant, probable cause, or a reasonable suspicion that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

29

24-11042.573

## COUNT II
## FOURTH AMENDMENT
### (Unlawful Search of Electronic Devices)

134.    Plaintiff re-alleges each and every allegation in paragraphs 1-128 above as if fully set forth herein.

135.    Defendants violate the Fourth Amendment by searching travelers' electronic devices, *absent a warrant supported by probable cause* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

136.    Defendants violate the Fourth Amendment by searching individuals' devices and communications containing expressive content, associational information, and privileged information, *absent probable cause* to believe that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

137.    Defendants violate the Fourth Amendment by searching individuals' devices and communications containing expressive content, associational information, and privileged information, *absent reasonable suspicion* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

138.    Defendants' searches are unreasonable at their inception, and in their scope, duration, and intrusiveness.

139.    Defendants have violated and will continue to violate the Fourth Amendment by searching Mr. Anibowei's electronic devices, absent a warrant, probable cause, or a reasonable suspicion that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

140.    Defendants' searches of Mr. Anibowei's electronic devices are unreasonable at their inception, and in their scope, duration, and intrusiveness.

24-11042.574

## COUNT III
## FOURTH AMENDMENT
### (Unlawful Search of Communications)

141.    Plaintiff re-alleges each and every allegation in paragraphs 1-128 above as if fully set forth herein.

142.    Defendants violate the Fourth Amendment by searching individuals' emails, text messages, and other private communications, *absent a warrant supported by probable cause* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

143.    Defendants violate the Fourth Amendment by searching individuals' devices and communications containing expressive content, associational information, and privileged information, *absent probable cause* to believe that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

144.    Defendants violate the Fourth Amendment by searching individuals' devices and communications containing expressive content, associational information, and privileged information, *absent reasonable suspicion* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

145.    Defendants' searches are unreasonable at their inception, and in scope, duration, and intrusiveness.

146.    Defendants have violated and will continue to violate the Fourth Amendment by searching Mr. Anibowei's electronic devices, absent a warrant, probable cause, or a reasonable suspicion that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

147.    Defendants' searches of Mr. Anibowei's electronic devices are unreasonable at their inception, and in their scope, duration, and intrusiveness.

31

## COUNT IV
## FOURTH AMENDMENT
### (Unlawful Seizure of Devices)

148.    Plaintiff re-alleges each and every allegation in paragraphs 1-128 above as if fully set forth herein.

149.    Defendants violate the Fourth Amendment by seizing individuals' electronic devices for the purpose of effectuating searches of those devices after individuals leave the border, *absent a warrant, probable cause, or reasonable suspicion* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

150.    These seizures are unreasonable at their inception, and in scope, duration, and intrusiveness.

151.    Defendants have violated and will continue to violate the Fourth Amendment by seizing Mr. Anibowei's electronic devices for the purpose of effectuating searches of those devices after he leaves the border, absent a warrant, probable cause, or reasonable suspicion that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

152.    Defendants' seizures of Mr. Anibowei's electronic devices are unreasonable at their inception, and in their scope, duration, and intrusiveness.

## COUNT V
## FOURTH AMENDMENT
### (Unlawful Seizure of Data)

153.    Plaintiff re-alleges each and every allegation in paragraphs 1-128 above as if fully set forth herein.

154.    Defendants violate the Fourth Amendment by seizing individuals' data and retaining that data, often after individuals leave the border, *absent a warrant, probable cause, or rea-*

32

*sonable suspicion* that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

155.    These seizures are unreasonable at their inception, and in their scope, duration, and intrusiveness.

156.    Defendants have violated and will continue to violate the Fourth Amendment by seizing Mr. Anibowei's data and retaining that data, after he leaves the border, absent a warrant, probable cause, or reasonable suspicion that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws.

## COUNT VI
## ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706
### (Agency Policies)

157.    Plaintiff re-alleges each and every allegation in paragraphs 1-128 above as if fully set forth herein.

158.    Each of the 2018 CBP Directive, the 2009 CBP Directive, and the 2009 ICE Directive (collectively, the "Agency Policies") is a "final agency action" subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 704.

