# 24-11042

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**George Anibowei**,
Plaintiff-Appellant

v.

**Pamela Bondi, U.S. Attorney General; United States Department of Homeland Security; United States Customs and Border Protection; United States Immigration and Customs Enforcement; Kristi Noem, Secretary, U.S. Department of Homeland Security; Troy Miller, Senior Official Performing the Duties of the Commissioner, U.S. Customs and Border Protection; Patrick J. Lechleitner, Deputy Director and Senior Official Performing the Duties of the Director for ICE**,
Defendants-Appellees

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
District Court No. 3:16-CV-3495-D

## BRIEF FOR APPELLEES

Chad E. Meacham
Acting United States Attorney

Brian W. Stoltz
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Appellees

# STATEMENT REGARDING ORAL ARGUMENT

This appeal is from the district court's dismissal of plaintiff-appellant George Anibowei's suit challenging the government's authority to conduct searches of electronic devices at the border. As Anibowei's call for en banc review tacitly concedes, his claim is foreclosed by circuit precedent. The government respectfully submits that oral argument is therefore not necessary.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ...................................................................i

Table of Authorities .....................................................................................iii

Statement of Jurisdiction ............................................................................ 1

Statement of the Issue ................................................................................ 1

Statement of the Case................................................................................. 1

    1. The government has broad authority to conduct searches
       at the border. ...................................................................................... 1

    2. Anibowei files suit to challenge the search of his cell phone
       at the border. ......................................................................................5

    3. Anibowei voluntarily dismisses most of his claims, and
       the government moves to dismiss his remaining APA claim. ..............7

    4. The district court dismisses Anibowei's APA claim...........................7

Summary of the Argument ..........................................................................8

Standard of Review.....................................................................................9

Argument and Authorities...........................................................................9

    A. Border searches do not require a warrant. ....................................9

    B. *Riley* does not compel a warrant requirement or
       the reexamination of existing caselaw. ....................................... 12

    C. Anibowei's reliance on one outlier circuit is not implicated
       in this case. ............................................................................... 15

Conclusion ............................................................................................... 21

Certificate of Service ............................................................................... 22

Certificate of Compliance......................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Alabama-Coushatta Tribe of Tex. v. United States*,
757 F.3d 484 (5th Cir. 2014)....................................................................9

*Alasaad v. Mayorkas*,
988 F.3d 8 (1st Cir. 2021) ...............................................................13, 16

*Almeida-Sanchez v. United States*,
413 U.S. 266 (1973) ...........................................................................3

*Amin v. Mayorkas*,
24 F.4th 383 (5th Cir. 2022)..................................................................18

*Anibowei v. Morgan*,
70 F.4th 898 (5th Cir. 2023)...................................................................7

*Big Time Vapes, Inc. v. FDA*,
936 F.3d 436 (5th Cir. 2020)..................................................................15

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .........................................................................20

*Boyd v. United States*,
116 U.S. 616 (1886) .........................................................................16

*Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*,
247 F.3d 1378 (Fed. Cir. 2001) ..............................................................20

*Hinojosa v. Horn*,
896 F.3d 305 (5th Cir. 2018)..................................................................20

*Malik v. U.S. Dep't of Homeland Sec.*,
78 F.4th 191 (5th Cir. 2023)..........................................................5, 12, 13

*Perry Capital LLC v. Mnuchin*,
864 F.3d 591 (D.C. Cir. 2017) ...............................................................19

*Riley v. California*,
573 U.S. 373 (2014) ...............................................................12, 13, 14

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................... 18

*United States v. Boumelhem,*
    339 F.3d 414 (6th Cir. 2003) ................................................. 10

*United States v. Cano,*
    934 F.3d 1002 (9th Cir. 2019) ............................... 14, 15, 16

*United States v. Cardenas,*
    9 F.3d 1139 (5th Cir. 1993) ....................................................2

*United States v. Carter,*
    590 F.2d 138 (5th Cir. 1979) ................................................. 12

*United States v. Castillo,*
    70 F.4th 894 (5th Cir. 2023) ........................................... 5, 12

*United States v. Flores-Montano,*
    541 U.S. 149 (2004) ................................................ 2, 9, 10, 11

*United States v. Fortna,*
    796 F.2d 724 (5th Cir. 1986) ................................................. 16

*United States v. Kelly,*
    302 F.3d 291 (5th Cir. 2002) ................................................. 11