159.    The Agency Policies permit agents to conduct searches that violate the First and Fourth Amendments. The Agency Policies therefore violate the Administrative Procedure Act because they are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

160.    The Agency Policies further violate the Administrative Procedure Act because they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

24-11042.577

## COUNT VII
## ADMINISTRATIVE PROCEDURE ACT, <u>5 U.S.C. § 706</u>
### (Global Entry)

161.    Plaintiff re-alleges each and every allegation in paragraphs 1-128 above as if fully set forth herein.

162.    Defendants' removal of Plaintiff from the Global Entry Trusted Traveler Program is a "final agency action" subject to judicial review under the Administrative Procedure Act, <u>5 U.S.C. § 704</u>.

163.    Plaintiff has exhausted all of his administrative remedies and any further pursuit of administrative relief would be futile.

164.    Defendants' removal of Plaintiff from the Global Entry Trusted Traveler Program violated the Administrative Procedure Act because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." <u>5 U.S.C. § 706(2)(A)</u>.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for the following relief as to all counts:

a.    Declare that Defendants' policies and practices violate the First and Fourth Amendments by authorizing searches of travelers' electronic devices and communications absent a warrant supported by probable cause that the devices contain contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

b.    Declare that Defendants violated Plaintiff's First and Fourth Amendment rights by searching his electronic devices absent a warrant supported by probable cause that the devices contained contraband or evidence of a violation of criminal, immigration, or customs laws, and without particularly describing the information to be searched.

34

  c.  Enjoin Defendants to expunge all information gathered from, or copies made of, the contents of Plaintiff's electronic devices.

  d.  Enjoin enforcement of the Agency Policies against Plaintiff.

  e.  Enjoin enforcement of the Agency Policies.

  f.  Vacate the Agency Policies.

  g.  Award Plaintiff reasonable attorneys' fees and costs.

  h.  Grant such other or further relief as the Court deems proper.

24-11042.579

Dated:  March 14, 2019

Respectfully submitted,

**ARNOLD & PORTER
KAYE SCHOLER LLP**

By:  */s/ Andrew Tutt*

Andrew Tutt (*pro hac vice*)
Robert Stanton Jones (*pro hac vice*)
Stephen K. Wirth (*pro hac vice*)
Sam Callahan (*pro hac vice*)
Graham White (*pro hac vice*)
Jayce Lane Born (*pro hac vice*)
Emily Rebecca Chertoff (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
andrew.tutt@arnoldporter.com

Hani Mirza (State Bar No. 24083512)
TEXAS CIVIL RIGHTS PROJECT
1412 Main St., Suite 608
Dallas, Texas 75202
(972) 333-9200 ext. 171
(972) 957-7867 (fax)
hani@texascivilrightsproject.org

Natalia Cornelio*
Peter Steffensen (*pro hac vice*)
  (State Bar No. 24106464)
TEXAS CIVIL RIGHTS PROJECT
405 Main Street, Suite 716
Houston, Texas 77002
(832) 767-3650
(832) 554-9981 (fax)
natalia@texascivilrightsproject.org

* Motion for pro hac vice admission forthcoming

*Counsel for Plaintiff*

36

**VERIFICATION**

STATE OF TEXAS            )
                          ) SS:
DALLAS COUNTY             )

George Anibowei, being duly sworn, deposes and says:

I am George Anibowei, the plaintiff in this action; I have read the foregoing Verified

Second Amended Complaint and know the contents thereof; except as to matters therein alleged

on information and belief, I have learned of the facts alleged therein, either through my own

personal knowledge or through information reported to me in the ordinary course of business; as

to those matters as to which I do not have personal knowledge, I believe them to be true.

_____
George Anibowei

Sworn to and subscribed this
12  day of March, 2019

_____
Notary Public

VANESSA A. NARVAIZ
My Notary ID # 131302865
Expires October 3, 2021

37

24-11042.581

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served on the Defendants in accordance with

Fed. R. Civ. P. 4.

*/s/ Andrew Tutt*
Andrew Tutt
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

24-11042.582

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Record Excerpt was filed electronically on February 10, 2025, and will, therefore, be served electronically upon all counsel.

/s/ Andrew Tutt
Andrew T. Tutt