*United States v. Kolsuz,*
    890 F.3d 133 (4th Cir. 2018) ............................................14, 16

*United States v. Molina-Isidoro,*
    884 F.3d 287 (5th Cir. 2018) ........................................... 3, 11

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985) ............................................... 2, 3, 10, 11

*United States v. Mecham,*
    950 F.3d 257 (5th Cir. 2020) ................................................. 15

*United States v. Nkongho,*
    107 F.4th 373 (4th Cir. 2024) ............................................... 16

*United States v. Ramsey*,
431 U.S. 606 (1977) ................................................................ 2, 11

*United States v. Sandler*,
644 F.2d 1163 (5th Cir. 1981) (en banc) ................................. 11

*United States v. Touset*,
890 F.3d 1227 (11th Cir. 2018) ............................................... 14

*United States v. Vergara*,
884 F.3d 1309 (11th Cir. 2018) ............................................... 14

*United States v. Wanjiku*,
919 F.3d 472 (7th Cir. 2019) ................................................... 14

*United States v. Xiang*,
67 F.4th 895 (8th Cir. 2023) .................................................... 13

*Warden v. Hayden*,
387 U.S. 294 (1967) ................................................................. 16

## Statutes

5 U.S.C. § 704 ......................................................................... 18

28 U.S.C. § 1291 ....................................................................... 1

<center>**STATEMENT OF JURISDICTION**</center>

Plaintiff-appellant George Anibowei appeals from the district court's dismissal of his suit challenging the government's authority to search electronic devices at the border. The district court granted the defendants' Rule 12 motion and entered judgment on November 25, 2024. (ROA.28, 1146.) Anibowei timely filed his notice of appeal on November 26, 2024, (ROA.28, 1147), such that this Court has jurisdiction under 28 U.S.C. § 1291.

<center>**STATEMENT OF THE ISSUE**</center>

Did the district court err in dismissing Anibowei's claim after determining that the policies of U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE) permitting border searches of electronic devices without a warrant are consistent with binding circuit precedent?

<center>**STATEMENT OF THE CASE**</center>

**1. The government has broad authority to conduct searches at the border.**

This case relates to searches of cell phones (or other electronic devices) at the international border and thus implicates the government's border-search authority.[1] Courts have repeatedly held that the government's interest in

---

[1] The concept of a border search as discussed herein refers both to searches occurring at a physical international boundary as well as at any so-called "functional equivalent" of the

<center>1</center>

searching persons and items is at its "zenith" at the border. *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). As a result, although searches must be reasonable, "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). Therefore, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Id.* (citing *United States v. Ramsey*, 431 U.S. 606, 616–19 (1977)). "[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *Flores-Montano*, 541 U.S. at 152–53 (quoting *Ramsey*, 431 U.S. at 616).

The government's "longstanding concern for the protection of the integrity of the border" extends, among other things, to the "prevent[ion of] the introduction of contraband into this country," the requirement for a person "entering the country to identify himself as entitled to come in," and "the collection of duties," *Montoya de Hernandez*, 473 U.S. at 537, 538 & n.1 (internal quotation marks and citation omitted), and also to "the power of the

---

border, such as at an airport for passengers on international flights. *See United States v. Cardenas*, 9 F.3d 1139, 1147–48 (5th Cir. 1993).

Federal Government to exclude aliens from the country," *Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973). Accordingly, "the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is . . . struck much more favorably to the Government at the border," in part because "the expectation of privacy [is] less at the border than in the interior." *Montoya de Hernandez*, 473 U.S. at 539, 540; *see also United States v. Molina-Isidoro*, 884 F.3d 287, 290 (5th Cir. 2018) (upholding the denial of a defendant's motion to suppress evidence obtained during a border search of her cell phone, with an explanation that the government "reasonably relied on the longstanding and expansive authority of the government to search persons and their effects at the border").

The two agencies with primary federal law-enforcement responsibility at the border are CBP and ICE. Both agencies have adopted policies for their searches of electronic devices at the border. (ROA.1060, 1072.) CBP's current policy, adopted in 2018, "governs border searches of electronic devices" by CBP personnel. (ROA.1061.) The policy distinguishes between "basic" and "advanced" border searches of electronic devices. (ROA.1063–64.) An "advanced search" is "any search in which an Officer connects external equipment, through a wired or wireless connection, to an electronic device not merely to gain access to the device, but to review, copy, and/or analyze its

contents." (ROA.1064.) A "basic search" is "[a]ny border search of an electronic device that is not an advanced search." (ROA.1063.) CBP officers may conduct a basic search "with or without suspicion," (ROA.1063), but may conduct an advanced search only in "instances in which there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern," and only with supervisory approval, (ROA.1064). For both types of searches, CBP officers may examine "only the information that is resident upon the device" and may not intentionally access "information that is solely stored remotely." (ROA.1063.)

ICE's policy dates from 2009 and "establishes policy and procedures within [ICE] with regard to border search authority to search, detain, seize, retain, and share information contained in electronic devices possessed by individuals at the border." (ROA.1072.) The policy "applies to searches of electronic devices of all persons arriving in, departing from, or transiting through the United States, unless specified otherwise." (ROA.1072.) By supplemental guidance issued in 2018, ICE adopted the CBP policy's distinction between "basic" and "advanced" searches, with reasonable suspicion required for the latter. (ROA.1082–83.)

In a pair of published decisions considering the legality of border searches of electronic devices, this Court has recognized the same distinction

4

between searches that may be conducted without suspicion and searches requiring suspicion (sometimes referred to as "routine" and "nonroutine" searches). As summarized by the district court, "[in] the Fifth Circuit, the government does not need individualized suspicion to conduct a routine manual cell phone search at the border, and nonroutine searches require only reasonable suspicion." (ROA.1142 (citing *United States v. Castillo*, 70 F.4th 894, 898 (5th Cir. 2023), and *Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 200 (5th Cir. 2023)).) Specifically, this Court rejected a challenge to the manual search of a cell phone at the border in *Castillo* with the explanation that "the government can conduct manual cell phone searches at the border without individualized suspicion." 70 F.4th at 898. And in *Malik*, the Court rejected the argument that something more than reasonable suspicion was required for a nonroutine or advanced search, explaining that "nonroutine searches need only reasonable suspicion, not the higher threshold of probable cause" and that "our precedent does not currently require a warrant for cell-phone searches at the border." 78 F.4th at 200, 201 (internal quotation marks and citations omitted).

**2. Anibowei files suit to challenge the search of his cell phone at the border.**

Anibowei filed suit in the district court to challenge a warrantless search of his cell phone performed at Dallas/Fort Worth International Airport upon

his return from an October 2016 international trip. (ROA.30.) Anibowei later filed a second amended complaint in which he reiterated his challenge to that search but also alleged that his cell phone was manually inspected at the border on four other occasions, although apparently without copying any information from it. (ROA.545, 550.) Anibowei identified the CBP and ICE policies governing those agencies' border searches of electronic devices, and asserted they were unlawful. (*See* ROA.555–61.)

Anibowei's second amended complaint initially set out seven separate counts or claims. Counts I through V asserted that the government's electronic border-search practices violated the Fourth and First Amendments. (ROA.573–77.) In each of these constitutional counts, Anibowei alternatively pleaded that (a) the government must obtain a warrant supported by probable cause to search any electronic device at the border, or (b) if there is no warrant requirement, at least probable cause or reasonable suspicion is required. (ROA.573–77.)

In Count VI, Anibowei asserted a claim under the Administrative Procedure Act, in which he alleged that the CBP and ICE policies for the border search of electronic devices "permit agents to conduct searches that violate the First and Fourth Amendments," such that the policies "therefore violate" the APA. (ROA.577.) And in Count VII, Anibowei brought an APA

claim challenging his removal from the Global Entry Trusted Traveler Program.  (ROA.578.)

### 3. Anibowei voluntarily dismisses most of his claims, and the government moves to dismiss his remaining APA claim.

After an intervening interlocutory appeal,[2] proceedings resumed in the district court.  (*See* ROA.998.)  Anibowei at that point elected to voluntarily dismiss Counts I through V and VII of his second amended complaint—that is, to dismiss all counts except the APA claim in Count VI challenging the CBP and ICE policies.  (ROA.999.)  The government then filed a motion to dismiss Count VI, arguing, among other things, that Anibowei failed to state a claim for relief because the CBP and ICE polices are consistent with this Court's precedents.  (ROA.1014–46.)

### 4. The district court dismisses Anibowei's APA claim.

The district court held a hearing on the motion to dismiss.  (ROA.1233.)  Anibowei, through counsel, conceded during the hearing that his claim that the CBP and ICE policies violated the Fourth Amendment was "foreclosed by binding Fifth Circuit precedent."[3]  (ROA.1244.)  The district court thereafter

---

[2] This Court affirmed the denial of Anibowei's motion for preliminary injunction and otherwise found no appellate jurisdiction for his arguments about a denied partial summary-judgment motion.  *Anibowei v. Morgan*, 70 F.4th 898 (5th Cir. 2023).

[3] Anibowei did suggest in the district court that even though his Fourth Amendment arguments were foreclosed, the First Amendment might independently provide a basis for relief on his APA claim.  (*See* ROA.1244.)  However, on appeal Anibowei has limited the

issued a memorandum opinion and order granting the government's motion to dismiss. (ROA.1128.) The district court concluded that Anibowei had an adequate alternative remedy and, regardless, failed to state a claim for relief because "[i]n the Fifth Circuit, the government does not need individualized suspicion to conduct a routine manual cell phone search at the border, and nonroutine searches require only reasonable suspicion." (ROA.1141, 42.) The CBP and ICE policies "comply with this circuit's requirements for a border search of an electronic device," the district court explained, and thus no claim was stated. (ROA.1142.)

This appeal has followed.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Anibowei's APA challenge to the CBP and ICE electronic border-search policies. As Anibowei recognizes by calling for en banc review, (Br. at 3, 55), existing precedent forecloses his argument that a warrant is required for border searches of electronic devices. And the government's policies are likewise consistent with this Court's caselaw requiring, at most, reasonable suspicion for certain advanced searches of

issue to whether the Fourth Amendment is violated by the warrantless border search of a cell phone, (Br. at 4), so the government's focus in this brief will likewise be the Fourth Amendment. In any event, the First Amendment would fail to support any relief for all the reasons explained by both the government and the district court in the proceedings below. (*See* ROA.1044–45, 1143–44.)

electronic devices. Anibowei fails to show any basis for overturning the
district court's judgment, which should be affirmed.

## STANDARD OF REVIEW

This Court reviews the district court's dismissal of Anibowei's claim *de novo*. *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014).

## ARGUMENT AND AUTHORITIES

The district court correctly dismissed Anibowei's challenge to the CBP and ICE electronic border-search policies. As Anibowei conceded in the district court and tacitly admits by calling for en banc review, (ROA.1244; Br. at 3, 55), the sole issue he raises—whether, under the Fourth Amendment, a warrant is required for a border search of an electronic device—is foreclosed by existing circuit precedent, and Anibowei fails to show any error in the district court's judgment.

### A. Border searches do not require a warrant.

"The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Accordingly, a person's "expectation of privacy [is] less at the border than in the interior," and "the Fourth Amendment balance between the interests of the Government and the privacy

right of the individual is also struck much more favorably to the Government at the border." *United States v. Montoya de Hernandez*, 473 U.S. 531, 539, 540 (1985). The Supreme Court has reaffirmed "[t]ime and again" that routine "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *Flores-Montano*, 541 U.S. at 152–53 (internal quotation marks and citation omitted). Thus, "[r]outine searches of the persons and effects of entrants [at the border] are not subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538. In addition, travelers also "have a lesser expectation of privacy when they (or their goods) leave the country if for no other reason than the departure from the United States is almost invariably followed by an entry into another country which will likely conduct its own border search." *United States v. Boumelhem*, 339 F.3d 414, 423 (6th Cir. 2003) (internal quotation marks and citation omitted).

While Anibowei argues that a warrant is required for any cell-phone search at the border, routine border searches do not require even reasonable suspicion or probable cause, much less a warrant. *Montoya de Hernandez*, 473 U.S. at 538. The Supreme Court has noted the possibility that "in the case of

highly intrusive searches of the person" (such as strip, body-cavity, or involuntary x-ray searches), the "dignity and privacy interests of the person" might require "some level of suspicion," *Flores-Montano*, 541 U.S. at 152, but has reserved judgment on that question, *id.* at 154 n.2; *see Montoya de Hernandez*, 473 U.S. at 541 n.4; *United States v. Ramsey*, 431 U.S. 606, 618 n.13 (1977). On a single occasion the Supreme Court concluded that a person's *detention* during a border inspection for purposes of a monitored bowel movement was nonroutine, but was justified on a showing of reasonable suspicion. *Montoya de Hernandez*, 473 U.S. at 541–42.

Following these precedents, this Court has held that "routine border searches may be conducted without any suspicion," and that "[s]o-called 'nonroutine' searches need only reasonable suspicion, not the higher threshold of probable cause." *Molina-Isidoro*, 884 F.3d at 291. This Court has never required more than reasonable suspicion in the context of a border search.

For example, in *United States v. Kelly*, 302 F.3d 291, 294 (5th Cir. 2002), the Court explained that nonroutine searches requiring reasonable suspicion "include body cavity searches, strip searches, and x-rays," but that a "canine sniff" that made contact with the person's "groin area" did not require reasonable suspicion. Similarly, the Court held in *United States v. Sandler*, 644 F.2d 1163, 1167–68 (5th Cir. 1981) (en banc), that while reasonable suspicion

may be required for strip searches or body-cavity searches at the border, it is not required for less intrusive personal searches such as patdowns or frisks. *See also United States v. Carter*, 590 F.2d 138, 139 (5th Cir. 1979) (a strip search at the border requires reasonable suspicion).

The Court has adhered to these principles in the context of border searches of electronic devices. As Anibowei recognizes, this Court has "held that neither a warrant nor reasonable suspicion is required to manually search a cell phone at the border," and has also "declined to extend *Riley*'s warrant requirement to forensic cell phone searches." (Br. at 19, 20 (discussing *United States v. Castillo*, 70 F.4th 894 (5th Cir. 2023), and *Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191 (5th Cir. 2023)).) The district court correctly applied these precedents to conclude that Anibowei's APA claim failed to state any claim for relief in asserting that a warrant is required for border searches of electronic devices. (ROA.1141–44.)

### B. *Riley* does not compel a warrant requirement or the reexamination of existing caselaw.

Principally relying on *Riley v. California*, 573 U.S. 373 (2014), Anibowei argues that "existing warrant exceptions must be reexamined in the context of cell phones." (Br. at 32 (capitalization normalized).) Contrary to Anibowei's assertions, though, *Riley* does not command a warrant requirement for border

searches of electronic devices, nor does the logic behind *Riley* compel such a requirement. As recently explained by this Court, "[e]very circuit that has faced this question has agreed that *Riley* does not mandate a warrant requirement for border searches of electronic devices, whether basic or advanced." *Malik*, 78 F.4th at 201 (quoting *Alasaad v. Mayorkas*, 988 F.3d 8, 17 (1st Cir. 2021)). Indeed, *Riley* "d[id] not either create or suggest a categorical rule to the effect that the government must always secure a warrant before accessing the contents of [an electronic device]." *Alasaad*, 988 F.3d at 17 (internal quotation marks and citation omitted; brackets in original). "Nor does *Riley* by its own terms apply to border searches, which are entirely separate from the search incident to arrest searches discussed in *Riley*." *Id.* "The search incident to arrest warrant exception is premised on protecting officers and preventing evidence destruction, rather than on addressing border crime." *Id.* (citing *Riley*, 573 U.S. at 384–86).

These principles are consistent with the practice of the numerous courts that, even post-*Riley*, have continued to analyze electronic searches at the border under the framework of the border-search doctrine, in which reasonable suspicion represents the highest hurdle to any search. *See, e.g.*, *United States v. Xiang*, 67 F.4th 895, 899 (8th Cir. 2023) ("*Riley* involved a different Fourth Amendment exception, searches incident to arrest. No Circuit has held that

the government must obtain a warrant to conduct a routine border search of electronic devices."); *United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019) ("post-*Riley*, no court has required more than reasonable suspicion to justify even an intrusive border search"); *United States v. Wanjiku*, 919 F.3d 472, 485 (7th Cir. 2019) ("no circuit court, before or after *Riley*, has required more than reasonable suspicion for a border search of cell phones or electronically-stored data"); *United States v. Kolsuz*, 890 F.3d 133, 147 (4th Cir. 2018) ("Even as *Riley* has become familiar law, there are no cases requiring more than reasonable suspicion for forensic cell phone searches at the border."); *United States v. Vergara*, 884 F.3d 1309, 1312 (11th Cir. 2018) ("The forensic searches of Vergara's phones required neither a warrant nor probable cause."); *United States v. Touset*, 890 F.3d 1227, 1234 (11th Cir. 2018) ("*Riley*, which involved the search-incident-to-arrest exception, does not apply to searches at the border").

These courts are correct that *Riley* did not alter border-search doctrine or categorically remove cell phones from its purview. The Supreme Court took pains to explain that its holding in *Riley* was limited to the search-incident-to-arrest context, stating that "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." *Riley*, 573 U.S. at 401–02. The

border-search doctrine remains one such exception that allows for warrantless searches of cell phones.  To hold otherwise would be to extend *Riley* to a new context in a manner that the Supreme Court expressly declined to do.

Indeed, Anibowei effectively asks this Court to "read tea leaves to predict where [the Supreme Court] might end up" if it were to consider an electronic border-search case post-*Riley*.  *See Big Time Vapes, Inc. v. FDA*, 936 F.3d 436, 447 (5th Cir. 2020) (quoting *United States v. Mecham*, 950 F.3d 257, 265 (5th Cir. 2020)).  But the district court acted appropriately by adhering to circuit precedent rather than staking out a new position that the Supreme Court itself declined to take, and this Court should do the same here.  *See id.*

## C.   Anibowei's reliance on one outlier circuit is not implicated in this case.

In *Cano*, the Ninth Circuit held that "[t]here is a difference between a search for contraband and a search for evidence of border-related crimes," and that "the border search exception authorizes warrantless searches of a cell phone only to determine whether the phone contains contraband."  934 F.3d at 1017, 1018.  Anibowei argues that on this issue there is a "deeply entrenched circuit split" and this Court is on the "wrong side" of that split.  (Br. at 31.)

But Anibowei's argument is unavailing.  Courts have repeatedly rejected *Cano*'s asserted distinction between the search for contraband and the search

for evidence of border-related crimes.  *See United States v. Nkongho*, 107 F.4th 373, 381 (4th Cir. 2024) (collecting cases from the First, Fourth, Eighth and D.C. Circuits); *see also United States v. Fortna*, 796 F.2d 724, 738–39 (5th Cir. 1986) (upholding the search and photocopying of papers carried at the border that "might relate to illegal conduct involving material or persons entering or leaving the United States").  For example, in *Kolsuz*, the Fourth Circuit held that the border search of a cell phone "conducted at least in part to uncover information about an ongoing transnational crime . . . fits within the core of the rationale underlying the border search exception," and rejected the argument that the government is limited to searching for "contraband, as opposed to evidence, [that] would be found on the device."  890 F.3d at 143–44, 147 n.7 (internal quotation marks and citation omitted).  And in *Alasaad*, the First Circuit held that "the border search exception is not limited to searches for contraband itself rather than evidence of contraband or a border-related crime."  988 F.3d at 20.

Moreover, *Cano*'s distinction between a search for contraband and a search for evidence of a border-related crime, 934 F.3d at 1018, relied on *Boyd v. United States*, 116 U.S. 616 (1886), but the Supreme Court expressly rejected *Boyd*'s contraband/evidence distinction in *Warden v. Hayden*, calling it "wholly irrational" and "discredited," 387 U.S. 294, 302, 306 (1967).  Thus,

16

Anibowei's argument turns not on any deeply entrenched circuit split, but on the existence of a single outlier precedent that itself relies on case law expressly disavowed by the Supreme Court. That argument provides no basis for reversing the judgment below.

The CBP and ICE policies are also consistent with the majority view. Under CBP's policy, officers may conduct an advanced search only in "instances in which there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern," (ROA.1064), and ICE's supplemental guidance issued in 2018 is similar, (ROA.1082–83). The CBP and ICE policies thus effectively set forth a border-nexus requirement, consistent with holdings of a majority of courts that permit border searches to search for contraband or for evidence of a border-related crime. In addition, ICE's supplemental guidance expressly cited the Fourth Circuit's opinion in *Kolsuz*, which reflects the majority view that a search for evidence of a border-related offense is within the scope of the border search exception to the Fourth Amendment. (ROA.1082.)

In any event, the Ninth Circuit's outlier view in *Cano* is not implicated here. Anibowei's second amended complaint did not make any such claim that border searches of electronic devices must be limited to contraband. (*See* ROA.545.) To the contrary, Anibowei repeatedly pleaded that what is

17

required, in his view, is some showing (whether by reasonable suspicion, probable cause, or through a warrant) that an electronic device contains *either* contraband *or* "evidence of a violation of criminal, immigration, or customs laws." (*See* ROA.573–78 (repeated instances of this allegation, with no assertion that only searches for contraband are permissible).) Nor did the district court address this issue, which was never presented to it. (*See* ROA.1128–45.) Thus, to the extent Anibowei may now be relying on arguments based on the Ninth Circuit's view that border searches are limited to the search for contraband and not searches for evidence of border-related offenses, no such claim was raised or passed upon below.

\* \* \* \* \*

The district court also held, as an additional and independent ground for dismissal, that Anibowei's APA claim was barred because he had "[an]other adequate remedy in a court," as described in 5 U.S.C. § 704. (ROA.1140–41.) The Court need not reach this issue given that Anibowei's claim was in any event properly dismissed under binding circuit precedent, for all the reasons stated above.[4] Regardless, the factual basis of the district court's analysis of the

---

[4] The district court noted that circuit precedent described § 704's adequate-remedy provision as "jurisdictional." (ROA.1140.) But as this Court has stated, that characterization "may be out of step with recent Supreme Court rulings clarifying that a statute is 'jurisdictional' only if Congress says so." *Amin v. Mayorkas*, 24 F.4th 383, 389 n.2 (5th Cir. 2022); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (explaining that "jurisdiction" is a

adequate-remedy issue is undisputed, and no error is shown. Earlier in this litigation, Anibowei asserted claims based on the First and Fourth Amendments and by which he sought rulings that the government's electronic border-search practices were unconstitutional and to require the expungement of any data in the government's possession from prior searches of his phone. (*See* ROA.573–77.) But Anibowei subsequently "voluntarily dismissed with prejudice" nearly all his claims, including his Fourth Amendment claims. (ROA.1128 n.2; *see also* ROA.999.) Noting these facts, the district court observed that Anibowei had an alternative remedy available—namely, "the constitutional claims that he has already brought but has voluntarily dismissed"—and explained that if Anibowei had been "successful on the merits" of such a claim it would have provided him the same type of relief he later sought in the case. (ROA.1140.) "The fact that Anibowei has raised and then voluntarily dismissed these claims does not make this remedy inadequate." (ROA.1140.)

Anibowei contends that the district court's reasoning would "narrow the APA to the vanishing point" and represents an "unprecedented" decision to

---

"word of many, too many, meanings" (internal quotation marks and citation omitted)). Other courts have determined that whether the existence of another "adequate remedy" bars a plaintiff's APA claim in fact relates to whether the plaintiff has a cause of action under the APA, not the court's statutory jurisdiction. *See, e.g.*, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620–21 (D.C. Cir. 2017).

"displace[] the APA" whenever an equitable cause of action is possibly available. (Br. at 56.) But these concerns are misplaced. The district court correctly noted that § 704's requirements "entail[] a case-specific evaluation," (ROA.1140 (quoting *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018)), and the district court's conclusion was predicated on the unique circumstances of this case in which a plaintiff voluntarily chose to dismiss his own Fourth Amendment claim with prejudice while simultaneously asking for other relief based on an asserted Fourth Amendment violation, (*see* ROA.1140–41). As a result of that unusual posture, the district court's analysis was limited to the particular facts of this case and does not, as Anibowei strains to suggest, have any broader implications for APA cases generally. Additionally, neither *Bowen v. Massachusetts*, 487 U.S. 879 (1988), nor any of the other cases Anibowei cites (Br. at 56–60) involved circumstances similar to those here. *See Hinojosa*, 896 F.3d at 311 ("In *Bowen*, the Supreme Court linked its judgment to a specific set of circumstances that are not present in this case." (quoting *Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1384 (Fed. Cir. 2001))).[5]

---

[5] Anibowei's brief states that "[i]n *Bowen*, the Court held that only a 'special and adequate review procedure' created by Congress to review the actions of a specific agency 'will oust a district court of its normal jurisdiction under the APA.'" (Br. at 56–57 (quoting *Bowen*, 487 U.S. at 904).) To be clear, the word "only" in the above quotation is Anibowei's, not the Supreme Court's.

## CONCLUSION

The district court's judgment should be affirmed.

<div style="margin-left: 50%;">

Respectfully submitted,

Chad E. Meacham
Acting United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Appellees

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, this document was served on appellant by transmission to him through the Court's electronic filing system, and

I further certify that (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,633 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Calisto MT font.

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney